TYLER M. PAETKAU, Bar No. 146305
MICHAEL G. PEDHIRNEY, Bar No. 233164
MOLLY AGARWAL, Bar No. 247545
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, CA  94108.2693
Telephone:    415.433.1940
tpaetkau@littler.com, mpedhirney@littler.com,
magarwal@littler.com

Attorneys for Defendant
APPLERA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGAN KELLY,<br><br>               Plaintiff,<br><br>    v.<br><br>APPLERA CORPORATION,<br><br>               Defendant. | Case No.  C-07-3002 MMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN**<br><br>Date:      April 11, 2008<br>Time:     9:00 a.m.<br>Courtroom: 7<br>Judge:    Hon. Maxine Chesney |

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    Plaintiff's Employment History With Applera And Non-Work-Related Injuries. ................... 2

    B.    Plaintiff's Extended Three-Year Medical Leave Of Absence. ................................. 3

    C.    Ms. Kelly's Attorney Improperly Injects Herself Into The Parties' Interactive Process, And Obstructs And Interferes With That Process. .......................... 4

    D.    Plaintiff's Precipitous Litigation Against Applera. .......................................... 7

    E.    Plaintiff's Proposed Amended Complaint Underscores The Necessity Of McFadden's Deposition. ......................................................................... 8

    F.    Defendant Met And Conferred With Plaintiff Prior To Filing This Motion. ........................ 10

III.  ARGUMENT ................................................................................................... 10

    A.    Ms. McFadden Improperly Interfered With Applera's Efforts To Engage In The Interactive Process. ................................................................. 10

    B.    McFadden's Deposition Is Necessary And Proper Under The Governing Legal Standard. .. 12

    C.    Because McFadden Improperly Inserted Herself Into, And In Fact Obstructed and Interfered With, Applera's Attempt To Engage In The Interactive Process With Plaintiff, Applera Satisfies The Legal Standard For Her Deposition. ................................................ 13

    D.    Applera Has A Fundamental Due Process Right To Discover Directly Relevant, Non-Privileged Information That Is Only Available from Attorney McFadden. .......................... 15

IV.   CONCLUSION ................................................................................................ 17

i.

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Allen v. Pacific Bell,*
 348 F.3d 1113 (9th Cir. 2003) ........................................................................ 12

*American Cas. Co. v. Krieger,*
 160 F.R.D. 582 (S.D. Cal. 1995) ........................................................ 13, 14, 15

*Barnett v. U.S. Airways, Inc.,*
 228 F.3d 1063 (9th Cir. 2000) ........................................................................ 11

*Beck v. University of Wisc. Bd. of Regents,*
 75 F.3d 1130 (7th Cir. 1996) .......................................................................... 11

*Claudio v. Regents of Univ. of Cal.,*
 134 Cal. App. 4th 224 (2005) ...................................................................passim

*Criado v. IBM Corp.,*
 145 F.3d 437 (1st Cir. 1998) ............................................................................ 3

*Fremont Indem. Co. v. Superior Court,*
 137 Cal. App. 3d 554 (1982) ............................................................... 1, 2, 16

*Johnston Development Group, Inc. v. Carpenters Local Union No. 1578,*
 130 F.R.D. 348 (D.N.J. 1990) ........................................................................ 14

*Kimbro v. Atlantic Richfield Co.,*
 889 F.2d 869 (9th Cir. 1989),
 *cert. denied,* 498 U.S. 814 (1990) .................................................................... 3

*Massachusetts Mut. Life Ins. Co. v. Cerf,*
 177 F.R.D. 472 (N.D. Cal. 1998) .................................................................... 13

*Schmidt v. Safeway Inc.,*
 864 F. Supp. 991 (D. Or., 1994) ....................................................................... 3

*Shelton v. American Motors Corp.,*
 805 F.2d 1323 (8th Cir. 1986) ................................................................. 13, 14

*Stubbs v. Marc Center,*
 950 F .Supp 889 (1997) ........................................................................... 3, 4, 5

*Taylor v. Pepsi-Cola Co.,*
 196 F.3d 1106 (10th Cir. 1999) ........................................................................ 3

*Taylor v. Phoenixville School District,*
 184 F.3d 296 (3d Cir. 1999)............................................................................ 11

*Tyndall v. National Educ. Ctrs. Inc.,*
 31 F.3d 209 (4th Cir. 1994) .............................................................................. 3

*Waggoner v. Olin Corp.,*
 169 F.3d 481 (7th Cir. 1999) ............................................................................ 3

## STATUTES

Cal. Gov't Code § 12940(n) .............................................................................. 7

## RULES

Cal. R. Prof. Conduct 2-100............................................................... 9, 12, 14, 17

ii.

Cal. R. Prof. Conduct 2-100(A) ................................................................................. 6

Cal. R. Prof. Conduct 2-100(B) ................................................................................. 6

Firmwide:84504565.1 008292.1051

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

iii.

## I.     INTRODUCTION

Defendant Applera Corporation ("Applera") brings this motion to compel the deposition testimony of Maureen McFadden, counsel for Plaintiff Megan Kelly, for several important reasons grounded in constitutional due process of law and fundamental fairness.  This is an employment disability discrimination action.     Plaintiff's claims against Applera include: (1) failure to engage in the interactive process in good faith; (2) failure to accommodate; and (3) employment discrimination based on her purported disability.  (*See* Plaintiff's Complaint, attached as Exhibit ("Ex.") 1 to Declaration of Tyler Paetkau ("Paetkau Decl."), ¶ 2.)  It would violate Applera's due process rights and undermine the interests of justice for Plaintiff to sue and then prevent Applera from discovering facts directly relevant and necessary to defend itself against Plaintiff's claims.

The evidence shows that Ms. McFadden blatantly interfered with the Company's efforts to engage in the interactive process – including by improperly directing that all communications during the so-called "interactive process" go through her instead of her client-employee – and now argues that the Company failed to engage in that same process in good faith. Despite her own direct and extensive communications with the Company and other related parties, Ms. McFadden asserts that she has no relevant non-privileged information, and seeks to prevent Applera from discovering relevant information that is known only to her.  As the courts have recognized under these circumstances, a litigant cannot "have her cake and eat it too."  *Fremont Indem. Co. v. Superior Court,* 137 Cal. App. 3d 554, 557 (1982).

Applera acknowledges that depositions of opposing counsel are disfavored, but on these rather unique facts, Applera has satisfied the requirements for such depositions, and requires and is entitled to Ms. McFadden's deposition to defend itself against Plaintiff's claims.  First, the information that Applera seeks to discover from Ms. McFadden – her own communications with Applera during the same time frame that her client claims Applera failed to engage in the interactive process – is directly relevant and necessary to Applera's ability to defend itself against Plaintiff's claims in this action.  Second, the information Applera seeks is not available from any other source; indeed, Ms. McFadden affirmatively <u>prevented</u> Applera from communicating with her client during

1.

the interactive process. Third, Ms. McFadden made herself a witness in this action by inserting herself between the Company and Plaintiff prior to and after the commencement of litigation, in fact obstructing the Company's efforts to engage in the interactive process with Plaintiff and becoming an active participant in some of the critical events and communications that Plaintiff herself placed squarely at issue in this action.

As demonstrated below, Plaintiff proved at her deposition to be an unreliable source of information relevant to this litigation, "answering" the vast majority of questions by asserting that she does "not know" or "cannot recall." For example, Plaintiff testified that she is "not sure" whether she has ever been diagnosed with clinical depression. (Plaintiff Deposition ("Pltf. Depo.") at 96:25-97:5, Ex. 22 to Paetkau Decl.) Plaintiff also testified that she does "not recall" whether any of her doctors suggested to her that there might be some social or underlying psychological condition that causes her to perceive minor trauma to her limbs as being severe. *Id.* at 99:18-22. Amazingly, Plaintiff testified at her deposition that she "could not recall" whether she ever used or requested a wheelchair. *Id.* at 134:6-135:9. A note from one of Plaintiff's doctors indicates that she has indeed requested a wheelchair. Equally astonishing, Plaintiff testified that she could not recall who prescribed the wrist splints that she was wearing throughout her deposition. *Id.*

More importantly, Ms. McFadden insisted that *she and she alone* communicate with Applera during the disputed time frame, 2006-2007. Thus, to defend itself in this action, Applera cannot obtain information related to Ms. McFadden's communications with Applera and other parties from any source other than Ms. McFadden herself. Ms. McFadden made herself an important percipient witness, and due process and fundamental fairness entitle Applera to take her deposition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Employment History With Applera And Non-Work-Related Injuries.

Applera has employed Ms. Kelly since February 2002. It did not terminate her employment, but instead welcomed her back to work after a nearly <u>three-year</u> leave of absence.

According to her Complaint, on July 6, 2004, Ms. Kelly "tripped and sprained her ankle." (Complaint ¶ 8, attached as Ex. 1 to Paetkau Decl.) Although Ms. Kelly did not sprain her

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

1    ankle at work, Applera nevertheless granted her request for leave and she went on an extended

2    medical leave until September 2004. (*Id.*)

3           Plaintiff briefly returned to work in September 2004. Ms. Kelly alleges in her

4    Complaint that "[o]n or about September 21, 2004, while moving about extensively and attending to

5    multiple tasks at the same time, [she] re-injured her right ankle." (*Id.* ¶ 9.) Ms. Kelly alleges that

6    "[t]he re-injury was quite serious, in that [her] ankle did not heal well, and she continued

7    experiencing serious instability in her right ankle." (*Id.*) Ms. Kelly also alleges that "[t]ests

8    performed by [her] disability insurer in or about January 2005 to evaluate [her] readiness to return to

9    work seriously injured [her] left wrist, requiring a visit to the emergency room." (*Id.*)

10    **B.**    **Plaintiff's Extended Three-Year Medical Leave Of Absence.**

11           Ms. Kelly claims that her "ankle condition is a physical impairment that limited her

12    ability to perform the major life activity of work." (*Id.* ¶ 10.) She further alleges that "[t]he severity

13    of [her alleged] disability required her to remain off of work for a period of time." (*Id.* ¶ 11.)

14           Throughout her extended three-year leave of absence, the Company provided full

15    Salary Continuation benefits, and both Short-Term and Long-Term Disability benefits through

16    UnumProvident ("Unum"), the Company's disability insurer.

17           Extending a leave of absence, in this case for nearly three years, is itself a reasonable

18    accommodation under the state and federal disability laws, particularly when the evidence shows

19    that Plaintiff was unable to perform the essential functions of her job even with other reasonable

20    accommodations during the disputed time frame. *See Schmidt v. Safeway Inc.,* 864 F. Supp. 991,

21    996-97 (D. Or., 1994); *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 878-79 (9th Cir. 1989), *cert.*

22    *denied,* 498 U.S. 814 (1990); *Criado v. IBM Corp.,* 145 F.3d 437, 443-444 (1st Cir. 1998); *Taylor v.*

23    *Pepsi-Cola Co.,* 196 F.3d 1106, 1110 (10th Cir. 1999) (in determining whether extension of leave is

24    reasonable accommodation, courts consider whether employee has given any indication of when she

25    can return to work); *Waggoner v. Olin Corp.,* 169 F.3d 481, 483-85 (7th Cir. 1999); *Tyndall v.*

26    *National Educ. Ctrs. Inc.,* 31 F.3d 209, 213-24 (4th Cir. 1994) (whether employee will be able to

27    perform her duties when she returns); *Stubbs v. Marc Center,* 950 F .Supp 889, 893-95 (1997). The

28    evidence, including major "radical Bostrom ligament repair" surgery on Plaintiff's chronically

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

3.

1  unstable right ankle on November 3, 2006, shows that Plaintiff's right ankle, which she re-injured

2  when she returned to work too quickly in September 2004, was simply too unstable for her to

3  perform the essential functions of her job. Plaintiff's doctors noted in their medical records that

4  Plaintiff reported: (1) she was unable to work during this time frame; (2) she had been having

5  "significant difficulty performing her activities of daily living;" (3) her ankle "would give out" on

6  her even when she was standing still; and (4) she experienced "numerous other orthopedic

7  complaints."

8          According to Ms. Kelly, over one year later, in January 2006, her "physicians

9  determined that she was well enough to return to work, with restrictions on the number of hours she

10  could work, a restriction on lifting any more than 20 lbs, and a requirement that she sit down every

11  hour for at least 10 minutes." (*Id.* ¶ 12.) Ms. Kelly also alleges that she "provided defendants [sic]

12  with a physician's note authorizing her return to work, and specifying these restrictions." (*Id.*)

13  Applera has no record of ever receiving Ms. Kelly's alleged doctor's note in January 2006.

14  Significantly, Dr. Raad Al-Shaikh, who Plaintiff claims sent the alleged note, certified under penalty

15  of perjury that Plaintiff was "not a patient of Dr. Al-Shaikh's." (*See* Statement of Dr. Al-Shaikh,

16  attached as Ex. 25 to Paetkau Decl., ¶ 9.)

17      **C.**    **Ms. Kelly's Attorney Improperly Injects Herself Into The Parties' Interactive Process, And Obstructs And Interferes With That Process.**

18

19          On October 30, 2006, Applera notified Ms. Kelly that, "[o]n January 3, 2007 you will

20  have exhausted all available leave of absence time and it is our intent to process a termination

21  effective that date." In this letter, Applera notified Plaintiff of her eligibility for insurance coverage

22  under COBRA and stated, "Please contact HR Direct at (866) 654-3411 if you have any questions."

23  (Paetkau Decl. ¶ 4, Ex. 3.) Applera did not receive any response from Plaintiff until December 22,

24  2006, when her attorney, Ms. McFadden, sent a threatening letter to "Administrator/HR Client

25  Services" at the Company, advising that she "represents Megan Kelly as to her employment-related

26  claims against" the Company, ordering Applera to "*direct all future communications to my*

27  *attention*," and demanding Ms. Kelly's "personnel file and related documents." (Paetkau Decl. ¶ 4,

28  Ex. 4 [emphasis added].) McFadden promised in the same letter that "our demand letter will follow

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

4.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No. C-07-3002 MMC

1  shortly." (*Id.*) Despite demanding that Applera not have any further communications directly with

2  Plaintiff, McFadden never initiated any attempt to facilitate any discussion between her client and

3  the Company regarding her client's possible return to work.  Instead, she proceeded straight to

4  litigation.

5       Despite Plaintiff's precipitous threat of litigation, on January 3, 2007, Veronica Jones,

6  Senior Manager of Applera's Employee Relations, responded to McFadden, providing Ms. Kelly's

7  personnel file as requested, and inviting McFadden to call with any questions: "If you have any

8  questions, please do not hesitate to contact me at 650.638.5426." (Paetkau Decl., ¶ 4, Ex. 5.)

9       Ignoring Applera's repeated requests to engage in the interactive process in good

10  faith, on or about January 8, 2007, Ms. Kelly filed an administrative charge of discrimination with

11  the California Department of Fair Employment and Housing, alleging that "on or about January 30,

12  2006 (and continuing to the present), [Applera] failed to engage in the interactive process and failed

13  to accommodate my physical disability (ankle injury).  [Applera] refused to consider my doctor's

14  work restrictions, and told me the company did not want me back unless I could work at least 20

15  hours a week, or without any restrictions at all." (Paetkau Decl., ¶ 11, Ex. 27 [emphasis added]).

16  Significantly, Plaintiff claimed that Applera failed to engage in the interactive process before she or

17  McFadden had even communicated with any representative of Applera regarding purported work

18  restrictions, job skills or positions, and after McFadden instructed Applera in writing not to

19  communicate with Ms. Kelly directly, but instead to communicate only with McFadden. (Paetkau

20  Decl., ¶ 4, Ex. 4.)  In fact, as discussed below, McFadden's unilateral directive to Applera that it not

21  communicate at all with Plaintiff, and to communicate only through McFadden herself, is itself a

22  violation of California law as expressed in *Claudio v. Regents of Univ. of Cal.,* 134 Cal. App. 4th

23  224, 228 (2005), in which the appellate court explained that the interactive process is meant to be an

24  exchange between the employer and employee, and "an employee may not properly require an

25  employer to communicate only with an attorney." (Emphasis added.)

26       On January 10, 2007, Ms. Jones wrote to McFadden again to provide additional

27  documents pertaining to Ms. Kelly's employment with Applera. (Paetkau Decl., ¶ 4, Ex. 5.)  On

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

5.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No.  C-07-3002 MMC

1  February 23, 2007, with no attempt whatsoever first to engage in any interactive process, McFadden

2  sent a three-page demand letter to Ms. Jones, stating in part:

3      Ms. Kelly wants to move on with her life, and will agree to settle all past
       disability and related claims against Applied Biosystems for $75,000. She

4      also wants her job back. Ms. Kelly hereby demands that Applied
       Biosystems promptly engage in the interactive process with her, and offer

5      such reasonable accommodations as will allow her to return to work as
       quickly as possible.

6      (Paetkau Decl., ¶ 5, Ex. 21.)

7      On March 6, 2007, Charles J. Heinzer, corporate counsel for Applera, wrote to

8  McFadden: "Please direct any further correspondence regarding Ms. Kelly to my attention. We are

9  open to discussing this matter in order to reach a solution." (Paetkau Decl., ¶ 4, Ex. 6.)

10     Having not heard back from either Plaintiff or McFadden, and after attempting

11 without success to contact Plaintiff to discuss her work restrictions and possible return to work, on

12 March 28, 2007, Mr. Heinzer wrote to McFadden again: "Applera's Human Resources Department

13 recently attempted to contact Ms. Kelly to set up a meeting regarding her return to work. The

14 Company has not heard from her. May I ask you to contact your client and let us know when she

15 desires to discuss her return." (Paetkau Decl., ¶ 4, Ex. 7.) McFadden hastily responded with an e-

16 mail to Mr. Heinzer the next day, on March 29, 2007, alleging that she, herself, had earlier

17 responded to the Human Resources Department's attempt to contact Ms. Kelly and that she

18 (allegedly) had not heard back from the Human Resources Department. (Paetkau Decl., ¶ 4, Ex. 8.)

19 McFadden also wrote in this same puzzling e-mail, "I returned the message from Ms. Jones on

20 behalf of my client, and have not heard back from her. As we have advised repeatedly, Ms. Kelly

21 has been available and able to return to work for well over a year now." (Id. [emphasis added]). In

22 short, McFadden made herself a critical percipient witness.[1]

23     McFadden (and not Plaintiff) continued to speak on Plaintiff's behalf while Applera

24 was attempting to understand the precise nature of Plaintiff's physical restrictions in order to

25 determine whether the Company could accommodate her return to work in light of those alleged

26 _____

27 [1] Under Rule 2-100(A) of the California Rules of Professional Conduct, McFadden's persistent, direct communications with Applera, a "represented party," (see id., subsection B), even after the Company's in-house counsel, Mr. Heinzer, instructed McFadden in writing to "direct any further correspondence regarding Ms. Kelly to my attention" (Ex. 6 to

28 Paetkau Decl.), was obviously improper and also warrants McFadden's immediate disqualification.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No. C-07-3002 MMC

1  work restrictions. In May and June 2007, McFadden allegedly faxed directly to Applera several

2  copies of Ms. Kelly's doctors' notes. (Paetkau Decl. ¶ 4, Exs. 9-13.) In the subsequent months

3  (after Plaintiff returned to work), McFadden communicated directly with UnumProvident, the

4  Company's insurance provider which provided Plaintiff with paid benefits during her leave of

5  absence. (Paetkau Decl. ¶ 4, Exs. 14-19.) In addition, Ms. Jones continued to forward documents

6  relevant to Ms. Kelly to McFadden, as instructed by McFadden on December 22, 2006. (Paetkau

7  Decl. ¶ 4, Ex. 20.) Despite her ongoing communication and correspondence with representatives of

8  both Applera and Unum, McFadden never once inquired about the possibility of Ms. Kelly returning

9  to work with accommodations for her alleged physical restrictions. McFadden's only interests were

10  a precipitous and unnecessary lawsuit, more money, and blatant interference with the interactive

11  process.

12  **D.    Plaintiff's Precipitous Litigation Against Applera.**

13          On April 23, 2007, while Applera was still trying to determine Plaintiff's work

14  restrictions, Plaintiff proceeded to file a lawsuit against the Company alleging, among other things,

15  that by "refusing to give any consideration whatsoever to Plaintiff's [alleged] request for

16  accommodation, Defendants violated their obligation to engage in the interactive process, contrary to

17  Govt. Code § 12940(n)." (Complaint ¶ 17, Ex. 1 to Paetkau Decl.) Prior to removing the action to

18  this Court, Applera filed an Answer generally denying Plaintiff's allegation, and asserting as

19  separate affirmative defenses, among others:

20          "Plaintiff unreasonably failed to use the preventative and corrective
        opportunities provided to employees by Applera, and reasonable use of the
21        procedures would have prevented at least some of the harm that the
        Plaintiff allegedly suffered."
22
        "Plaintiff's Complaint, and each and every cause of action contained
23      therein, are barred in whole or in part because of her failure to cooperate in
        good faith in the interactive process."
24
        "Plaintiff's Complaint, and each and every cause of action contained
25      therein, are barred in whole or in part because of Plaintiff's direct or
        indirect responsibility for any alleged breakdown in, or disruption of, the
26      interactive process."

27          "Plaintiff suffered no harm or other prejudice as a result of Applera's
        alleged failure to initiate or properly conduct the interactive process
28      because, at all material times, a reasonable accommodation of Plaintiff's

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

7.

alleged disability was not possible; thus, Plaintiff's Complaint, and each and every cause of action contained therein, are barred in whole or in part, or fail as a matter of law."

"To the extent during the course of litigation [Applera] acquires any evidence of Plaintiff's wrongdoing, such after-acquired evidence bars Plaintiff's claims of liability or damages or reduces such claims as provided by law."

"The injuries and damages alleged in the Complaint were caused by and/or were contributed to by Plaintiff's own acts or failure to act and that Plaintiff's recovery, if any, should be reduced by an amount proportionate to the amount by which said acts caused or contributed to said alleged injuries or damages." (Paetkau Decl. ¶ 3, Ex. 2.)

**E.     Plaintiff's Proposed Amended Complaint Underscores The Necessity Of McFadden's Deposition.**

On February 29, 2008, Plaintiff filed a Motion for Leave to File a First Amended Complaint. (Paetkau Decl. ¶ 10, Ex. 26.) In this Motion, Plaintiff proposes to add two new claims, including one for "Failure to Engage in the Interactive Process in Good Faith (2007)." *Id.* In support of this proposed new claim, Plaintiff alleges in Paragraph 30: "In February 2007, after Applera told plaintiff if was going to terminate her, plaintiff again advised the company of her work restrictions, and requested accommodations that would allow her to return to work. Plaintiff kept defendants advised of her work restrictions at all times thereafter." As demonstrated by the parties' sequence of correspondence above, this claim is plainly untrue. In February 2007, Applera did not tell Plaintiff that the Company intended to terminate her employment; to the contrary, at that time, Applera was still trying to determine the nature of Plaintiff's alleged work restrictions in order to determine whether the Company could accommodate them. The truth is that McFadden prohibited Applera from communicating with Plaintiff, which *Claudio* holds is totally improper and illegal. McFadden affirmatively interfered with the interactive process.

In addition, Plaintiff did not "again advise" Applera of her work restrictions in February 2007 – indeed, as of this date, she <u>never responded at all</u> to the Company's repeated efforts to ascertain the nature of those alleged work restrictions. Plaintiff's assertion that she kept the Company "apprised" is also provably false. Applera <u>repeatedly</u> attempted to discuss Plaintiff's alleged work restrictions with her to determine whether the Company could accommodate those

8.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No.  C-07-3002 MMC

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

1  restrictions.  Plaintiff refused to participate in such a discussion until April 2007.  McFadden's

2  unlawful interjection of herself into the interactive process obstructed Applera's ability to

3  communicate with Plaintiff – indeed, McFadden affirmatively barred Applera from doing so.

4           In Paragraph 31 of her proposed amended complaint, Plaintiff alleges: "Despite

5  plaintiff's requests, defendant delayed having an interactive meeting with plaintiff, and then further

6  delayed her return to work until June 2007."  First, neither Plaintiff nor Ms. McFadden made any

7  "requests" for an interactive process with Applera.  As the evidence demonstrates, they were more

8  interested in litigation, threats and exorbitant demands for even more money (Plaintiff was out on a

9  subsidized leave of absence for nearly three years).  Second, Applera did not delay having an

10  interactive meeting with Plaintiff.  As noted above, Applera made repeated efforts to engage in the

11  interactive process with Plaintiff, but neither Plaintiff nor her attorney responded in a manner that

12  would permit the type of dialogue envisioned by *Claudio,* which consists of a cooperative back-and-

13  forth between the employer and employee designed to reach mutually workable solutions.  Instead,

14  Applera received from Ms. McFadden only a strict instruction not to communicate with Plaintiff at

15  all, a demand for Plaintiff's documents, a notification that a "demand letter" would follow, and then,

16  some months later, a puzzling assertion that Ms. McFadden herself had "repeatedly" advised the

17  Company of Plaintiff's alleged medical condition and alleged work restrictions.[2]  Meanwhile,

18  McFadden continued to engage in unethical *ex parte* contact with Applera, a "represented party."

19  Cal. R. Prof. Conduct 2-100.

20           Finally, Applera did not cause any delay in returning Plaintiff to work.  Any "delay"

21  was caused by Plaintiff's two surgeries on November 3, 2006 and April 18, 2007, and her own

22  decision to litigate rather than recuperate and return to work.  After Applera tried to return Plaintiff

23  to work as soon as practicable, Plaintiff re-injured herself in September 2004.  Out of concern for

24  Plaintiff's own safety, Applera returned Plaintiff to work again when she was less likely to re-injure

25  herself a third time.

26  _____

27  [2] In her deposition, Plaintiff testified that she allegedly faxed doctors' notes and other communications directly to
    Applera in 2007.  However, Plaintiff cannot find a single fax cover sheet corresponding to these alleged faxes, nor can
    she recall any details as to what she faxed, if anything.  Applera has no record of receiving any faxes from Plaintiff in

28  2007 – indeed, what little communication Applera received regarding Plaintiff came exclusively through McFadden.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

9.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No.  C-07-3002 MMC

In Paragraph 33, Plaintiff claims: "By engaging in the above-referenced conduct <u>during 2007</u>, defendants violated their obligation to engage in the interactive process in good faith." (Paetkau Decl., ¶ 10, Ex. 26 [emphasis added].)  Again, however, Applera had only one goal: To communicate with Plaintiff in good faith to determine what accommodations she needed and whether the Company could reasonably provide them.  McFadden made that goal impossible.

### F.    Defendant Met And Conferred With Plaintiff Prior To Filing This Motion.

On January 23, 2008, Applera's counsel notified McFadden that Applera intended to take her deposition regarding her communications with Applera, the interactive process breakdown, and Plaintiff's return to work.  (Paetkau Decl. ¶ 7, Ex. 23.)  Applera's counsel assured McFadden that it would not seek to obtain any attorney-client-privileged information.  (*Id.*)  However, McFadden responded: "You are going to have to make a motion to get my depo – as you know, I have no information."  (*Id.*)  Applera's counsel subsequently requested that Ms. McFadden provide legal authority supporting Plaintiff's position.  (*Id.*)  However, Ms. McFadden never provided any response.  (*Id.*)

## III.    ARGUMENT

### A.    Ms. McFadden Improperly Interfered With Applera's Efforts To Engage In The Interactive Process.

It was both improper and counterproductive to the interactive process for Attorney McFadden to require Applera to "direct all communications to my attention," rather than to allow the Company to engage in the interactive process directly with Ms. Kelly in good faith, without interference or obstruction.  The interactive process contemplates that the employee and employer will communicate directly with each other to exchange information about work restrictions, job skills and job openings.  Therefore, the employee generally may not require the employer to communicate exclusively through the employee's attorney. *Claudio v. Regents of Univ. of Cal.*, 134 Cal. App. 4th 224, 247 (2005).  In this case, Plaintiff and her counsel, Maureen McFadden, chose to do precisely this.  By doing so, they made McFadden a critical percipient (fact) witness.  As a matter of constitutional due process and fundamental fairness, Applera must be able to explore all communications that McFadden had (or allegedly had) with the Company, even after its corporate

10.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1  counsel, Mr. Heinzer, put McFadden on notice that he was representing the Company in this matter

2  and to direct all further communications to his attention.  Applera requires McFadden's deposition as

3  she is an important percipient witness to the alleged claim of an alleged failure to engage in the

4  interactive process, and Applera's affirmative defenses that Plaintiff and her attorney interfered with

5  and obstructed that process during the same critical time period in which McFadden insisted that all

6  communications go through her and her alone.

7           In short, both the employer and the employee have an obligation to engage in the

8  interactive process in good faith.  *Barnett v. U.S. Airways, Inc.*, 228 F.3d 1063, 1116 (9th Cir. 2000).

9  Employees, for their part, have an obligation to offer essential information to which they have

10 superior access, *e.g.*, information regarding their capabilities and limitations.  *Id.*; *see also Taylor v.*

11 *Phoenixville School District*, 184 F.3d 296, 317-18 (3d Cir. 1999).

12          In this case, Applera engaged in the interactive process with Ms. Kelly (and her

13 attorney) in good faith by:

14          •       Meeting in person and communicating with Ms. Kelly to discuss her return to

15 work, work restrictions and possible accommodations in a timely manner;

16          •       Requesting information about the work-related limitations caused by the

17 alleged medical conditions;

18          •       Asking Ms. Kelly what she and her health care providers suggest as

19 reasonable accommodations and demonstrably considering those suggestions; and

20          •       Offering and discussing alternatives when a given request seems too

21 burdensome (*see Taylor v. Phoenixville School District*, 184 F.3d 296, 317 (3rd Cir. 1999)).

22          Unfortunately, in this case, Ms. Kelly and her attorney, Maureen McFadden, engaged

23 in bad faith conduct designed to undermine and thwart the interactive process.  *Barnett v. U.S.*

24 *Airways, Inc.*, 228 F.3d 1063, 1113 (9th Cir. 2000); *Taylor v. Phoenixville School District*, 184 F.3d

25 296, 317-18 (3d Cir. 1999); *Beck v. University of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135-37 (7th

26 Cir. 1996) ("Where the missing information is of the type that can only be provided by one of the

27 parties, failure to provide the information may be the cause of the breakdown and the party

28 withholding the information may be found to have obstructed the process"); *Allen v. Pacific Bell*,

11.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No.  C-07-3002 MMC

1  348 F.3d 1113, 1115 (9th Cir. 2003) (employee's failure to provide medical information requested

2  by employer excused employer's duty to accommodate).

3          On similar facts, the court in *Claudio v. Regents of University of California,* 134 Cal.

4  App. 4th 224, 228 (2005), held that an employee ordinarily may not require an employer to

5  communicate directly with his or her attorney because the interactive process contemplates that that

6  employee and employer will communicate <u>directly</u> with each other to exchange information about

7  work restrictions, job skills and openings.   McFadden unilaterally imposed precisely the same

8  restriction that *Claudio* prohibits.   By inserting herself between her client and the Company,

9  McFadden interfered with and obstructed the interactive process.  (Paetkau Decl. ¶¶ 4-5, Exs. 4-8,

10  14-19, 20-21.)   After doing so, she now claims that the Company did not engage in the interactive

11  process in good faith.  She made herself a necessary (indeed, critical) percipient witness and is now

12  refusing to allow Applera to defend itself.  But Plaintiff cannot have it both ways.  She cannot now

13  deprive Applera of the opportunity to discover information directly relevant to Plaintiff's claims and

14  Applera's defenses.

15      **B.    McFadden's Deposition Is Necessary And Proper Under The Governing Legal
16              Standard.**

17          A deposition of opposing counsel, although unusual and not routinely permitted, is

18  proper in this case because McFadden made herself a critical percipient witness, by not only

19  communicating directly with Applera (a "represented party" under Cal. R. Prof. Conduct 2-100)

20  regarding disputed facts (alleged failure to timely or properly engage in the interactive process)

21  during the relevant time frame, but also by *affirmatively representing that the Company failed to*

22  *respond to her own communications in a timely manner.*   (*See, e.g.,* Ex. 8 to Paetkau Decl.

23  (McFadden to Heinzer: "<u>I returned the message from Ms. Jones on behalf of my client, and have not</u>

24  <u>heard back from her</u>.  As <u>we</u> have advised repeatedly, Ms. Kelly has been available and able to

25  return to work for well over a year now." [emphases added]).)  By communicating directly with both

26  Applera and other involved parties (including Unum) during the time period at issue, *characterizing*

27  *those important communications*, and obstructing the Company's ability to engage in the interactive

28  process with her client, Plaintiff, McFadden made herself a necessary fact witness.  (*Id.*)

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

12.

Federal courts apply a three-prong test in considering the propriety of attorney depositions. A party may take the deposition of opposing counsel if it can establish that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and not privileged; (3) the information is crucial to the preparation of the case." *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998); *American Cas. Co. v. Krieger*, 160 F.R.D. 582, 589 (S.D. Cal. 1995); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

    **C.**    **Because McFadden Improperly Inserted Herself Into, And In Fact Obstructed and Interfered With, Applera's Attempt To Engage In The Interactive Process With Plaintiff, Applera Satisfies The Legal Standard For Her Deposition.**

Under settled law, due process entitles Applera to take McFadden's deposition because she made herself a fact witness to unprivileged information. For example, in *American Cas. Co.*, 160 F.R.D. at 583, the plaintiff, an insurance company, sought to depose counsel for the defendants, two claimants who sustained injuries from a third party. The plaintiff argued that deposition of counsel was proper because they were important witnesses to relevant, non-privileged events and conversations that took place prior to the commencement of the litigation, and because those conversations occurred prior to the formation of an attorney/client relationship between counsel and claimants. *Id.* at 585-86. The defendants argued that deposition of their counsel would be improper because the plaintiff failed to meet the standard set forth in *Shelton*. *Id.* at 586-87. In *Shelton*, the plaintiffs sought to take the deposition of defendant American Motor Corporation's counsel in a products liability case. 805 F.2d at 1325. During the deposition, the deponent attorney refused to answer questions regarding the existence or nonexistence of certain documents, based upon the attorney work product doctrine and the attorney-client privilege. *Id.* The plaintiffs then sought sanctions for counsel's refusal to answer these questions. *Id.* at 1325-26. The Eighth Circuit reversed the district court's entry of a default judgment against the defendant, finding that an attorney's mental impressions leading to selection of certain documents versus others is protected as work product, and held that deposition of counsel should be permitted only when the party seeking the deposition has shown that (1) no other means exist to obtain the information than to depose

13.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No.  C-07-3002 MMC

1  opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information

2  is crucial to the preparation of the case. *Id.* at 1326-28.

3          After considering both of these arguments, the *American Casualty* court permitted the

4  defendant to depose the plaintiffs' counsel, finding that the *Shelton* factors were satisfied.  160

5  F.R.D. at 587-91.  In its analysis, the U.S. District Court for the Southern District of California

6  considered the New Jersey district court's decision in *Johnston Development Group, Inc. v.*

7  *Carpenters Local Union No. 1578,* 130 F.R.D. 348 (D.N.J. 1990).  In *Johnston,* the defendant sought

8  to depose the plaintiff's counsel to discover information about communications and events in which

9  counsel were involved prior to the litigation.  *Id.* at 350.  In considering whether to permit these

10  depositions of counsel, the court first noted the absence of any general prohibition against deposition

11  of counsel regarding relevant, non-privileged information.  *Id.* at 352.  The court then noted, "The

12  deposition of the attorney may be both necessary and appropriate where the attorney may be a fact

13  witness, such as an actor or viewer." *Id.* (emphasis added).  The *Johnston* court concluded that the

14  fact that the plaintiff's attorney "participated in multiple conversations of clear importance, few

15  participants and disputed contents, concerning central issues giving rise to [the] suit strongly

16  favor[ed] permitting defendants to obtain his deposition testimony regarding these instances." *Id.* at

17  354.

18          Precisely the same reasoning applies here: McFadden made herself a crucial witness

19  by corresponding directly with representatives of Applera (a "represented party" under Cal. R. Prof.

20  Conduct 2-100), as well as with the Company's disability insurance provider, Unum.  (Paetkau Decl.

21  ¶¶ 4-5, Exs. 4-8, 14-19, 20-21.)  These communications bear directly on Plaintiff's claim that the

22  Company failed properly to engage in the interactive process with her.  No other party can

23  competently testify as to the contents of McFadden's communications, the substance of which are

24  directly relevant to and necessary for Applera's defense of Plaintiff's claims in this action.

25          McFadden also made herself a witness by requiring that the Company direct all

26  communications regarding Plaintiff only to McFadden.  (Paetkau Decl. ¶ 4, Ex. 4.)  Because of this

27  unlawful restriction, the Company could not communicate directly with Plaintiff in order to discuss

28  the nature of her work restrictions, any accommodation she may have needed, and how best and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415 433.1940

14.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN
Case No.  C-07-3002 MMC

1    whether to provide it.  In the face of the mountain of evidence to the contrary, Plaintiff cannot

2    credibly contend that her counsel's direct and extensive communications with the Company and with

3    UnumProvident (Applera's disability insurance provider) occurred during a period of time that is

4    irrelevant to Plaintiff's claims.  (Paetkau Decl. ¶¶ 4-5, Ex. 4, 8, 14-19, 21.)   To the contrary,

5    McFadden improperly (and unethically) communicated with these parties during the *same* period of

6    time that Plaintiff claims she suffered discrimination and was not accommodated in good faith.

7    (Paetkau Decl., ¶¶ 2, 4, 5, 10, Exs. 1, 4, 8, 14-19, 21, 26.)  After October 2006, communications

8    were with McFadden, at her unlawful directive, and not with Plaintiff.  Plaintiff's claims against the

9    Company allege violations during this same period of time.  (*See* Complaint and Motion for First

10   Amended Complaint, Exs. 1 and 26 to Paetkau Decl.)

11            Applera satisfies all three elements of the standard set forth in *American Casualty*.

12   Applera has no other means to obtain information regarding McFadden's direct and extensive

13   communications with the Company, those communications are relevant and non-privileged (Applera

14   does not seek to discover communications between McFadden and her client), and the information

15   sought is crucial to the preparation of Applera's case.

16   **D.    Applera Has A Fundamental Due Process Right To Discover Directly Relevant,
             Non-Privileged Information That Is Only Available From Attorney McFadden.**

17

18            It would be patently unfair to permit Plaintiff to first claim that the Company failed to

19   engage in the interactive process in good faith, and then to refuse to permit Applera to conduct

20   necessary discovery to determine the facts surrounding McFadden's extensive, direct

21   communications with the Company (a "represented party" at the time) and other relevant parties

22   during the same period of time for which Plaintiff seeks damages.  McFadden's insistence that the

23   Company go through her for all communications with Plaintiff seriously undermined the Company's

24   ability to engage in the interactive process.  Plaintiff cannot make her serious allegations based on

25   the interactive process and then conceal directly relevant information pertaining to McFadden's

26   improper interference with and obstruction of that same interactive process.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

15.

1                 In *Fremont Indem. Co. v. Superior Court*, 137 Cal. App. 3d 554 (1982), the court

2  considered the issue of whether one can initiate a lawsuit and then rely on a privilege effectively to

3  prevent the party sued from obtaining facts by way of discovery, and thus prejudice preparation of

4  his defense. *Id.* at 557. In analyzing this question, the court considered several other decisions

5  standing for the proposition that a litigant cannot "have his cake and eat it too." *Id.* at 557. In one

6  such case, a plaintiff claimed negligent and improper tax advice, preparation, and computation, but

7  asserted the taxpayer's privilege when asked to disclose documents pertaining to her taxes. *Id.* at

8  558. The court reasoned:

> By her complaint, plaintiff has placed in issue the existence and the content
> of her tax returns. . . . The gravamen of her lawsuit is so inconsistent with
> the continued assertion of the taxpayer's privilege as to compel the
> conclusion that the privilege has in fact been waived. Moreover,
> establishment of all the essential elements of plaintiff's case will be
> impossible without proof of statements and computations in her tax returns.
> To permit plaintiff to produce evidence of the contents of those returns
> while successfully resisting their disclosure on grounds of privilege would
> be manifestly unfair to defendants. Accordingly, plaintiff can either
> maintain her lawsuit or the confidentiality of her returns, but not both. *Id.*
> at 559.

15                 The *Fremont Indemnity* court's reasoning is equally applicable here. Ms. Kelly

16  claims that Applera did not engage in the interactive process in good faith, but seeks to hide from

17  Applera the relevant, non-privileged and extensive direct communications her own counsel had with

18  Applera and Unum during the very same period of time in which Ms. Kelly claims Applera acted

19  improperly (and for which she seeks emotional distress and other damages). McFadden and her

20  client cannot "have their cake and eat it too." *Id.* at 559-60.

21                 McFadden made herself a critical material witness who has sole knowledge of

22  directly relevant information that is unavailable to Applera from any other source. In addition to

23  being unable to remember most details, Plaintiff admitted in her deposition that her communications

24  with Applera during the time period in which she claims the Company failed to engage her in the

25  interactive process ranged from limited to nonexistent. For example, when asked whether she ever

26  called anyone in the Company's Human Resources Department between September 22, 2004 and

27  January 23, 2006, Ms. Kelly answered, "I don't remember." (Pltf. Depo. at 69:3-69:6, Ex. 22 to

28  Paetkau Decl.) When asked if she sent anything in writing during this time period, Plaintiff said she

16.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433.1940

1   sent a fax. *Id.* at 69:12-69:24. When Applera asked Ms. Kelly when she sent the fax, she answered,

2   "I don't remember." *Id.* at 70:4-70:5. Plaintiff stated that she faxed a doctor's note to Jonathan

3   Laosiri and left voicemail messages for him, but said she cannot find any record of any fax

4   confirmation. *Id.* at 70:6-70:9. When asked how many messages she left for Mr. Laosiri, and

5   whether she ever spoke to him live, Plaintiff again answered that she could not remember. *Id.* at 73:-

6   16-73:18. In response to Applera's question as to whether Plaintiff had any communication with

7   anyone at Applera about returning to work, up through and including the end of 2006, Ms. Kelly

8   answered, "No." *Id.* at 85:24-86:3.

9          Given Plaintiff's inability to respond to Applera's attempts to discover material,

10  directly relevant information, and due to McFadden's decision to handle all communications <u>on</u>

11  <u>Plaintiff's</u> <u>behalf</u>, Applera cannot obtain the needed information from Plaintiff or any party other

12  than McFadden. McFadden is the only source of information from which Applera can discover

13  these essential facts.

14  **IV.    CONCLUSION**

15         It is difficult to imagine a greater injustice than to permit a plaintiff to file suit against

16  a defendant for serious violations of the law, and then allow that plaintiff to deny the defendant

17  access to relevant, non-privileged information that goes to the crux of the plaintiff's claims. But that

18  is precisely what Plaintiff and McFadden seek in this action: To hide the truth. Ms. Kelly's attorney

19  directly, improperly and unethically[3] inserted herself in relevant, non-privileged communications

20  with Applera and Unum, affirmatively prevented Applera from contacting Ms. Kelly directly, failed

21  to participate in any discussion of possible ways to accommodate Ms. Kelly's work restrictions, and

22  now insists that she has "no relevant information."

23         Applera recognizes that to take a deposition of opposing counsel, a proponent must

24  meet a high standard. However, because of Ms. McFadden's unusual conduct (including extensive,

25  direct communications with a party, Applera, which McFadden knew to be represented by counsel),

26  which renders her a critical fact witness, Applera has met that high standard. Under existing case

27    [3]  Applera was a "represented party" under Rule 2-100 of the California Rules of Professional Conduct. *See* Ex. 6 to

28  Paetkau Decl. (3/6/07 letter from Heinzer to McFadden); *and see* McFadden's subsequent direct communications with
    the Company – Exs. 8-13 to Paetkau Decl.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433.1940

17.

1   law, principles of due process, and fundamental fairness, the Court should permit Applera to depose

2   McFadden regarding her extensive, direct communications with Applera and UnumProvident, not

3   including any communications legitimately subject to the attorney-client privilege.

5   Dated:  March 5, 2008

                          _Molly Agarwal_

TYLER M. PAETKAU
MICHAEL G. PEDHIRNEY
MOLLY AGARWAL
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
APPLERA CORPORATION

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

18.