1   TYLER M. PAETKAU, Bar No. 146305
    MICHAEL G. PEDHIRNEY, Bar No. 233164
2   LITTLER MENDELSON
    A Professional Corporation
3   650 California Street, 20th Floor
    San Francisco, CA  94108.2693
4   Telephone:    415.433.1940
    Email: tpaetkau@littler.com,
5   mpedhirney@littler.com

6   Attorneys for Defendant
    APPLERA CORPORATION

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  MEGAN KELLY,                        Case No.  C-07-3002 MMC

13              Plaintiff,              **OPPOSITION MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES TO**
14        v.                            **PLAINTIFF'S MOTION TO AMEND**
                                        **COMPLAINT**
15  APPLERA CORPORATION,
                                        Date:       April 4, 2008
16              Defendant.              Time:       9:00 a.m.
                                        Courtroom: 7, 19th Floor
17                                      Judge:      Hon. Maxine Chesney

18

19

20

21

22

23

24

25

26

27

28
                                              Case No.  C-07-3002 MMC
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
    CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    Plaintiff's Employment History With Applera And Non-Work-Related
        Injuries ................................................................................................... 2

    B.    Plaintiff's Extended Two-Year-Plus Medical Leave Of Absence .............. 2

    C.    Plaintiff Was Unable To Return To Work And Indicated No Desire To Return
        To Work ................................................................................................... 3

    D.    Ms. Kelly's Attorney's Interference With The Good Faith Interactive Process.......... 3

    E.    After Finally Being Apprised Of The Nature Of Ms. Kelly's Work
        Restrictions, Applera Returns Ms. Kelly To Work Pursuant To The
        Instructions Provided To Applera By Ms. Kelly's Physician....................... 5

    F.    Plaintiff Seeks To Add New Meritless Claims Of "Retaliation" And
        Discrimination........................................................................................... 6

III.  ARGUMENT ....................................................................................................... 6

    A.    Plaintiff's Tardy Motion To Amend Fails To Comply With The Court's Local
        Rule 16-2(d) and Rule 16 Of The Federal Rules ........................................ 6

    B.    Plaintiff's Purported Justifications For Her Tardy Proposed Amended
        Complaint Cannot Withstand Scrutiny, And Do Not Constitute "Good Cause".......... 7

    C.    Plaintiff's Proposed Amended Complaint Fails To State New Claims For
        Relief and Would Be Futile and Unduly Prejudicial ................................. 10

IV.   CONCLUSION.................................................................................................... 12

TABLE OF AUTHORITIES

PAGE

## CASES

Acri v. International Ass'n of Machinists and Aerospace Workers,
  781 F.2d 1393 (9th Cir. 1986) ................................................................. 9

AmerisourceBergen Corp. v. Dialysist West, Inc.,
  465 F3d 946 (9th Cir. 2006) ................................................................. 8

Coleman v. Quaker Oats Co.,
  232 F.3d 1271 (9th Cir. 2000) ............................................................. 7, 9

Dumas v. New United Motor Mfg.,
  2007 U.S. Dist. LEXIS 30042 (N.D. Cal. 2007) ................................ 11

Gabrielson v. Montgomery Ward & Co.,
  785 F.2d 762 (9th Cir. 1986) ............................................................... 10

In re San Juan Dupont Plaza Hotel Fire Litig.,
  111 F.3d 220 (1st Cir. 1997) ................................................................ 8

Invest Almaz v. Temple–Inland Forest Products Corp.,
  243 F.3d 57 (1st Cir. 2001) ................................................................. 10

Jackson v. Laureate, Inc.,
  186 F.R.D. 605 (E.D. Cal 1999). .......................................................... 8

Johnson v. Mammoth Recreations, Inc.,
  975 F.2d 604 (9th Cir. 1992) ................................................................ 7

Kaplan v. Rose,
  49 F.3d 1363 (9th Cir. 1994) .............................................................. 10

Lockheed Martin Corp. v. Network Solutions, Inc.,
  194 F.3d 980 (9th Cir. 1999) ................................................................ 9

Loehr v. Ventura County Community College District,
  743 F.2d 1310 (9th Cir. 1984) ........................................................... 10

Miller v. Rykoff-Sexton, Inc.,
  845 F.2d 209 (9th Cir. 1988) ............................................................. 10

Minter v. Prime Equip. Co.,
  451 F.3d 1196 (10th Cir. 2006); .......................................................... 7

Optivus Technology, Inc. v. Ion Beam Applications S.A.,
  469 F.3d 978 (Fed. Cir. 2006) ............................................................. 7

Southwestern Bell Tel. Co. v. City of El Paso,
  346 F.3d 541 (5th Cir. 2003) ............................................................... 8

Thomas v. Department of Corrections,
  77 Cal. App. 4th 507 (2000) ............................................................... 11

Zivkovic v. Southern Cal. Edison Co.,
  302 F.3d 1080 (9th Cir. 2002) ........................................................... 10

## STATUTES

Fed. R. Civ. P. 15(a)(2) ......................................................................... 7

Fed. R. Civ. P. 16 .......................................................................... 1, 6, 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

Fed. R. Civ. P. 16(b)(4) ................................................................................................ 7

Fed. R. Civ. P. 16(d) ..................................................................................................... 7

Fed. R. Civ. P. 16-2(d) ......................................................................................... 1, 6, 7

Fed. R. Civ. P. 26 .......................................................................................................... 7

Fed. R. Civ. P. 7 ............................................................................................................ 7

## OTHER AUTHORITIES

California Family Medical Leave Act ............................................................................ 2

M. Chin, R. Wiseman, C. Callhan & E. Exelrod,
    *California Practice Guide Employment Litigation* ................................................. 8

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

iii.

Case No.  C-07-3002 MMC

1    **I.     INTRODUCTION**

2              Plaintiff Megan Kelly filed her Complaint in this action one year ago, alleging that

3    her current employer, Defendant Applera Corporation ("Applera"), discriminated against her based

4    on her alleged disability and failed to engage in the interactive process in good faith, even though

5    Applera returned Plaintiff to her former position with no loss in pay or privileges as soon as she had

6    recovered from two surgeries to her right ankle and left wrist.  On September 14, 2007, the Court

7    entered its Rule 16 Scheduling Order, setting a fact discovery cutoff date exactly one week from the

8    hearing on Plaintiff's eleventh-hour motion to amend, <u>April 11, 2008</u>.  Since the filing of the

9    Complaint, the parties naturally have directed their discovery and settlement efforts to the allegations

10   in that Complaint.  Now, after the case did not settle on her terms, Plaintiff seeks additional leverage,

11   via a tardy and patently defective motion to add meritless "retaliation" and "regarded as" disability

12   discrimination claims.  Plaintiff has not shown and cannot show "good cause" for her untimely

13   amendment under Rule 16 and the Court's Local Rule 16-2(d), and such an amendment at this late

14   date would prejudice Applera's trial preparation.

15             In support of her motion, Plaintiff asserts only that the California Department of Fair

16   Employment and Housing's alleged delay in providing her with a "right-to-sue" notice justifies her

17   late amendment.  But as any employment practitioner knows, a plaintiff can request a right-to-sue

18   letter at any time from the DFEH, and the DFEH routinely grants such requests.  Plaintiff also

19   mistakenly asserts that she "only recently learned that Applera is claiming that she was not disabled

20   at all, necessitating the addition of the other protected categories, 'regarded as' having a disability,

21   and having a history of having a disability, to the pleadings." Memo. of Ps & As at p. 1, lines 26-28.

22   However, Applera could not have been more clear in its Answer filed on <u>June 7, 2007</u>: "Plaintiff was

23   not a qualified individual with a disability in that Plaintiff could not perform the essential functions

24   of the position with or without reasonable accommodation."  Applera's Answer, Tenth Affirmative

25   Defense ("No Protected Disability"), attached as Exhibit ("Ex.") 2 to the Declaration of Tyler M.

26   Paetkau ("Paetkau Decl."), filed concurrently.  In sum, there is no justification and no "good cause"

27   for Plaintiff's tardy motion to amend, and the Court should deny her motion.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

II.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Plaintiff's Employment History With Applera And Non-Work-Related Injuries.**

Defendant has employed Plaintiff for approximately six years. Applera, through Applied Biosystems, offered Ms. Kelly a job as an Associate Production Chemist on January 23, 2002. Ms. Kelly accepted Applera's offer on January 28, 2002 and started employment on February 11, 2002. By all accounts, Applera and Ms. Kelly enjoyed a mutually rewarding working relationship. According to her Complaint, on July 6, 2004, Ms. Kelly "tripped and sprained her ankle." Ms. Kelly did not sprain her ankle at work, but Applera granted her request for FMLA leave and she went on an extended medical leave until September 2004.

Ms. Kelly alleges that "[a]s part of her return to work, [she] was supposed to be able to sit down whenever she needed to," and that Applera "pressured [her] to get orders done quickly, and [she] was seldom able to sit down." Applera disputes each of these allegations, but in any case Ms. Kelly alleges in her Complaint that "[o]n or about September 21, 2004, while moving about extensively and attending to multiple tasks at the same time, [she] re-injured her right ankle." Ms. Kelly alleges that "[t]he re-injury was quite serious, in that [her] ankle did not heal well, and she continued experiencing serious instability in her right ankle." Ms. Kelly also alleges that "[t]ests performed by [her] disability insurer in or about January 2005 to evaluate [her] readiness to return to work seriously injured [her] left wrist, requiring a visit to the emergency room." (Complaint, attached as Ex. 1 to Paetkau Decl.)

B.    **Plaintiff's Extended Two-Year-Plus Medical Leave Of Absence**

Ms. Kelly claims that her "ankle condition is a physical impairment that limited her ability to perform the major life activity of work. She further alleges that "[t]he severity of [her alleged] disability required her to remain off of work for a period of time. The undisputed fact is that Ms. Kelly went out on an extended two-year leave of absence and received full pay and benefits during such leave. Contrary to her allegations, Ms. Kelly never communicated with anyone at Applera, or even attempted to communicate with anyone at Applera, during her extended medical leave of absence.

Applera treated Ms. Kelly generously throughout her extended medical leaves of

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

1    absence. First, Applera fully accommodated Ms. Kelly's requests for additional medical leaves of

2    absence, without question or delay. Second, and although not legally required, the Company paid

3    her full salary via its Salary Continuation policy for the maximum amount of time – 26 weeks.

4    Further, on January 13, 2005, the Company's long term disability insurance carrier, UnumProvident,

5    approved Ms. Kelly for long term disability insurance payments and Ms. Kelly continued to receive

6    payments directly from UnumProvident amounting to two-thirds of her salary, without any payment

7    of premiums by Plaintiff. The Company also continued to pay what would normally be the

8    employee's portion of premiums for medical, dental and vision insurance coverage while Ms. Kelly

9    was out on her extended medical leave of absence.

10    **C.    Plaintiff Was Unable To Return To Work And Indicated No Desire To Return
           To Work.**

12    Although Ms. Kelly alleges that she "regularly left telephone messages with her

13    [former] immediate supervisor, Jonathan Laosiri, regarding her status and the progress of her

14    recovery," Applera has no record of such alleged telephone calls and also has nothing in writing

15    from Ms. Kelly concerning these issues while she was out on her paid, two-year-plus medical leave

16    of absence.

17    According to Ms. Kelly, in January 2006, her "physicians determined that she was

18    well enough to return to work, with restrictions on the number of hours she could work, a restriction

19    on lifting any more than 20 lbs, and a requirement that she sit down every hour for at least 10

20    minutes." Ms. Kelly also alleges that she "provided defendants [sic] with a physician's note

21    authorizing her return to work, and specifying these restrictions," but Applera never received any

22    such alleged "physician's note" in January 2006. More importantly, both Ms. Kelly and her own

23    health care providers contradicted this allegation when they stated that she was not able to return to

24    work (with severe restrictions) until over one year later.

25    **D.    Ms. Kelly's Attorney's Interference With The Good Faith Interactive Process.**

26    It was not until November 2006, after Applera notified Ms. Kelly that, "[o]n

27    January 3, 2007 you will have exhausted all available leave of absence time and it is our intent to

28    process a termination effective that date" that Ms. Kelly indicated to Applera her desire to return to

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

3.                                                     Case No.  C-07-3002 MMC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

1   work.  However, instead of working cooperatively with the Company's human resources department

2   concerning a possible smooth transition back to work after such an inordinately long medical leave

3   of absence during which she did not communicate with the Company at all, Ms. Kelly decided to

4   hire an attorney.   On December 22, 2006, her attorney, Maureen McFadden, sent a letter to

5   "Administrator/HR Client Services" at the Company advising that she "represents Megan Kelly as to

6   her employment-related claims against" the Company, to "direct all future communications to my

7   attention," and demanding for Ms. Kelly's "personnel file and related documents." Ex. 3 to Paetkau

8   Decl.  Ms. McFadden promised in the same letter that "our demand letter will follow shortly." *Id.*

9   Inexplicably, neither Ms. Kelly nor her attorney made any effort even to ask Applera whether it had

10  a position available for her possible return to work, and similarly did not inform the Company about

11  the nature of Ms. Kelly's work limitations and restrictions at this time.

12          Determined to litigate rather than work with Applera in a cooperative manner to

13  return to work following her right ankle surgery in November 2007, on or about January 8, 2007,

14  Ms. Kelly filed an administrative charge of discrimination with the California Department of Fair

15  Employment and Housing, alleging disability discrimination, failure to engage in the interactive

16  process and failure to accommodate her alleged disability.

17          In fact, Plaintiff was not even ready to return to work when she filed her first DFEH

18  Charge on January 8, 2007.  For example, on February 13, 2007, Ms. Kelly's health care provider,

19  Josef Maier, MSPA-C, sent a letter "To Whom It May Concern," stating that Ms. Kelly had been

20  under his care "regarding her bilateral wrist injuries and is *able to return to work on 2/15/07*." Ex. 4

21  to Paetkau Decl. (emphasis added).  Mr. Maier also wrote that Ms. Kelly "will need to work with her

22  wrist splints on and will need to avoid heavy lifting of 5 lbs or more." *Id.*

23          Slightly over one week later, on February 23, 2007, once again with no attempt first

24  to engage in the required interactive process, Ms. McFadden sent a three-page demand letter to

25  Veronica Jones at Applera, stating in part:

26          Ms. Kelly wants to move on with her life, and will agree to settle all past
            disability and related claims against Applied Biosystems for $75,000.  She
27          also wants her job back.   Ms. Kelly hereby demands that Applied
            Biosystems promptly engage in the interactive process with her, and offer

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

4.                                    Case No.  C-07-3002 MMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

1    such reasonable accommodations as will allow her to return to work as
2    quickly as possible. Ex. 5 to Paetkau Decl.

3        On March 6, 2007, Charles J. Heinzer, corporate counsel for Applera, wrote to
4    Ms. McFadden: "Please direct any further correspondence regarding Ms. Kelly to my attention. We
5    are open to discussing this matter in order to reach a solution." Ex. 6. Having not heard back from
6    Ms. Kelly or Ms. McFadden, Mr. Heinzer wrote to Ms. McFadden again on March 28, 2007:
7    "Applera's Human Resources Department recently attempted to contact Ms. Kelly to set up a
8    meeting regarding her return to work. The Company has not heard from her. May I ask you to
9    contact your client and let us know when she desires to discuss her return." Ex. 7. Throughout this
10   time period, Applera attempted in total good faith to understand the precise nature of Ms. Kelly's
11   restrictions on her return to work, in a sincere effort to determine whether it could reasonably
12   accommodate her requests.

13       Attorney McFadden continued to have improper *ex parte* contact with Applera about
14   the subject matter of this action – alleged delays in the interactive process and Plaintiff's work
15   restrictions – even after the Company's corporate counsel, Charles J. Heinzer, clearly put her on
16   written notice that the Company was represented by counsel: "Please direct any further
17   correspondence regarding Ms. Kelly to my attention. We are open to discussing this matter in order
18   to reach a solution." Exs. 6, 8-12 to Paetkau Decl. (faxes from Attorney McFadden to Ms. Jones
19   after Mr. Heinzer's March 6, 2007 representation letter).

20       **E.    After Finally Being Apprised Of The Nature Of Ms. Kelly's Work Restrictions,
         Applera Returns Ms. Kelly To Work Pursuant To The Instructions Provided To
21       Applera By Ms. Kelly's Physician.**

22       On April 25 and May 9, 2007, Ms. Kelly's physician, Dr. Barry Rose, sent letters "To
23   Whom It May Concern," stating that Ms. Kelly was "currently under [his] care," and that she could
24   return to work "with restrictions," including avoiding "repetitive movements with either hand/wrist
25   for prolonged periods, no longer than 15 minutes at a time." Exs. 13-14 to Paetkau Decl.

26       On May 24, 2007, Dr. Rose sent another "To Whom It May Concern" letter, stating
27   that Ms. Kelly "may return to part-time work with limited repetitive activities." Ex. 15 to Paetkau
28   Decl. Once again, Applera sought in good faith to understand what "part-time work" and "limited

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

5.                                              Case No. C-07-3002 MMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

1  repetitive activities" meant in this context (given her former job working as an Associate Production

2  Chemist in a laboratory environment, with hazardous chemicals and glass vials).  Ex. 16 to Paetkau

3  Decl.  The next day, May 25, 2007, another one of Ms. Kelly's health care providers, Azuka

4  Nwigwe, DPT, sent a "To Whom It May Concern" letter, recommending additional work

5  restrictions.  Finally, on May 31, 2007, Dr. Rose clarified that "part-time work" meant "20 hours a

6  week, with limited repetitive activities."  Ex. 17 to Paetkau Decl.  Applera promptly accommodated

7  Ms. Kelly's return to work and physician-imposed work restrictions, and Ms. Kelly returned to work

8  on June 18, 2007.  Upon Ms. Kelly's return from leave, Applera paid her the same wage rate she had

9  earned prior to the leave of absence, $18.22 per hour.

10  **F.    Plaintiff Seeks To Add New Meritless Claims Of "Retaliation" And Discrimination**

12  In her tardy motion to amend, Plaintiff claims that she wishes to amend her

13  Complaint at this late date, with the fact discovery cutoff looming, because "Applera continued to

14  fail to engage in the interactive process in good faith, . . . [and] after plaintiff finally returned to work

15  in June 2007, she was subject to additional disability discrimination and retaliation by Applera."

16  Memo. at p. 2, lines 1-4 (emphasis added).[1]  The only reasons that Plaintiff offers for failing to file

17  her motion earlier are: (1) her alleged recent discovery that Applera contends that she was not a

18  qualified individual with a disability, and (2) the DFEH's alleged delay in issuing her a "right-to-

19  sue" letter.  But neither of these purported justifications can withstand scrutiny.

20  **III.    ARGUMENT**

21  **A.    Plaintiff's Tardy Motion To Amend Fails To Comply With The Court's Local Rule 16-2(d) And Rule 16 Of The Federal Rules**

23  Although ignored in Plaintiff's motion to amend her Complaint, the Court entered its

25  [1] Interestingly, when asked at her deposition whether Plaintiff has "had any issues with [her new supervisor, Ana Evanchick], either personal or otherwise," after her return to work in June 2007, Plaintiff testified that the alleged "retaliation" consisted of allegedly not having a phone in the office and "[n]ot getting information about meeting notices. Not getting responses to questions asked, and similar things."  Plaintiff Depo. at 104:8-105:25, Ex. 18 to Paetkau Decl. When pressed for details, Plaintiff added: "I'm trying to think.  The list I gave you is not exhaustive, but I can't think of anything off the top of my head right now."  Id. at 105:4-10.  Then, after a lunch break, with no question pending, Plaintiff's counsel improperly coached her to add other allegations of "retaliation," none of which constitutes an adverse employment action as a matter of law.  Id. at 108:20-110:5.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

6.    Case No.  C-07-3002 MMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

1    Rule 16 Pretrial Preparation and Scheduling Order in this action on September 14, 2007, setting

2    forth various trial and pretrial deadlines, including a fact discovery cutoff date in one week, April 11,

3    2008.    The Court's Rule 16 conference order "controls the course of the action unless the court

4    modifies it." Fed.R.Civ.P. 16(d). A "scheduling order is not a frivolous piece of paper, idly entered,

5    which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations,*

6    *Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (plaintiff's motion to amend denied as untimely and

7    summary judgment granted in favor of defendant).

8            "A *schedule* may be modified only for *good cause* and with the judge's consent."

9    Fed.R.Civ.P. 16(b)(4) (emphasis added); N.D. Cal. L.Rule 16-2(d).    Thus, where the Court has

10    entered a Pretrial Scheduling Order, the liberal policy regarding amendment of pleadings

11    (Fed.R.Civ.P. 15(a)(2)) no longer applies. "Good cause" must be shown. *Coleman v. Quaker Oats*

12    *Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

13            Plaintiff's tardy motion to amend her Complaint also fails to comply with the Court's

14    Local Rule 16-2(d), which provides:

15            **Relief from Case Management Schedule.** By serving and filing a motion
        with the assigned judge pursuant to Civil L.R. 7, a party, including a party
16        added later in the case, may seek relief from an obligation imposed by
        FRCivP 16 or 26 or the Order Setting Initial Case Management
17        Conference.  The motion must:
        (1) Describe the circumstances which support the request;
18        (2) Affirm that counsel for the moving party has conferred with all other
        counsel in an effort to reach agreement about the matter and, for each other
19        party, report whether that party supports or opposes the request for relief;
        (3) Be accompanied by a proposed revised case management schedule; and
20        (4) If applicable, indicate any changes required in the ADR process or
        schedule in the case.

21

22            Plaintiff did not comply with any of these requirements. Paetkau Decl., ¶17.

23    **B.        Plaintiff's Purported Justifications For Her Tardy Proposed Amended
            Complaint Cannot Withstand Scrutiny, And Do Not Constitute "Good Cause"**

24

25            To establish "good cause," parties seeking modification of a scheduling order must

26    generally show that, even with the exercise of *due diligence,* they cannot meet the order's timetable.

27    *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992); *Minter v. Prime Equip.*

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

7.

Case No.  C-07-3002 MMC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

*Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006); *Optivus Technology, Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 993 (Fed. Cir. 2006). In determining "good cause," courts consider:

- the *explanation* for the failure to timely move for leave to amend;
- the *importance* of the amendment;
- potential *prejudice* in allowing the amendment; and
- whether a continuance would cure such prejudice. *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (involving amendment of pleadings).

The moving party also must demonstrate its collaboration with the district court in managing the case. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228–29 (1st Cir. 1997). The moving party should establish:

- diligence in assisting the court in fashioning a workable scheduling order;
- any actual or anticipated noncompliance resulted from circumstances not reasonably anticipated at the time of the scheduling conference; and
- a prompt request for modification once it became apparent that compliance was not possible. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal 1999).

In this case, neither one of the only two reasons offered by Plaintiff for her lengthy delay in seeking to amend her Complaint – her alleged recent discovery that Applera contends she was not a qualified individual with a disability and the alleged delay by the DFEH in issuing her a "right-to-sue" notice (Memo. at 1:26-2:10) – can withstand scrutiny. *AmerisourceBergen Corp. v. Dialysist West, Inc.* 465 F.3d 946, 953 (9th Cir. 2006) (motion to amend denied; 8-month unexplained delay).

As noted above, the DFEH routinely issues right-to-sue notices immediately upon request. M. Chin, R. Wiseman, C. Callhan & E. Exelrod, *California Practice Guide Employment Litigation* (TRG 2007) ¶7:1046.1 ("If plaintiffs do not want the DFEH to investigate, they may request an immediate right-to-sue letter when the complaint is filed. The DFEH routinely honors such requests."); Paetkau Decl., ¶16. On its own website, the DFEH states: "DFEH will accept requests for an immediate DFEH 'right-to-sue notice' from persons who have decided to proceed in court." *See* Defendant's Request for Judicial Notice. The DFEH offers complainants the option to request a "right-to-sue notice" through a paper form or an online request: "If you have decided to request a 'right-to-sue notice' at this time, you may click on the paper form link below or use our

Case No. C-07-3002 MMC

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415 433 1940

1    new online 'Right-to-Sue' system." *Id.* There is no question that right-to-sue notices are promptly

2    and routinely granted.

3           Indeed, the right-to-sue notice attached to Plaintiff's untimely motion to amend as

4    Exhibit B reflects this indisputable fact: The complaint "has been closed effective January 9, 2007

5    *because an immediate right-to-sue notice was requested.*" (Italics added.)  There is no reason why

6    Plaintiff could not have requested an "immediate" right-to-sue letter back in early November 2007

7    when she filed her second DFEH Charge.  In her supporting declaration, Plaintiff's counsel,

8    Maureen McFadden, offers no explanation for her client's delay, and does not attempt to blame it on

9    the DFEH. McFadden Decl., ¶3.  Nor does Plaintiff explain why she did not bring this issue to the

10   Court's attention earlier and/or why she did not request a right-to-sue notice earlier.

11          As for Plaintiff's other purported justification for her late proposed amendment, that

12   she "only recently learned that Applera is claiming that she was not disabled at all" (Memo. at 1:26-

13   27), it is simply wrong.  Applera put Plaintiff on clear notice of its defenses in its Answer filed on

14   June 7, 2007, including its Tenth Affirmative Defense: "Plaintiff was not a qualified individual with

15   a disability in that Plaintiff could not perform the essential functions of the position with or without

16   reasonable accommodation." Ex. 2 to Paetkau Decl.  Contrary to Plaintiff's unsupported assertion,

17   Applera asserted and maintained this defense from the outset of this action.

18          In *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir. 2000), the Ninth

19   Circuit held that the district court properly denied leave to amend where the party seeking to amend

20   waited inexplicably long to do so, the court had entered a pretrial scheduling order, and discovery

21   would likely have had to be re-opened to permit the defending party to discover information relevant

22   to the new claims.  The court noted that plaintiffs had been aware of their desired amendments at

23   least one year earlier, and offered no explanation for their failure to seek amendment earlier.  *Id.* at

24   1295.  The court cited its earlier decision in *Acri v. International Ass'n of Machinists and Aerospace*

25   *Workers,* 781 F.2d 1393, 1398 (9th Cir. 1986): "[L]ate amendments to assert new theories are not

26   reviewed favorably when the facts and the theory have been known to the party seeking amendment

27   since the inception of the cause of action."  Additionally, "[a] need to reopen discovery and therefore

28   delay the proceedings supports a district court's finding of prejudice from a delayed motion to

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433 1940

9.                                            Case No.  C-07-3002 MMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

1   amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th

2   Cir. 1999).

3          In summary, Plaintiff has not demonstrated and cannot demonstrated "good cause"

4   for her dilatory conduct in seeking to amend her Complaint. *See Kaplan v. Rose*, 49 F.3d 1363,

5   1370 (9th Cir. 1994) (leave to amend denied where moving party either knew or should have known

6   earlier); *see also Invest Almaz v. Temple–Inland Forest Products Corp.*, 243 F.3d 57, 72 (1st Cir.

7   2001) (what plaintiff should have known and what he should have done "are relevant to the question

8   of whether justice requires leave to amend"); *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080,

9   1087 (9th Cir. 2002) (motion to amend scheduling order to allow more discovery and postpone trial

10   was properly denied where plaintiff did not show diligence in complying with dates set in order and

11   waited four months before seeking relief).  Accordingly, the Court should deny her motion.

12      **C.**    **Plaintiff's Proposed Amended Complaint Fails To State New Claims For Relief**

13          **and Would Be Futile and Unduly Prejudicial**

14          Several factors govern the propriety of a motion to amend, including (1) undue delay,

15   (2) bad faith, (3) prejudice to the opponent and (4) futility of the proposed amendment. *Gabrielson*

16   *v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (*citing Loehr v. Ventura County*

17   *Community College District*, 743 F.2d 1310, 1319 (9th Cir. 1984)).  Plaintiff's motion runs afoul of

18   each and every one of these factors.  Her motion, scheduled for hearing exactly one week before the

19   fact discovery cut-off, could and should have been filed months ago, when Applera would have had

20   an opportunity to prepare its defense with sufficient time, notice, and knowledge of Plaintiff's brand

21   new and very different claims, witnesses and documents.[2]  As discussed above, Plaintiff offers no

22   real excuse for her failure to seek to amend her Complaint much earlier.  Instead, Plaintiff seeks to

23   make an eleventh-hour, wholesale modification of her claims, leaving Applera with no time in which

24   to prepare its defense to those claims.  In addition to being oppressively untimely and patently

25   prejudicial, Plaintiff's proposed amendment is futile.

26

27      [2] Plaintiff's proposed new claims for "regarded as" and "history of" disability would be predicated upon entirely

28   different facts, witnesses, time periods, documents, and elements than her existing claims.  Applera would be grossly
prejudiced by Plaintiff's strategic addition of new and different claims seven days before the discovery cut-off.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

10.               Case No. C-07-3002 MMC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA
CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN

1        The Ninth Circuit has held that district courts properly deny amendment where the

2   proposed amended complaint appears to be futile or legally insufficient. *Miller v. Rykoff-Sexton,*

3   *Inc.,* 845 F.2d 209, 214 (9th Cir. 1988). Plaintiff's proposed amended complaint alleging "regarded

4   as" and "having a record of" discrimination, and alleged "retaliation" based on alleged ostracism at

5   the workplace, such as allegedly not being invited to coworkers' birthday celebrations and an alleged

6   Company barbecue, falls short of the conduct required to constitute an actionable adverse

7   employment action.

8        An adverse employment action is an action that has a "substantial and material"

9   consequence to the employee. For good reason, trivial events like coworkers allegedly shunning her

10  do not suffice. Otherwise, supervisors and coworkers would be walking on eggshells any time an

11  employee filed a charge or made a complaint. Examples of adverse employment actions include

12  termination of employment, demotion evidenced by a decrease in wage or salary, a less

13  distinguished title, a material loss of benefits or diminished responsibilities. *Dumas v. New United*

14  *Motor Mfg.,* 2007 U.S. Dist. LEXIS 30042, 22-23 (N.D. Cal. 2007) (*citing Thomas v. Department of*

15  *Corrections,* 77 Cal. App. 4th 507, 511-12 (2000)). Plaintiff alleges none of that. She fails to

16  identify a single adverse employment action. Courts have cautioned against setting the bar too low

17  and have stated that changes in duties or working conditions that cause no material disadvantage are

18  insufficient to establish the adverse action requirement for the prima facie case. *Id.* Plaintiff's

19  attempt to cast the scheduling of a meeting on the second floor that she did not inform her supervisor

20  or anyone else that she could not access, and her lack of knowledge of a Company barbecue and

21  non-work-related birthday parties do not amount to conduct that is "substantial and material" with

22  respect to any terms of conditions of Plaintiff's employment. Accordingly, Plaintiff's proposed

23  amendment is not only untimely, but also legally insufficient.

24  \\\

25  \\\

26  \\\

27  \\\

28  \\\

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433 1940

11.

Case No.  C-07-3002 MMC

IV.    **CONCLUSION**

The Court should deny Plaintiff's tardy motion to amend her Complaint to add brand new and different claims – which would require proof of new and different elements and different defenses, and would involve new and different witnesses, documents and time frames.  Plaintiff has failed to demonstrate "good cause" or explain the reasons for her delay in filing this motion, and amending her Complaint one week before the fact discovery cutoff would cause severe prejudice to Applera.

Dated:  March 14, 2008

TYLER M. PAETKAU
MICHAEL G. PEDHIRNEY
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
APPLERA CORPORATION

Firmwide:84552093.1 008292.151

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

12.                    Case No.  C-07-3002 MMC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLERA CORPORATION'S MOTION TO COMPEL DEPOSITION TESTIMONY OF MAUREEN MCFADDEN