# EXHIBIT 1

Maureen E. McFadden, SBN 209781
LAW OFFICES OF MAUREEN E. MCFADDEN
819 Bancroft Way
Berkeley, CA 94710
Ph (510) 845-5203
Fax (510) 868-0976

Attorney for Plaintiff
MEGAN KELLY

ENDORSED
FILED
ALAMEDA COUNTY

APR 23 2007

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

BY FAX

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

UNLIMITED JURISDICTION

MEGAN KELLY,

      Plaintiff,

vs.

APPLERA CORPORATION and DOES 1-20,
inclusive,

      Defendants.

Case No.: RG07322056

COMPLAINT FOR DAMAGES

1. Failure to Engage in the Interactive
Process In Good Faith
2. Failure to Accommodate
3. Employment Discrimination – Disability

Plaintiff Megan Kelly alleges as follows:

## GENERAL ALLEGATIONS

1.    Plaintiff Megan Kelly is an individual who resides in Alameda County.

2.    From on or about February 2002 and continuing to the present, plaintiff has been employed as an Associate Production Chemist at Applied Biosystems, which is part of Applera Corporation. At all times relevant hereto, plaintiff worked at Applera Corporation's Pleasanton location, which is in Alameda County. Plaintiff was at all times relevant to this action an "employee" of defendant Applera Corporation as that term is defined in California Govt. Code § 12926(c), part of the California Fair Employment and Housing Act ("FEHA," Govt. Code § § 12900 et seq.)

3.    Defendant Applera Corporation was a corporation doing business in Alameda County, California at all times relevant hereto. Applera Corporation is and all times relevant

Exhibit H

1  hereto has been plaintiff's "employer" as that term is defined in California Govt. Code § §

2  12926(d), 12940(a), and 12940(j)(4)(a).

3      4.    The acts and omissions described herein all occurred in Alameda County.

4      5.    The true names and capacities, whether individual, corporate, associate, or

5  otherwise of the defendants named herein as DOES 1-20, inclusive, are unknown to plaintiff at

6  this time and therefore said defendants are sued by such fictitious names.  Plaintiff will seek

7  leave to amend this complaint to insert the true names and capacities of said defendants when the

8  same becomes known to her.  Plaintiff is informed and believes and based thereon alleges that

9  each of the fictitiously named defendants is responsible for the wrongful acts alleged herein, and

10  are therefore liable to her as alleged hereinafter.

11      6.    Each of the defendants was the agent of the remaining defendants, and in doing

12  the acts alleged, was acting both individually and within the course and scope of such

13  agency/employment, with the knowledge/consent of the remaining defendants.

14  <u>FIRST CAUSE OF ACTION</u>

15  <u>Failure to Engage in the Interactive Process in Good Faith</u>

16  (Against all Defendants)

17      7.    Plaintiff incorporates by reference paragraphs 1-6 above, as though fully set forth

18  herein.

19      8.    On or about July 6, 2004, plaintiff tripped and sprained her ankle.  In September

20  2004, after a short medical leave and physical therapy, plaintiff was released to return to work.

21  As part of her return to work, plaintiff was supposed to be able to sit down whenever she needed

22  to.  However, defendants were extraordinarily busy during this timeframe, and short-handed.

23  Plaintiff was pressured to get orders done quickly, and was seldom able to sit down.

24      9.    On or about September 21, 2004, while moving about extensively and attending

25  to multiple tasks at the same time, plaintiff re-injured her right ankle.  Emergency room

26  physicians diagnosed plaintiff with another ankle sprain, and she was again taken off of work.

27  The re-injury was quite serious, in that plaintiff's ankle did not heal well, and she continued

28  experiencing serious instability in her right ankle.  Tests performed by plaintiff's disability

COMPLAINT FOR DAMAGES - 2

Exhibit 1-2

1 insurers in or about January 2005 to evaluate plaintiff's readiness to return to work seriously
2 injured plaintiff's left wrist, requiring a visit to the emergency room. Several subsequent falls
3 further aggravated the ankle injury, and plaintiff also sustained wrist injuries in some of those
4 falls.

5     10.    Plaintiff's ankle condition is a physical impairment that limited her ability to
6 perform the major life activity of work. Plaintiff's ankle condition constituted a physical
7 disability within the meaning of Govt. Code § 12926(k).

8     11.    The severity of plaintiff's disability required her to remain off of work for a
9 period of time. Plaintiff presented defendants with physicians' notes in support of her requests
10 for time off of work. Plaintiff also regularly left telephone messages with her immediate
11 supervisor, Jonathon Laosiri, regarding her status and the progress of her recovery.

12     12.    In January 2006, plaintiff's physicians determined that she was well enough to
13 return to work, with restrictions on the number of hours she could work, a restriction on lifting
14 any more than 20 lbs, and a requirement that she sit down every hour for at least 10 minutes.
15 Plaintiff provided defendants with a physician's note authorizing her to return to work, and
16 specifying these restrictions.

17     13.    Plaintiff's immediate supervisor failed to return plaintiff's calls with regard to
18 getting back to work. She then approached defendant's HR department directly, and against
19 explained that she was authorized to return to work, and the nature of her work restrictions.

20     14.    Defendant made no effort to get plaintiff back to work. Instead, the company
21 summarily informed plaintiff that she could not return to work unless she either had no
22 restrictions at all and/or could work at least 20 hours per week.

23     15.    From January 2006 to the present, plaintiff has continued to seek accommodations
24 that would allow her to return to work. Defendants have continued to refuse to offer plaintiff
25 reasonable accommodations that would allow her to return to work, all without having first
26 engaged in the interactive process in good faith with plaintiff.

27     16.    Govt. Code § 12940(n) makes it illegal "for an employer. . . to fail to engage in a
28 timely, good faith interactive process with the employee or applicant to determine effective

COMPLAINT FOR DAMAGES - 3

exhibit 1-3

1   reasonable accommodation by an employee or applicant with a known physical or mental

2   disability or known medical condition."

3        17.    By refusing to given any consideration whatsoever to plaintiff's request for

4   accommodation, defendants violated their obligation to engage in the interactive process,

5   contrary to Govt. Code § 12940(n).

6        18.    Plaintiff filed a timely charge of disability discrimination with the California

7   Department of Fair Employment and Housing (DFEH), naming Applied Biosystems as a

8   respondent in the body of said complaint. Plaintiff has received a right to sue notice for this

9   charge pursuant to Govt. Code § 12965(b). Plaintiff filed this action within one year from the

10  date she received her "right to sue" letter from the DFEH, and has therefore properly exhausted

11  her administrative remedies.

12       19.    As a direct and proximate result of the wrongful acts of defendants, and each of

13  them, plaintiff has suffered and continues to suffer physical pain, severe emotional distress,

14  including without limitation, depression, hopelessness, embarrassment, humiliation, degradation,

15  loss of self-esteem, and mental anguish. As a result, plaintiff is entitled to general and

16  compensatory damages according to proof.

17       20.    As a further direct and proximate result of the wrongful acts of defendants

18  described herein, plaintiff has been forced to hire an attorney to prosecute her claims, and has

19  incurred and will continue to incur attorneys' fees and costs. Plaintiff is entitled to recover such

20  attorneys' fees and costs under Govt. Code § 12965(b).

21       21.    The outrageous conduct of defendants described herein was done with malice,

22  fraud, and oppression, with conscious disregard for plaintiff's rights, and with the intent, design

23  and purpose of injuring her. Defendants, through their officers, managing agents and/or

24  supervisors, authorized, condoned, and/or ratified the unlawful conduct alleged herein. By reason

25  thereof, plaintiff is entitled to punitive or exemplary damages from all defendants in a sum

26  according to proof at trial.

27

28

Exhibit 1- 4

## SECOND CAUSE OF ACTION

### Failure to Accommodate

### (Against all Defendants)

22.    Plaintiff incorporates by reference paragraphs 1-21 above, as though fully set forth herein.

23.    Pursuant to Govt. Code § 12940(m), defendants had a duty to accommodate Plaintiff's ankle condition. Despite actual knowledge of plaintiff's disability, and multiple requests for accommodation, defendants refused to offer any reasonable accommodations to allow plaintiff to return to work. In doing the foregoing acts, defendants failed to accommodate plaintiff's disability, in violation of Govt. Code § 12940(m).

24.    Plaintiff filed a timely charge of disability discrimination with the California Department of Fair Employment and Housing (DFEH), naming Applied Biosystems as a respondent in the body of said complaint. Plaintiff has received a right to sue notice for this charge pursuant to Govt. Code § 12965(b). Plaintiff filed this action within one year from the date she received her "right to sue" letter from the DFEH, and has therefore properly exhausted her administrative remedies.

25.    As a direct and proximate result of the wrongful acts of defendants, and each of them, plaintiff has suffered and continues to suffer physical pain, severe emotional distress, including without limitation, depression, hopelessness, embarrassment, humiliation, degradation, loss of self-esteem, and mental anguish. As a result, plaintiff is entitled to general and compensatory damages according to proof.

26.    As a further direct and proximate result of the wrongful acts of defendants described herein, plaintiff has been forced to hire an attorney to prosecute her claims, and has incurred and will continue to incur attorneys' fees and costs. Plaintiff is entitled to recover such attorneys' fees and costs under Govt. Code § 12965(b).

27.    The outrageous conduct of defendants described herein was done with malice, fraud, and oppression, with conscious disregard for plaintiff's rights, and with the intent, design and purpose of injuring her. Defendants, through their officers, managing agents and/or

Exhibit 1-5

1   supervisors, authorized, condoned, and/or ratified the unlawful conduct alleged herein. By reason

2   thereof, plaintiff is entitled to punitive or exemplary damages from all defendants in a sum

3   according to proof at trial.

### THIRD CAUSE OF ACTION

### Employment Discrimination – Disability

#### (Against all Defendants)

7   28.   Plaintiff incorporates by reference paragraphs 1-27 above, as though fully set

8   forth herein.

9   29.   The above-described conduct, including but not limited to defendant's refusal to

10  allow plaintiff to return to work, were adverse and discriminatory actions taken based on

11  plaintiff's physical disabilities.

12  30.   Plaintiff filed a timely charge of disability discrimination with the California

13  Department of Fair Employment and Housing (DFEH), naming Applied Biosytems as a

14  respondent in the body of said complaint.  Plaintiff has received a right to sue notice for this

15  charge pursuant to Govt. Code § 12965(b).  Plaintiff filed this action within one year from the

16  date she received her "right to sue" letter from the DFEH, and has therefore properly exhausted

17  her administrative remedies.

18  31.   As a direct and proximate result of the wrongful actions of defendants, plaintiff

19  has been harmed in that she has suffered actual, consequential and incidental financial losses,

20  including without limitation, loss of earnings and other employment benefits and the intangible

21  loss of employment-related opportunities for growth in her field and damage to her professional

22  reputation, all in an amount subject to proof at the time of trial.  Plaintiff claims such amounts as

23  damages together with prejudgment interest pursuant to Civil Code § 3287 and or Civil Code §

24  3288 and/or any other provision of law providing for prejudgment interest.

25  32.   As a direct and proximate result of the wrongful acts of defendants, and each of

26  them, plaintiff has suffered and continues to suffer physical pain, severe emotional distress,

27  including without limitation, depression, hopelessness, embarrassment, humiliation, degradation,

28

Exhibit 1-6

1  loss of self-esteem, and mental anguish. As a result, plaintiff is entitled to general and

2  compensatory damages according to proof.

3      33.    As a further direct and proximate result of the wrongful acts of defendants

4  described herein, plaintiff has been forced to hire an attorney to prosecute her claims, and has

5  incurred and will continue to incur attorneys' fees and costs. Plaintiff is entitled to recover such

6  attorneys' fees and costs under Govt. Code § 12965(b).

7      34.    The outrageous conduct of defendants described herein was done with malice,

8  fraud, and oppression, with conscious disregard for plaintiff's rights, and with the intent, design

9  and purpose of injuring her. Defendants, through their officers, managing agents and/or

10  supervisors, authorized, condoned, and/or ratified the unlawful conduct alleged herein. By reason

11  thereof, plaintiff is entitled to punitive or exemplary damages from all defendants in a sum

12  according to proof at trial.

13      WHEREFORE, Plaintiff requests the following judgment and relief:

14      1.    For compensatory and general damages in an amount according to proof;

15      2.    For punitive damages;

16      3.    For statutory attorneys' fees and costs;

17      4.    For pre-judgment and post-judgment interest according to any applicable

18  provision of law, according to proof;

19      5.    For costs of suit; and

20      6.    For such other and further relief as the court deems proper.

21

22

23  DATED: April 23, 2007                    LAW OFFICES OF MAUREEN E. MCFADDEN

24                                           By: *Maureen E. McFadden*

25                                           Maureen E. McFadden

26                                           Attorney for Plaintiff
                                             MEGAN KELLY
27

28

COMPLAINT FOR DAMAGES - 7

Exhibit 1—7

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Maureen E. McFadden, SBN 203731<br>LAW OFFICES OF MAUREEN E. MCFADDEN<br>319 Bancroft Way<br>Berkeley, CA 94710<br>TELEPHONE NO: (510) 845-5203    FAX NO.: (510) 868-0976<br>ATTORNEY FOR (Name): Plaintiff Megan Kelly | **ENDORSED**<br>**FILED**<br>ALAMEDA COUNTY<br><br>APR 2 3 2007<br><br>CLERK OF THE SUPERIOR COURT<br>By Esther Coleman, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Megan Kelly v. Applera Corporation et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: | RG07322056 |
| | | | DEPT: | |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☑ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive

4. Number of causes of action (specify): 3

5. This case ☐ is ☑ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 23, 2007

Maureen E. McFadden
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

BY FAX

Exhibit 1- B

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Applera Corporation and DOES 1-20, inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**ENDORSED
FILED
ALAMEDA COUNTY**

APR 2 3 2007

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Megan Kelly

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Alameda County Superior Court, 1225 Fallon Street, Oakland, CA.
Rene C. Davidson Courthouse

CASE NUMBER:
*(Número del Caso):*
**RG 07322056**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Maureen E. McFadden, Law Offices of Maureen E. McFadden, Ph (510) 845-5203, Fax (510) 868-0976, 819
Bancroft Way, Berkeley, CA 94710

DATE:
*(Fecha)* APR 2 0 2007    PAT S. SWEETEN    Clerk, by    Esther Coleman    , Deputy
                                            *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

Exhibit 1-9

# EXHIBIT 2

1  JOHN M. SKONBERG, Bar No. 069409
   TYLER M. PAETKAU, Bar No. 146305
2  MICHAEL G. PEDHIRNEY, Bar No. 233164
   LITTLER MENDELSON
3  A Professional Corporation
   650 California Street
4  20th Floor
   San Francisco, CA 94108.2693
5  Telephone:    415.433.1940

6  Attorneys for Defendant
   APPLERA CORPORATION

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10  MEGAN KELLY,                    Case No. RG07-322056

11             Plaintiff,           ANSWER BY DEFENDANT APPLERA
                                    CORPORATION TO PLAINTIFF'S
12       v.                         UNVERIFIED COMPLAINT

13  APPLERA CORPORATION and DOES 1- Complaint Filed: April 23, 2007
    20, inclusive,
14
               Defendants.
15

16

17       Defendant  APPLERA  CORPORATION  ("Applera"),  answers  the  unverified

18  Complaint ("Complaint") filed by Plaintiff MEGAN KELLY ("Plaintiff") as follows:

19                          GENERAL DENIAL

20       Pursuant to Section 431.30(d) of the California Code of Civil Procedure, Applera

21  answers the Complaint filed by Plaintiff by generally denying each and every allegation contained

22  therein, by denying that Plaintiff has been damaged in any amount, or at all, or has sustained any

23  damages as a result of the conduct alleged therein.

24                        AFFIRMATIVE DEFENSES

25       Additionally, without assuming the burden of proof on any matters that would

26  otherwise rest with Plaintiff, and expressly denying any and all wrongdoing, Applera asserts the

27  following separate and distinct affirmative defenses to Plaintiff's unverified Complaint.

28

ENDORSED
FILED
ALAMEDA COUNTY

JUN 0 7 2007

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

BY FAX

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT          Case No. RG07-322056

Exhibit 2-1

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Neither the Complaint, nor any cause of action set forth therein, states facts sufficient to constitute a cause of action against Applera.

## SECOND AFFIRMATIVE DEFENSE

### (Failure to State a Claim Against Doe Defendants)

The Complaint, and each and every cause of action thereof, whether considered singly or in combination, fails to state facts sufficient to constitute a cause of action against Doe Defendants.

## THIRD AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiff's claims are barred by the applicable statute of limitations, including but not limited to California Government Code sections 12960 and 12965(b).

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

Plaintiff failed to comply with applicable procedural and administrative prerequisites including timely charge filing requirements and the exhaustion of all administrative remedies.

## FIFTH AFFIRMATIVE DEFENSE

### (Legitimate, Non-Discriminatory Personnel Actions)

The employment actions complained of by Plaintiff were based on legitimate, nondiscriminatory reasons.

## SIXTH AFFIRMATIVE DEFENSE

### (No Knowledge Of Unlawful Conduct)

Applera had no knowledge of any discriminatory or otherwise unlawful behavior by any of its employees, if any, agents, or representatives.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT    Case No. RG07-322056

Exhibit 2-2

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH AFFIRMATIVE DEFENSE

(Exercise of Reasonable Care to Prevent Discrimination)

Applera exercised reasonable care to prevent and promptly correct any discriminatory or other unlawful behavior.

## EIGHTH AFFIRMATIVE DEFENSE

(Conduct Outside the Course and Scope of Employment)

To the extent employees engaged in any discriminatory or otherwise unlawful behavior, the alleged acts were committed outside the course and scope of employment.

## NINTH AFFIRMATIVE DEFENSE

(Avoidable Consequences Doctrine)

Plaintiff's claims, in whole or in part, are barred, or any recovery should be reduced, pursuant to the avoidable consequences doctrine, because Applera took reasonable steps to prevent and correct workplace discrimination, Plaintiff unreasonably failed to use the preventative and corrective opportunities provided to employees by Applera, and reasonable use of the Applera's procedures would have prevented at least some of the harm that the Plaintiff allegedly suffered.

## TENTH AFFIRMATIVE DEFENSE

(No Protected Disability)

Plaintiff was not a qualified individual with a disability in that Plaintiff could not perform the essential functions of the position with or without reasonable accommodation.

## ELEVENTH AFFIRMATIVE DEFENSE

(No Reasonable Accommodation)

Assuming that Plaintiff made a request for reasonable accommodation, Applera alleges that Plaintiff's requested accommodation is unreasonable.

## TWELFTH AFFIRMATIVE DEFENSE

(Undue Hardship)

Assuming that Plaintiff made a request for reasonable accommodation, Applera alleges that Plaintiff's requested accommodation imposes an undue hardship.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

3.

Exhibit 2-3

1

## THIRTEENTH AFFIRMATIVE DEFENSE

2

(Direct Threat)

3      Employment of Plaintiff in the position in question would have posed a direct threat

4  to the health or safety of Plaintiff.

5

## FOURTEENTH AFFIRMATIVE DEFENSE

6

(Failure to Cooperate in Interactive Process)

7      Plaintiff's Complaint, and each and every cause of action contained therein, are

8  barred in whole or in part because of her failure to cooperative in good faith in the interactive

9  process.

10

## FIFTEENTH AFFIRMATIVE DEFENSE

11

(Disruption of Interactive Process)

12      Plaintiff's Complaint, and each and every cause of action contained therein, are

13  barred in whole or in part because of Plaintiff's direct or indirect responsibility for any alleged

14  breakdown in, or disruption of, the interactive process.

15

## SIXTEENTH AFFIRMATIVE DEFENSE

16

(No Harm Caused by Alleged Failure to Engage in Interactive Process)

17      Plaintiff suffered no harm or other prejudice as a result of Applera's alleged failure to

18  initiate or properly conduct the interactive process because, at all material times, a reasonable

19  accommodation of Plaintiff's alleged disability was not possible; thus, Plaintiff's Complaint, and

20  each and every cause of action contained therein, are barred in whole or in part, or fail as a matter of

21  law.

22

## SEVENTEENTH AFFIRMATIVE DEFENSE

23

(After-Acquired Evidence)

24      To the extent during the course of this litigation it acquires any evidence of Plaintiff's

25  wrongdoing, such after-acquired evidence bars Plaintiff's claims of liability or damages or reduces

26  such claims as provided by law.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

4.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT                    Case No. RG07-322056

Exhibit 2-4

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Workers' Compensation Preemption)

Insofar as Plaintiff alleges she suffered from any physical or emotional injury as a result of Applera's conduct, her claim is preempted by the California Workers' Compensation statutes, including California Labor Code section 3601, *et seq.*, inasmuch as any compensable alleged injury to Plaintiff occurred at a time when she was subject to California Workers' Compensation provisions; at the time of such alleged injury Plaintiff was performing services growing out of and incidental to her employment and was acting within the course and scope of her employment; the alleged injury was proximately caused by her employment; and Applera was providing workers compensation coverage without any charge to the employee.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Plaintiff's Conduct)

The injuries and damages alleged in the Complaint were caused by and/or were contributed to by Plaintiff's own acts or failure to act and that Plaintiff's recovery, if any, should be reduced by an amount proportionate to the amount by which said acts caused or contributed to said alleged injuries or damages.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Set-Offs)

If Plaintiff is judged to be entitled to any recovery based on her Complaint, Applera is entitled to a set-off for each of the following, respectively and separately: damages paid to Plaintiff by order of the California Workers' Compensation Appeals Board, on related claims, if any; state disability payments to Plaintiff for related claims, if any; federal Social Security benefits paid to Plaintiff for related reasons, if any; and state unemployment compensation paid to Plaintiff for related reasons, if any.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

Any award to Plaintiff must be reduced on the basis that Plaintiff failed and refused to make reasonable efforts to mitigate, minimize or avoid any alleged losses or damages.

5.

Exhibit 2-5

1    **TWENTY-SECOND AFFIRMATIVE DEFENSE**

2    (Estoppel, Waiver, Unclean Hands and/or Laches)

3        Plaintiff's claims are barred by the equitable doctrines of estoppel, waiver, unclean

4    hands and/or laches.

5    **TWENTY-THIRD AFFIRMATIVE DEFENSE**

6    (Failure to State Grounds for Punitive Damages)

7        Plaintiff has failed to state facts sufficient to constitute a claim for punitive damages.

8    **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

9    (Alternative Concurrent Sources of Emotional Distress)

10       To the extent Plaintiff suffered any symptoms of mental or emotional distress or

11   injury, it was the result of a pre-existing psychological disorder or alternative concurrent cause(s),

12   and not the result of any act or omission by Applera.

13   **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

14   (Failure to State Grounds for Attorneys' Fees and Costs)

15       Plaintiff has failed to state facts sufficient to constitute a claim for which attorneys'

16   fees and costs may be granted.

17   **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

18   (Unconstitutionality of Punitive Damages)

19       The United States and California Constitutions bar any claim by Plaintiffs for

20   punitive damages.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

6.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT          Case No. RG07-322056

Exhibit 2-6

1        WHEREFORE, Applera prays:

2        1.    That Plaintiff takes nothing by her Complaint and that the Complaint be

3    dismissed in its entirety, with prejudice;

4        2.    That Applera be awarded full judgment in this action;

5        3.    That Applera be awarded costs of suit and attorneys' fees incurred herein; and

6        4.    That Applera be awarded such other and further relief as the Court deems just

7    and proper.

8

9    Dated: June 7, 2007

10

11                                    JOHN M. SKONBERG
                                      TYLER M. PAETKAU
12                                    MICHAEL G. PEDHIRNEY
                                      LITTLER MENDELSON
13                                    A Professional Corporation
                                      Attorneys for Defendant
14                                    APPLERA CORPORATION

15

16   Firmwide:82561145.1 008292.1051

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

                                        7.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT          Case No. RG07-322056

Exhibit 2-7

1　JOHN M. SKONBERG, Bar No. 069409
2　TYLER M. PAETKAU, Bar No. 146305
　　MICHAEL G. PEDHIRNEY, Bar No. 233164
3　LITTLER MENDELSON
　　A Professional Corporation
　　650 California Street
4　20th Floor
　　San Francisco, CA 94108.2693
5　Telephone:　415.433.1940

6　Attorneys for Defendant
　　APPLERA CORPORATION
7

**ENDORSED
FILED
ALAMEDA COUNTY**

JUN 0 7 2007

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

8　　　　　SUPERIOR COURT OF THE STATE OF CALIFORNIA

9　　　　　　　　　COUNTY OF ALAMEDA

10　MEGAN KELLY,　　　　　　　　　Case No. RG07-322056

11　　　　　Plaintiff,

12　　v.　　　　　　　　　　　**PROOF OF SERVICE** **BY FAX**

13　APPLERA CORPORATION and DOES 1–
14　20, inclusive,　　　　　　　　　Complaint Filed: April 23, 2007

15　　　　　Defendants.

16　　　　　　　　　　**PROOF OF SERVICE**

17
18　　　　I am a resident of the State of California, over the age of eighteen years, and not a
19　party to the within action. My business address is 650 California Street, 20th Floor, San Francisco,
20　California 94108.2693. On June 7, 2007, I served the within document(s):

21　　　➢　**ANSWER BY DEFENDANT APPLERA CORPORATION
　　　　　　TO PLAINTIFF'S UNVERIFIED COMPLAINT**
22

23　☐　by facsimile transmission on that date. This document was transmitted by using a
24　　　facsimile machine that complies with California Rules of Court Rule 2003(3),
　　　telephone number 415.399.8490. The transmission was reported as complete and
25　　　without error. The names and facsimile numbers of the person(s) served are as set
　　　forth below.

26
27
28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Exhibit 2-8

1    [X]    by placing a true copy of the document(s) listed above for collection and mailing
2    following the firm's ordinary business practice in a sealed envelope with postage
     thereon fully prepaid for deposit in the United States mail at San Francisco,
3    California addressed as set forth below.

4    [ ]    by depositing a true copy of the same enclosed in a sealed envelope, with delivery
            fees provided for, in an overnight delivery service pick up box or office designated
5    for overnight delivery, and addressed as set forth below.

6    [ ]    by personally delivering a copy of the document(s) listed above to the person(s) at
7    the address(es) set forth below.

8                        Maureen E. McFadden, Esq.
                    Law Offices of Maureen E. McFadden
9                            819 Bancroft Way
                          Berkeley, CA 94710
10                       Fax: (510) 868-0976

11              I am readily familiar with the firm's practice of collection and processing

12   correspondence for mailing and for shipping via overnight delivery service. Under that practice it

13   would be deposited with the U.S. Postal Service or if an overnight delivery service shipment,

14   deposited in an overnight delivery service pick-up box or office on the same day with postage or fees

15   thereon fully prepaid in the ordinary course of business.

16              I declare under penalty of perjury under the laws of the State of California that the

17   above is true and correct. Executed on June 7, 2007, at San Francisco, California.

18

19

20                                                      Nora L. Torres
21   Firmwide:82421970.1 008292.1051

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

                              2.

                 PROOF OF SERVICE  CASE RG07322056

                        Exhibit 2-9

# EXHIBIT 3

# LAW OFFICES OF MAUREEN E. MCFADDEN

819 Bancroft Way
Berkeley, CA 94710
www.mcfaddenlaw.net

Ph (510) 845-5203
Fax (510) 868-0976
maureen@mcfaddenlaw.net

December 22, 2006

**VIA FEDERAL EXPRESS**

Administrator/HR Client Services
Applied Biosystems/Applera Corporation
850 Lincoln Centre Drive
Foster City, CA 94404

Re:   *Megan Kelly/Applied Biosystems*

To Whom It May Concern:

Please be advised that this office represents Megan Kelly as to her employment-related claims against Applied Biosystems, and direct all future communications to my attention. Enclosed is a request for Ms. Kelly's personnel file and related documents. Please forward these documents to me at your earliest opportunity.

Our demand letter will follow shortly.

Very Truly Yours,

LAW OFFICES OF MAUREEN E. MCFADDEN

Maureen E. McFadden

Encl.

cc.    Client

**KELLY 0190**

Exhibit 3-1

Pursuant to Labor Code § § 432 and 1198.5, I hereby request a copy of the following documents:

- My personnel file
- Any other documents pertaining to my performance.
- Any other documents I signed at any time relating to my employment with Applied Biosystems.

Please direct these documents to the attention of my attorney:

MAUREEN E. McFADDEN
LAW OFFICES OF MAUREEN E. McFADDEN
819 Bancroft Way
Berkeley, CA 94710
Ph (510) 845-5203
Fax (510) 868-0976

_____          _____
Megan Kelly                                              Date

**KELLY 0191**

Exhibit 3-2

# EXHIBIT 4

Feb 14 07 11:53a      Rlyna                      510 845 7636                P.1



**Palo Alto Medical Foundation**
A Sutter Health Affiliate

Fremont Center                3200 Kearney Street
                              Fremont, CA 94538
                              (510) 490-1222
                              www.pamf.org


February 13, 2007

To Whom It May Concern:

Megan Kelly has been under my care regarding her bilateral wrist injuries and is able to return to work on 2/15/07.  She will need to work with her wrist splints on and will need to avoid heavy lifting of 5 lbs or more.

Remarks: Bilateral TFCC tears, wrists.

Sincerely,

Josef Maier MSPA-C.

*Exhibit 4-1*

# EXHIBIT 5

# LAW OFFICES OF MAUREEN E. MCFADDEN

819 Bancroft Way
Berkeley, CA 94710
www.mcfaddenlaw.net

Ph (510) 845-5203
Fax (510) 868-0976
maureen@mcfaddenlaw.net

February 23, 2007

**VIA FEDERAL EXPRESS**

Veronica Jones
Senior Manager, Employee Relations
Applied Biosystems
850 Lincoln Centre Drive
Foster City, CA 94404

Re:    Megan Kelly v. Applied Biosystems

Dear Ms. Jones:

This letter is written pursuant to Evidence Code § 1152, in an effort to settle Megan Kelly's employment-related claims against Applied Biosystems.

Ms. Kelly commenced employment as an Associate Production Chemist with Applied Biosystems in February 2002. Her performance was excellent. She received strong reviews, and agreeably worked the long hours often demanded. Throughout her time with Applied Biosystems, Ms. Kelly was a valued employee.

On July 6, 2004, Ms. Kelly tripped and sprained her ankle. After a short medical leave and a course of physical therapy, Ms. Kelly was released to return to work in September 2004. As part of her release to work, Ms. Kelly was supposed to be able to sit down whenever she needed to. However, Applied Biosystems was extraordinarily busy during this timeframe, and short-handed. Ms. Kelly, who generally worked alone, was pressured to get orders done quickly. As a result, she was seldom able to sit down.

On September 21, 2004, while moving about extensively and attending to multiple tasks at the same time, Ms. Kelly re-injured her right ankle. Emergency room physicians diagnosed Ms. Kelly with another ankle sprain, and she was again taken off of work. The re-injury was quite serious, in that Ms. Kelly's ankle did not heal well, and she continued to experience serious instability in her right ankle. Several subsequent falls have further aggravated the injury, and Ms. Kelly has also sustained wrist injuries in those falls.

Ms. Kelly has been under the care of numerous physicians while out on leave from Applied Biosystems. Throughout her leave, Ms. Kelly regularly left telephone messages with her immediate supervisor, Jonathon Laosiri, regarding her status and the progress of her recovery. Ms. Kelly also faxed doctor's notes to Applied Biosystems, to Mr. Laosiri's attention. Neither Mr. Laosiri nor anyone else from Applied Biosystems ever responded to Ms. Kelly's telephone messages, or communicated with her in any manner regarding her continued leave.

In January 2006, Ms. Kelly's physicians determined that she was well enough to return to work, albeit with restrictions as the to number of hours she could work, a restriction on lifting any more than 20 lbs, and a requirement that she sit down every hour for at least 10 minutes. Ms. Kelly provided

Exhibit 5-1

February 23, 2007

Applied Biosystems with a doctor's note authorizing her to work, and specifying these restrictions. Ms. Kelly's supervisor, Jonathon Laosiri, continued to fail to respond to her. Ms. Kelly then called Applied Biosystem's HR department directly, and again explained that she was authorized to return back to work, and the nature of her work restrictions. Applied Biosystems made no effort to get Ms. Kelly back to work. Instead, the company summarily informed Ms. Kelly that she could not return to work unless she either had no restrictions at all and/or could work at least 20 hours per week.

Applied Biosystem's above-described conduct is in clear violation of California law. Ms. Kelly's ankle condition constitutes a "physical disability" within the meaning of the Fair Employment and Housing Act, in that it is a physiological condition that limits (i.e. makes more difficult) her achievement of the major life activity of work. Govt. Code § 12926(k). As such, Ms. Kelly is entitled to all the protections afforded under the law for individuals with disabilities. In particular, when an employee with a known physical disability requests accommodation, the employer is then obligated to engage in a timely good faith "interactive process." Govt. Code § 12940(n). Ms. Kelly's presentation of the January 2006 doctor's note to Applied Biosystems triggered its obligation to engage in the interactive process with her.

The "interactive process" refers to the back and forth dialogue and exchange of information between an employer and employee that is needed to determine what type of accommodation will aid an employee. As one court has explained of the interactive process: "Employers should meet with the employee who requests accommodation, request information about the condition and what limitations the employee has, ask what he or she specifically wants, and offer and discuss available alternatives when the request is burdensome." Taylor v. Phoenixville School Dist., 184 F.3d at 317. Because Applied Biosystems summarily dismissed Ms. Kelly's January 2006 request for accommodation, without making any effort whatsoever to analyze her work restrictions, or to explore options that would have enabled her to return to work, it will be held liable on a claim for failure to engage in the interactive process. See Claudio v. Regents of the University of California (2005) 134 Cal.App.4th 224.

Applied Biosystems will also be held liable on a separate claim for failure to accommodate, pursuant to Govt. Code § 12940(m). Employers have an affirmative duty to accommodate disabled workers. Ms. Kelly was not requesting anything extraordinary. The Fair Employment and Housing Act specifically identifies "offering part-time or modified work schedules" as a potential reasonable accommodation. Govt. Code § 12926(n); 2 Cal. Code Regs. § 7293.9(a). Allowing an employee to sit down and/or take breaks more often than is typical is also a well-accepted and common reasonable accommodation. If this matter is litigated, we are confident the evidence will show that Applied Biosystems could have accommodated Ms. Kelly's disability.

Ms. Kelly took pride in her job with Applied Biosystems, and was crushed at the company's unwillingness to assist in getting her back to work. Applied Biosystem's conduct is particularly despicable in light of the fact that Ms. Kelly's October 2004 re-injury was a workplace accident, which may have been caused in part by the company's inadequate accommodation of her original July 2004 sprained ankle. Ms. Kelly has experienced significant emotional distress arising out of Applied Biosystem's conduct. She has also sustained a substantial economic loss, including more than a year's work of salary and associated benefits.

Exhibit 5-2

-- 3 --                                        February 23, 2007

Applied Biosystem's outrageous conduct towards Ms. Kelly may also warrant punitive damages. A sampling of recent disability discrimination verdicts demonstrates that juries take these claims seriously, and don't hesitate to award large emotional distress and punitive damages awards:

| Case | Economic Damages | Emotional Distress | Punitives | Total Jury Verdict |
|------|------------------|--------------------|-----------|--------------------|
| Martin v. Arrow Electr. (2006) | $1M | | $500K | $1.5M |
| Carr v. Wash. Mutual (2006) | $118K | $682K | | $800K |
| McGee v. Tucoemas (2005) | $542K | $1.5M | $1.2M | $3.2M |
| Welch v. Anaheim (2005) | $215K | $5M | | $5.2M |
| Roby v. McKesson (2004) | $1.3M | $2.7M | $15M | $19M |
| Wrysinski v. Agilent (2004) | $850K | $117K | $3.8M | $4.8M |
| Green v. State (2003) | $597K | $2M | | $2.6M |
| McMurray v. Burbank (2003) | $997K | $537K | | $1.5M |
| Tousignant v. San Bernardino (2002) | $445K | $1M | | $1.4M |

Ms. Kelly wants to move on with her life, and will agree to settle all past disability and related claims against Applied Biosystems for $75,000. She also wants her job back. Ms. Kelly hereby demands that Applied Biosystems promptly engage in the interactive process with her, and offer such reasonable accommodations as will allow her to return to work as quickly as possible. Towards that end, Ms. Kelly's current work restrictions are enclosed with this letter.

Please provide a response within one week of the date of this letter. If we do not hear from you by that time, we will commence litigation.

Very Truly Yours,

LAW OFFICES OF MAUREEN E. MCFADDEN

Maureen E. McFadden

Encl.   Current work restrictions
        DFEH Complaint and right to sue letter

Exhibit 5 - 3

# EXHIBIT 6

**Applera**
Corporation

301 Merritt 7
Norwalk, CT 06851

March 6, 2007

*VIA E-MAIL AND U.S. MAIL*

Maureen E. McFadden, Esq.
819 Bancroft Way
Berkeley, CA 94710

    *Re:   Megan Kelly*

Dear Ms. McFadden:

    Please direct any further correspondence regarding Ms. Kelly to my attention. We are open to discussing this matter in order to reach a solution.

           Sincerely,

           Charles J. Heinzer
           Senior Director, Attorney

cc:  V. Jones

**KELLY 0150**

D:\WD 021 – 01012007-03312007\L-McFadden-Kelly.doc    Exhibit 6-1    T (203) 840-2000
www.applera.com

AB Applied Biosystems           CELERA

# EXHIBIT 7



301 Merritt 7
Norwalk, CT 06851

March 28, 2007

*VIA E-MAIL AND U.S. MAIL*

Maureen E. McFadden, Esq.
819 Bancroft Way
Berkeley, CA 94710

    Re:   *Megan Kelly*

Dear Ms. McFadden:

    Applera's Human Resources Department recently attempted to contact Ms. Kelly to set up a meeting regarding her return to work. The Company has not heard from her. May I ask you to contact your client and let us know when she desires to discuss her return.

           Sincerely,

           Charles J. Heinzer
           Senior Director, Attorney

cc: V. Jones

**KELLY 0147**

Exhibit 7-1

T (203) 840-2000
www.applera.com

# EXHIBIT 8

# LAW OFFICES OF MAUREEN E. MCFADDEN
## 819 Bancroft Way, Berkeley, CA 94710

| To: | Veronica Jones | From: | Maureen E. McFadden |
|-----|----------------|-------|---------------------|
| Fax: | (650) 638-6705 | Fax: | (510) 868-0976 |
| Phone: | | Phone: | (510) 845-5203 |

| Date: | 5/18/2007 |
|-------|-----------|
| Subject: | Kelly/Applied Biosystems |

Please see attached note with work restrictions for Megan Kelly.

KELLY 0142

Exhibit 8-1



**Palo Alto Medical
Foundation**
A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

May 9, 2007

MRN# 15221641

To Whom It May Concern:

My patient, Megan Kelly, is currently under my care for her wrists. She was seen and evaluated in the office today, May 9, 2007. She may return to work with restrictions. She should not lift more than 2 lbs with either hand. She should avoid repetitive movements with either hand/wrist for prolonged periods, no longer than 15 minutes at a time. She may file and pour liquids with these limitations.

If you have any questions, please feel free to call my office at (510) 490-1222.

Sincerely,

Barry Rose, MD
Orthopedic Surgeon
Fremont Clinic

**KELLY 0143**

Exhibit & 2

# EXHIBIT 9

# LAW OFFICES OF MAUREEN E. MCFADDEN
## 819 Bancroft Way, Berkeley, CA 94710

| To: | Veronica Jones | From: | Maureen E. McFadden |
|---|---|---|---|
| Fax: | (650) 638-6705 | Fax: | (510) 868-0976 |
| Phone: | | Phone: | (510) 845-5203 |

| Date: | 5/3/2007 |
|---|---|
| Subject: | Kelly/Applied Biosystems |

Please see attached note with work restrictions for Megan Kelly.

KELLY 0145

Exhibit 9 -1



**Palo Alto Medical Foundation**

A Sutter Health Affiliate

**Fremont Center**

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

April 25, 2007

MRN# 15221641

To Whom It May Concern:

My patient, Megan Kelly, is currently under my care for her wrists. She may return to work with restrictions. She should not lift more than 2 lbs with either hand. She should avoid repetitive movements with either hand/wrist for prolonged periods, no longer than 15 minutes at a time. She may file and pour liquids with these limitations.

If you have any questions, please feel free to call my office at (510) 490-1222.

Sincerely,

Barry Rose, MD
Orthopedic Surgeon
Fremont Clinic

**KELLY 0146**

Exhibit 9-2

# EXHIBIT 10

# LAW OFFICES OF MAUREEN E. MCFADDEN
## 819 Bancroft Way, Berkeley, CA 94710

| To: | Veronica Jones | | From: | Maureen E. McFadden |
|---|---|---|---|---|
| Fax: | (650) 638-6705 | | Fax: | (510) 868-0976 |
| Phone: | | | Phone: | (510) 845-5203 |

| Date: | 5/29/2007 |
|---|---|
| Subject: | Kelly/Applied Biosystems |

Please see attached note with work restrictions for Megan Kelly.

KELLY 0139

Exhibit 10-1

# EXHIBIT 11

# LAW OFFICES OF MAUREEN E. MCFADDEN
## 819 Bancroft Way, Berkeley, CA 94710

| To: | Veronica Jones | From: | Maureen E. McFadden |
|-----|----------------|-------|---------------------|
| Fax: | (650) 638-6705 | Fax: | (510) 868-0976 |
| Phone: | | Phone: | (510) 845-5203 |

| Date: | 5/30/2007 |
|-------|-----------|
| Subject: | Kelly/Applied Biosystems |

Please see attached note with work restrictions for Megan Kelly.

KELLY 0137

Exhibit 11 -1



**Palo Alto Medical Foundation**

.A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

·May 24, 2007

Megan Kelly
2009 Mcgee Ave
.Apt 2
Berkeley, CA 94703

To Whom It May Concern:

Megan Kelly  was seen and evaluated in clinic today.   She may return to part-time work with limited repetitive activities.

If you have any questions, please do not hesitate to call my office at (510) 490-1222.

Sincerely,

Barry A. Rose, M.D.
Palo Alto Medical Foundation
Fremont Center
3200 Kearney Street
Fremont, CA 94538

KELLY 0140

Exhibit 11-2

# EXHIBIT 12

# LAW OFFICES OF MAUREEN E. MCFADDEN
## 819 Bancroft Way, Berkeley, CA 94710

| To: | Veronica Jones | From: | Maureen E. McFadden |
|---|---|---|---|
| Fax: | (650) 638-6705 | Fax: | (510) 868-0976 |
| Phone: | | Phone: | (510) 845-5203 |

| Date: | 6/1/2007 |
|---|---|
| Subject: | Kelly/Applied Biosystems |

Please see attached note with work restrictions for Megan Kelly.

KELLY 0133

Exhibit 12-1



**Palo Alto Medical Foundation**

A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

May 31, 2007

MRN# 15221641

To Whom It May Concern:

Megan Kelly was seen and evaluated in clinic today.  She may return to part-time work, which is 20 hours a week, with limited repetitive activities.

If you have any questions, please do not hesitate to call my office at (510) 490-1222.

Sincerely,

Barry A. Rose, M.D.
Palo Alto Medical Foundation
Fremont Center

**KELLY 0134**

Exhibit 12-2

# EXHIBIT 13



**Palo Alto Medical Foundation**

A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

April 25, 2007

MRN# 15221641

To Whom It May Concern:

My patient, Megan Kelly, is currently under my care for her wrists. She may return to work with restrictions. She should not lift more than 2 lbs with either hand. She should avoid repetitive movements with either hand/wrist for prolonged periods, no longer than 15 minutes at a time. She may file and pour liquids with these limitations.

If you have any questions, please feel free to call my office at (510) 490-1222.

Sincerely,

/Barry Rose, MD
Orthopedic Surgeon
Fremont Clinic

**KELLY 0146**

Exhibit 13-1

# EXHIBIT 14



**Palo Alto Medical Foundation**
A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

May 9, 2007

MRN# 15221641

To Whom It May Concern:

My patient, Megan Kelly, is currently under my care for her wrists. She was seen and evaluated in the office today, May 9, 2007. She may return to work with restrictions. She should not lift more than 2 lbs with either hand. She should avoid repetitive movements with either hand/wrist for prolonged periods, no longer than 15 mintues at a time. She may file and pour liquids with these limitations.

If you have any questions, please feel free to call my office at (510) 490-1222.

Sincerely,

Barry Rose, MD
Orthopedic Surgeon
Fremont Clinic

KELLY 0143

Exhibit 14-1

# EXHIBIT 15



**Palo Alto Medical Foundation**
. A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

May 24, 2007

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

To Whom It May Concern:

Megan Kelly was seen and evaluated in clinic today. She may return to part-time work with limited
repetitive activities.

If you have any questions, please do not hesitate to call my office at (510) 490-1222.

Sincerely,

Barry A. Rose, M.D.
Palo Alto Medical Foundation
Fremont Center
3200 Kearney Street
Fremont, CA 94538

KELLY 0140

Exhibit 15-1

# EXHIBIT 16



## PACIFIC
Orthopaedic & Sports Rehabilitation

5/25/07

To Whom It May Concern:

Megan Kelly is currently receiving physical therapy care s/p arthroscopic surgery for right wrist TFCC tear. She presents with pain, weakness, decreased ROM and decreased functional use of her right hand as a result. Megan wears a wrist splint during the day for activities of daily living to preserve her recovery and prevent injury. We recommend the following work restrictions to continue promoting her full recovery.

Regarding her job description:

1. Regularly, and as needed, assemble MicroRNA boxes, requiring bending, stooping, and lifting.

   *Megan is limited to only 5 pounds of weight maximally at this time and must take breaks to rest the right wrist/hand every 20 minutes.*

2. Regularly inspect CORE packaging, including reconstitution of vibrating plates.

   *Megan may not subject the wrist and hand to repeated pressure and vibration; should avoid reconstituting the vibration plates.*

3. Redline SOPs using standard writing implements and or personal computer.

   *Megan must take a 10 minute break from typing, after 20 minutes, for rest or change of task.*

4. Regularly assist operators with total preventive maintenance, which requires wiping down instruments and workbenches with wipes; returning tools to their designated location; and performing visual checks on instruments.

   *Megan needs to wear her wrist brace at all times while working and must avoid extreme positions of wrist flexion or extension during this task.*

5. Routinely perform data collection for OEE, which requires manipulating Excel spreadsheets and performing simple calculation using standard keyboard and mouse.

   *Megan must take a 10 minute break from typing, after 20 minutes, for rest or change of task.*

6. Coordinate training for operators, which may involve any or all of the activities listed above.

   *See above.*

Sincerely,

Azuka Nwigwe, DPT

**KELLY 0138**

Exhibit 16-1

# EXHIBIT 17



**Palo Alto Medical Foundation**

A Sutter Health Affiliate

Fremont Center

3200 Kearney Street
Fremont, CA 94538
(510) 490-1222
www.pamf.org

Megan Kelly
2009 Mcgee Ave
Apt 2
Berkeley, CA 94703

May 31, 2007

MRN# 15221641

To Whom It May Concern:

Megan Kelly was seen and evaluated in clinic today.  She may return to part-time work, which is 20 hours a week, with limited repetitive activities.

If you have any questions, please do not hesitate to call my office at (510) 490-1222.

Sincerely,

Barry A. Rose, M.D.
Palo Alto Medical Foundation
Fremont Center

# KELLY 0134

Exhibit 17-1

# EXHIBIT 18

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

MEGAN KELLY,

       Plaintiff,

vs.                                        No. C-07-3002 MMC (EMC)

APPLERA CORPORATION,

       Defendant.

CERTIFIED
COPY

DEPOSITION OF MEGAN LYNN KELLY

San Francisco, California

Monday, February 11, 2008

Reported by:
DARCY J. BROKAW
RPR, CRR, CLR, CSR No. 12584

Job No. 82191

Exh. 18-1

SARNOFF

1        Q     Now, I want to shift gears slightly and

2   talk about your return to work in '07.

3              MS. McFADDEN:  It's almost about 12:30.

4   Is now a good time to take a break?

5              MR. PAETKAU:  Yes.  Let me just ask a few

6   more questions on this topic, and then we'll break.

7   BY MR. PAETKAU:

8        Q     When you came back to work -- and we'll

9   talk after the lunch break about what happened, the

10  communications in '06 and '07.

11             But when you came back in June of '07, did

12  you have a new supervisor?

13       A     Yes.

14       Q     Who was that?

15       A     Ana Evanchik, E-v-a-n-c-h-i-k.

16       Q     How has it gone with her?  Is she a good

17  supervisor?

18       A     I don't see much of her.

19       Q     Have you had any issues with her, either

20  personal or otherwise?

21       A     There have been issues I have brought to

22  her that have gone unresolved for a length of time.

23       Q     Such as?

24       A     Not having a phone in the office to do

25  part of the work they've requested of me.  Not

Exh. 18-2

MEGAN LYNN KELLY    02/11/08

1    getting information about meeting notices.  Not

2    getting responses to questions asked, and similar

3    things.

4        Q    Do you recall anything else specifically,

5    any other issues that she was not resolving quickly

6    enough?  Ms. Evanchik.

7        A    I'm trying to think.

8             The list I gave you is not exhaustive.

9    It's exhaustive, but I can't think of anything off

10   the top of my head right now.

11       Q    Okay.  And that's part of what we're here

12   today -- my job is to make sure I exhaust your

13   memory as best as I can.  So I'll come back to that.

14            But the phone, the meeting notices.  The

15   third thing you said was responses to questions that

16   you had asked.

17            Do you recall any questions that you asked

18   her, that is Ana Evanchik, that she was not, in your

19   view, prompt enough in responding to?

20       A    Questions on getting training for

21   returning to lab work.  We follow standard operating

22   procedures in the lab, and they require that you

23   have updated training before you do the lab work.

24   And I requested that several times before it was

25   finally granted that I was trained.

105

Exh. 18-3

BY MR. PAETKAU:

    Q   I appreciate your answer.  But you're saying now others asked for chairs in the lab?

    A   Yes.

    Q   Do you remember the names of anyone who asked for a chair in the lab?

    A   The entire production department. Everybody in the synthesizers group, and I don't remember names.

    Q   Okay.  Did you, yourself ask for a chair at any time prior to going out on leave in September of '04?

    A   As part of the group, yes.  When we moved to Pleasanton, we had chairs; and I don't remember when we moved to Pleasanton.

    Q   Okay.  But starting when you moved to Pleasanton, there were chairs in the lab at that point in time?

    A   Yes.

    MR. PAETKAU:  Okay.  Why don't we take a break for lunch.

              (A lunch recess was taken.)

    MS. McFADDEN:  Now that we're back on the record, it seems one of the questions we left off on was the question of Ana Evanchik, her supervisor,

Exh. 18·4

1    issues not resolved.  And you were asking her to

2    give a list, and I believe there was some

3    clarification we needed to give in that regard.

4         Ms. Kelly.

5         THE WITNESS:  Yes.  Some problems with Ana

6    have been when I returned to work on June 18th,

7    apparently nobody knew what to do with me.  There

8    was no clear work to do; there was no job

9    description, nothing was set up.

10        Also to deal with that, there were --

11   there was an ergonomic request, ergonomic evaluation

12   that was supposed to be done.  It took a long time

13   to get the ergonomic evaluation set up; and once it

14   was set up and done, actually getting me equipment

15   advised by the consultant took a long time and lots

16   of e-mailing back and forth.  It wasn't resolved

17   quickly.

18        And then one of the things I did mention

19   at least part of was that I wasn't getting

20   notification of meetings.  They were happening in

21   places that -- they were being scheduled for places

22   that I couldn't reach, on second floors without

23   elevators.  And when I requested notes from the

24   meetings, I didn't get them after the first request.

25   When I finally got them, I wasn't able to get

109

Exh. 18.5

MEGAN LYNN KELLY

1    clarification on what they meant.

2              And there have been other group activity

3    notifications, barbecues, employee get-togethers,

4    that I haven't been told about or that have been

5    scheduled on days where I couldn't attend.

6    BY MR. PAETKAU:

7        Q    How many days a week are you working

8    currently?

9        A    I work three days a week.

10       Q    Which days?

11       A    Monday, Wednesday and Thursday.

12       Q    So what you're saying is that if a meeting

13   were scheduled on a day that you weren't there, you

14   wouldn't necessarily be present to attend the

15   meeting?

16             MS. McFADDEN:  Misstates testimony.

17             THE WITNESS:  If I had any notification of

18   the meeting, I could try and arrange my schedule,

19   but these are -- if I don't find out about it,

20   there's no chance for me to do anything.

21   BY MR. PAETKAU:

22       Q    So right now, you're working Monday,

23   Tuesday, Wednesday?

24       A    Monday, Wednesday, Thursday.

25       Q    Monday, Wednesday, Thursday.

110

Exh. 18-6

MEGAN LYNN KELLY

02/11/08

1

2

3

4

5

6

7

8

9        I, MEGAN LYNN KELLY, do hereby declare under

10    penalty of perjury that I have read the foregoing

11    transcript, that I have made corrections as appear noted, in

12    ink, initiated by me; that my testimony as contained herein,

13    as corrected, is true and correct.

14        EXECUTED this _____ of

15    _____ 2008, at

16    _____,_____

17    City                    State.

18

19        _____

20        MEGAN LYNN KELLY

21

22

23

24

25

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

Exh. 18-7

1      I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3      That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11      Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [✓] was not requested.

15      I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18      IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:    FEB 1 5 2008

22

23

24                         DARCY J. BROKAW
                           CSR No. 12584

25

*Exh. 18-8*