Maureen E. McFadden, SBN 203781
LAW OFFICES OF MAUREEN E. MCFADDEN
819 Bancroft Way
Berkeley, CA 94710
Ph (510) 845-5203
Fax (510) 868-0976

Attorney for Plaintiff
MEGAN KELLY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MEGAN KELLY,<br><br>   Plaintiff,<br><br> vs.<br><br>APPLERA CORPORATION and DOES 1-20, inclusive,<br><br>   Defendants. | Case No.: C-07-3002 MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 28, 2008<br>Time: 9:00 a.m.<br>Courtroom 7, 19th Floor<br>The Honorable Maxine M. Chesney |

NOTICE IS HEREBY GIVEN that on July 28, 2008 at 9:00 a.m. in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, plaintiff Megan Kelly will move the Court for an order granting partial summary judgment as to the following matters:

 (1) During January 2006, plaintiff Megan Kelly had a "known physical disability or known medical condition" within the meaning of Govt. Code § 12940(n);

 (2) During January 2006, plaintiff Megan Kelly made a request for reasonable accommodation, and was willing to participate in an interactive process with Applera;

(3)     Applera failed to engage in a timely, good faith interactive process in response to

plaintiff's January 2006 request for accommodation.

The evidence regarding these matters is undisputed.  Wherefore, plaintiff respectfully

requests that she be granted partial summary judgment as to each of these three issues.


DATED:  June 20, 2008                              LAW OFFICES OF MAUREEN E. MCFADDEN


                                                   By: _____
                                                        Maureen E. McFadden

                                                   Attorney for Plaintiff
                                                   MEGAN KELLY

Maureen E. McFadden, SBN 203781
LAW OFFICES OF MAUREEN E. MCFADDEN
819 Bancroft Way
Berkeley, CA 94710
Ph (510) 845-5203
Fax (510) 868-0976

Attorney for Plaintiff
MEGAN KELLY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MEGAN KELLY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>APPLERA CORPORATION and DOES 1-20, inclusive,<br><br>                    Defendants. | Case No.: C-07-3002 MMC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  July 28, 2008<br>Time: 9:00 a.m.<br>Courtroom 7, 19th Floor<br>The Honorable Maxine M. Chesney |

## INTRODUCTION

Plaintiff Megan Kelly alleges, among other things, that defendant Applera Corporation failed to engage in the interactive process in good faith as to her January 2006 request for accommodation.  This motion is specifically directed at establishing key elements necessary to establish plaintiff's claim for failure to engage in the interactive process in good faith, as to her January 2006 request for accommodation.  Because there are no factual disputes as to any of these elements, plaintiff's motion for partial summary judgment should be granted.

## STATEMENT OF ISSUES

Plaintiff seeks rulings from the Court on the following issues:

(1)     Whether plaintiff had a "known physical disability or known medical condition" within the meaning of Govt. Code § 12940(n), during January 2006;

(2)     Whether plaintiff made a request for reasonable accommodation, and was willing to participate in an interactive process with Applera, in January 2006;

(3)     Whether Applera failed to engage in a timely, good faith interactive process in response to plaintiff's January 2006 request for accommodation.

## STATEMENT OF FACTS

### I.    <u>Plaintiff's Ankle Condition</u>

Plaintiff began working as an Associate Production Chemist at Applera Corporation in February 2002.  In July 2004, she sprained her right ankle in a non-work related incident.  After a short medical leave and physical therapy, plaintiff was released to return to work in early September 2004.  Kelly Deposition of 2/11/08, 35:5-7, 35:10-12, Exhibit A to Declaration of Maureen E. McFadden.

On or about September 21, 2004, while working at Applera, plaintiff re-injured her ankle. Kelly Deposition of 2/11/08, 35:10-36:17, Exhibit B to Declaration of Maureen E. McFadden. Emergency room physicians diagnosed plaintiff with another ankle sprain, and she was again taken off of work.  The re-injury was quite serious, in that plaintiff's ankle did not heal well, and she continued experiencing serious instability in her right ankle. Declaration of Megan Kelly, ¶ 2. Dr. Al-Shaikh, who treated plaintiff for her ankle condition from 2004-2006 (Declaration of Dr. Al-Shaikh, ¶ 1), noted that throughout a large part of his treatment of plaintiff, she had difficulty walking without an assistive device. Dr. Al-Shaikh deposition, 10:14-20, Exhibit C to

Declaration of Maureen E. McFadden.

From September 21, 2004 through mid- January 2006, plaintiff's doctors required her to remain off of work due to her ankle condition. After every medical appointment with her doctors during this time-frame, plaintiff's leave status was continued. Each and every time Dr. Al-Shaikh updated plaintiff's leave status in writing, she notified her direct supervisor, Jonathon Laosiri, of her status by leaving a voice mail message for him. Declaration of Megan Kelly, ¶ 3.

While she was out on leave from September 21, 2004 through mid-January 2006, plaintiff received partial replacement of her earnings from Applera from her disability insurer, Unum Provident (UNUM). Each of UNUM's communications with plaintiff was cc'd to Applera, so that Applera was aware of plaintiff's continuing disability status. Deposition of Stefan Lazar, 185:18-186:3, Exhibit D to Declaration of Maureen E. McFadden; Declaration of Megan Kelly ¶ 4.

## II.    Plaintiff's January 2006 Request for Accommodation

Plaintiff's ankle condition gradually improved, and in January 2006, Dr. Al-Shaikh determined that she was well enough to return to her job as an associate production chemist at Applera, with restrictions. On January 20, 2006, Dr. Al-Shaik issued work restrictions for plaintiff, with the intent of getting her back to work at Applera. Declaration of Dr. Al-Shaikh, Exhibit A (January 20, 2006 work restrictions for Ms. Kelly)  Prior to Dr. Al-Shaikh's issuance of the work restrictions, he and Ms. Kelly discussed what her job as associate production chemist at Applera entailed. Declaration of Megan Kelly, ¶ 5.

Ms. Kelly communicated her January 20, 2006 work restrictions to Applera in two ways. First, on or about January 24, 2006 plaintiff called her direct supervisor, Jonathon Laosiri, and left him a voice mail message as to her doctor's release of her to return to work, and the

restrictions imposed by her doctor. Deposition of Jonathon Laosiri, 98:19-99:2, 103:7-106:2,

and Exhibit 5 to Laosiri deposition, attached as Exhibit E to the Declaration of Maureen E.

McFadden; Declaration of Megan Kelly ¶ 6. Second, after she made the call to Mr. Laosiri, (and

still during the time-frame of January 24-January 30, 2008), plaintiff called HR Direct, an

Applera department employees are directed to call with any HR related issues, and left a voice

mail message. Plaintiff's voice mail message to HR direct explained who she was, that she had

been released to return to work, and also contained a word-for-word recitation of her work

restrictions from Dr. Al-Shaikh. Deposition of Stefan Lazar, 187:6-188:12, 221:1-12, 224:5-22,

and Exhibit 2 to Lazar deposition (ticket created by HR Direct in response to Ms. Kelly's request

for accommodation as to Dr.Al-Shaik's January 20, 2006 work restrictions), Attached as Exhibit

F to the Declaration of Maureen E. McFadden; Declaration of Megan Kelly ¶ 6.

## III.    Applera's Failure to Engage in the Interactive Process as to Plaintiff's January 2006 Request for Accommodation of Her Disability

According to Stefan Lazar, a senior manager of employee relations at Applera, Jonathon

Laosiri  was responsible for making the "business decision" as to whether or not Applera could

accommodate plaintiff's January 2006 work restrictions. Deposition of Stefan Lazar, 196:3-

197:11, 203:5-204:2, Exhibit G to the Declaration of Maureen E. McFadden. Mr. Laosiri

testified that he had never heard the term "interactive process" and had no idea what that meant.

He also didn't have a good understanding of "reasonable accommodation." Deposition of

Jonathon Laosiri, 25:9-26:13, attached as Exhibit H to the Declaration of Maureen E. McFadden.

Mr. Laosiri also didn't have any understand as to Applera's process for determining reasonable

accommodations for employees with disabilities. Deposition of Jonathon Laosiri, 27:24-30:2,

attached as Exhibit I to the Declaration of Maureen E. McFadden

According to Mr. Laosiri, the only things he did with respect to Ms. Kelly's request for accommodation were: (1) call plaintiff back, in order to get her work restrictions and let her know that someone else would get back to her as to her request for accommodation[1] (Deposition of Jonathon Laosiri, 90.4-91:1 attached as Exhibit J to the Declaration of Maureen E. McFadden; and (2) email Meretta Miles, Applera's safety officer, to ask for assistance in how to transition plaintiff back to work. (Deposition of Jonathon Laorisi, 93:20-95:18, and Exhibit 4 to Laosiri deposition (1/24/06 email from Laosiri to Mereta Miles), Attached as Exhibit K to the Declaration of Maureen E. McFadden.  When Meretta Miles informed Mr. Laosiri that the company's doctor, Dr. Whorton, had determined that a fitness for duty exam needed to be performed on plaintiff, Mr. Laosiri believed that he had no further obligations with respect to plaintiff's request for accommodation as to her January 2006 work restrictions.  Deposition of Jonathon Laosiri, 100:18-102:8, 106:12-111:4, 113:20-114:13, and Exhibit 6 to Laosiri deposition (String of emails from 1/24/06), attached as Exhibit L to the Declaration of Maureen E. McFadden.   Plaintiff never had any fitness for duty exam in connection with her submission of January 2006 work restrictions from Dr. Al-Shaikh, and no one at Applera ever asked her to take one.  Declaration of Megan Kelly ¶ 7.

Mr. Lazar's purported efforts to accommodate plaintiff's January 2006 work restrictions from Dr. Ak-Shaikh consisted of two telephone calls with Mr. Laosiri.  In the first call, Mr. Lazar claims to have told Mr. Laosiri about plaintiff's work restrictions, and to have explained that Mr. Laosiri would need to determine whether or not the company could accommodate her work restrictions.  Mr. Lazar also told Mr. Laosiri that "the general guideline would be a

---

[1] While plaintiff has no recollection of Laosiri's claimed conversation with her, it is a factual dispute without importance, given that all Laosiri claims to have done is get her work restrictions and tell her someone else would get back to her.

minimum of 20 hours just as a starting point." Deposition of Stefan Lazar, 196:6-197:1, attached

as Exhibit M to the Declaration of Maureen E. McFadden.  In the second call, Mr. Lazar claims

that Mr. Laosiri told him that Ms. Kelly could not be accommodated because of safety, physical

restrictions, and the time factor.  Deposition of Stefan Lazar, 209:3-210:20, attached as Exhibit N

to the Declaration of Maureen E. McFadden.  Mr. Lazar had no idea how Mr. Laosiri reached his

conclusion that plaintiff's January 2006 work restrictions could not be accommodated, and made

no effort to find out. Deposition of Stefan Lazar, 217:1-217:14, attached as Exhibit O to the

Declaration of Maureen E. McFadden.

On or about January 30, 2006, Mr. Lazar admits that he had a five minute telephone

conversation with plaintiff in which he told her that Applera wouldn't be able to accommodate

her January 2006 work restrictions, but claims not to remember anything else about the

conversation.  Deposition of Stefan Lazar, 228:18-232:8, attached as Exhibit P to the Declaration

of Maureen E. McFadden.  After Mr. Lazar's call to plaintiff, Applera simply closed its ticket as

to Megan Kelly's January 2006 request for accommodation.  According to plaintiff, Mr. Lazar

told her in this telephone conversation that "it wasn't worth it" for the company to bring her

back, and that Applera would not be willing to take her back unless she could perform at least 20

hours without any restrictions, or 40 hours with restrictions.  Declaration of Megan Kelly, ¶ 8.

The next communication regarding her job that plaintiff received from Applera was an October

30, 2006 letter from Mr. Lazar, informing plaintiff that the company would be terminating her

employment.  Declaration of Megan Kelly, ¶ 9.

**ARGUMENT**

This Court may "make an order specifying the facts that appear without substantial

controversy" and "[u]pn the trial of the action the facts so specified shall be deemed established.

. . ." Fed. R. Civ. P. 56(d); See EEOC v. E.I. Du Point de Nemours & Co., 480 F.3d 724, 728-30 (5th Cir. 2007) (affirming district court's grant of partial summary judgment in favor of plaintiff in employment discrimination case).

Govt. Code § 12940(n) provides that is an unlawful employment practice: "For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for a reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Plaintiff contends that as a matter of law, she has established several of the elements necessary to establish that Applera failed to engage in the interactive process in good faith as to her January 2006 request for accommodation, in violation of Govt. Code § 12940(n).

## I.    During January-February 2006, Plaintiff Had a "Known Physical Disability or Known Medical Condition" Within the Meaning of Govt. Code § 12940(n).

An employer need not know of plaintiff's exact disability, or even whether a particular medical condition necessarily constitutes a disability, in order for an interactive process to be triggered. Taylor v. Phoenixville School District (3rd Cir. 1999) 184 F.3d 296. As one court explained: "FEHA's reference to a 'known' disability is read to mean a disability of which the employer has become aware, whether because it is obvious, the employee has brought it to the employer's attention, it is based on the employer's own perception – mistaken or not – of the existence of a disabling condition or, perhaps as here, the employer has come upon information indicating the presence of a disability." Gelfo v. Lockheed Martin Corp. (2007) 140 Cal.App.4th 34, 6, fn. 21, specifically cited as support for CACI No. 2546, the jury instruction for Failure to Engage in the Interactive Process in Good Faith; See also Faust v. California Portland Cement Co. (2007) 150 Cal.App.4th 864, 887 (An employer "knows an employee has a disability when

the employee tell the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party of by observation.")  In <u>Faust,</u> the employee's submission of a note from his physician indicating that the employee was unable to perform his regular job duties was deemed sufficient notice of disability to have triggered the employer's obligation to consider potential accommodations.  <u>Id.</u>

Here, plaintiff had been on a leave of absence from Applera since September 2004 due to her ankle condition.  Applera knew about her disabling ankle condition because plaintiff told the company about it, and the September 2004 re-injury occurred at work.  UNUM also continuously certified plaintiff as disabled and regularly communicated with Applera about plaintiff's status since September 2004.  In January 2006, plaintiff told both her direct supervisor and HR direct that her doctor had released her to return work, and told them her doctor's exact work restrictions.   These facts establish that plaintiff had a "known disability or medical condition" sufficient to trigger an interactive process, under Govt. Code § 12940(n).

Plaintiff also had an actual "physical disability." Under FEHA, "physical disability" is defined to include (but is not limited to): "Any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that both affects one or more of the following bodily systems . . .(musculoskeletal) and limits an individual's ability to participate in major life activities." Govt. Code § 12926(k) "Major life activities" is broadly construed, and includes all basic life functions, including caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working. 2 Cal. C. Regs. § 7293.6(e)(1)(A)(2)(a).

"Physical disability" also is defined to include being regarded or treated by the employer as having or having had a health condition or impairment that limits a major life activity, making achievement more difficult. Govt. Code § 12926(k)(4). "Limits a major life activity" just means

the disability "makes the achievement of the major life activity more difficult." Govt. Code §

12926(k)(1)(B)(ii).  If a person's disability limits her participation in a major life activity, or

makes the major life activity more difficult as compared to a normal unimpaired person, this

prong has been satisfied.  Because plaintiff's ankle condition limited her ability to participate in

the major life activity of work, as evidenced by her doctor's January 2006 work restrictions, her

ankle condition constitutes a "physical disability" under FEHA.

**II.**    **During the Time-frame January 20, 2006-February 1, 2006, Plaintiff Made a Request for Reasonable Accommodation, and Was Willing to Participate in an Interactive Process with Applera**

It is undisputed that plaintiff notified both her direct supervisor, Jonathon Laosiri, and

HR direct of her January 2006 work restrictions issued by Dr. Al-Shaikh, and her desire to return

to work at Applera pursuant to those restrictions.  In so doing, plaintiff satisfied her obligations

of providing notice and evidencing willingness to participate in an interactive process, as

required by Govt. Code § 12940(n).  Jensen v. Wells Fargo Bank (2000) 85 cal.App.4th 245, 266.

**III.**    **Applera Failed to Engage in a Timely, Good Faith Interactive Process in Response to Plaintiff's January 2006 Request for Accommodation**

The "interactive process" is the back and forth dialogue or exchange of information that

is needed to determine what type of accommodation will aid the employee.  The EEOC has

identified four steps employers should take as part of the interactive process: (1) Analyze the

particular job involved and determine its purpose and essential functions; (2) Consult with the

individual with a disability to ascertain the precise job-related limitations imposed by the

individual's disability and how those limitations could be overcome with a reasonable

accommodation; (3) In consultation with the individual to be accommodated, identify potential

accommodations and assess the effectiveness each would have in enabling the individual to

perform the essential functions of the position; and (4) Consider the preference of the individual

to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer." 29 C.F.R. Pt. 1630, App. § 1630.9

The hallmark of the interactive process is the good faith exchange of information between the employer and employee. Barnett v. U.S. Air, Inc. (9th Cir. 2000) 228 F.3d 1105 (en banc) (vacated on other grounds in U.S. Airways, Inc. v. Barnett (2002) 535 U.S. 391). "The interactive process requires communication and good faith exploration of possible accommodations between employers and individual employees. The shared goal is to identify an accommodation that allows the employee to perform the job effectively. Both sides must communicate directly, exchange essential information and neither side can obstruct or delay the process." Id. (internal cites omitted)

To satisfy its obligation to engage in the interactive process, an employer should "meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered the employee's request, and offer and discuss available alternatives when the request is too burdensome." Taylor v. Phoenixville School District (3rd Cir. 1999) 184 F.3d 296, 317. "A party that obstruct or delays the interactive process in not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." Beck v. University of Wis. Bd. of Regents (7th Cir. 1996) 75 F.3d 1130, 1135.

Under the above standards, the undisputed facts show there was no interactive process at all as to plaintiff's January 2006 request for accommodation. The next communication plaintiff received from Applera after she relayed the fact that she bad been released to return to work, and the nature of her work restrictions, was the five minute phone call from Stefan Lazar, when he

informed her that the company would not be able to accommodate her doctor's restrictions. The next time plaintiff heard from Applera about her job was in an October 30, 2006 letter, in which plaintiff was informed that she was going to be terminated.

There was never any good faith exploration or substantive discussion whatsoever between plaintiff and Applera about how her doctor's work restrictions might be implemented. If the company genuinely believed plaintiff's January 2006 work restrictions posed a safety concern, or an undue burn on Applera, it never mentioned or explained those issues with plaintiff. Moreover, although the company's own doctor recommended a fitness for duty exam, Applera never even bothered asking plaintiff to take such an exam. The Court should find that as a matter of law, Applera failed to engage in a timely good faith interactive process in response to plaintiff's January 2006 request for accommodation.

## CONCLUSION

Based on the foregoing argument and authority, and on such further argument as may be presented at the time of oral argument on this matter, plaintiff Megan Kelly respectfully requests that the Court issue partial summary judgment in her favor as follows:

- During January 2006, plaintiff Megan Kelly had a "known physical disability or known medical condition" within the meaning of Govt. Code § 12940(n);

- During January 2006, plaintiff Megan Kelly made a request for reasonable accommodation, and was willing to participate in an interactive process with Applera;

- Applera failed to engage in a timely, good faith interactive process in response to

/ / /

/ / /

/ / /

plaintiff's January 2006 request for accommodation.

DATED:  June 20, 2008

LAW OFFICES OF MAUREEN E. MCFADDEN

By:

Maureen E. McFadden

Attorney for Plaintiff
MEGAN KELLY

Maureen E. McFadden, SBN 203781
LAW OFFICES OF MAUREEN E. MCFADDEN
819 Bancroft Way
Berkeley, CA 94710
Ph (510) 845-5203
Fax (510) 868-0976

Attorney for Plaintiff
MEGAN KELLY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGAN KELLY, | Case No.: C-07-3002 MMC |
| Plaintiff, | **DECLARATION OF DR. RAAD A. AL-SHAIKH** |
| vs. | |
| APPLERA CORPORATION and DOES 1-20, inclusive, | |
| Defendants. | |

I, Raad A. Al-Shaikh, hereby declare and state as follows:

1.    I am a physician licensed to practice in the state of California. Plaintiff Megan Kelly was my patient during 2004-2006. I have personal knowledge of the facts set forth below, and if called upon to do so, I could and would testify competently thereto.

2.    Attached hereto as Exhibit A is a true and correct copy of work restrictions I issued to Megan Kelly on January 20, 2006, for her to give to her employer, Applera Corporation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th date of June 2008 at Fremont, California.

_____
Dr. Raad A. Al-Shaikh

DECLARATION OF DR. AL-SHAIKH - 1

# EXHIBIT A

**FREMONT ORTHOPAEDIC MEDICAL GROUP**
38690 Stivers Street, Suite A
Fremont, CA 94536
(510) 793-6655 phone
(510) 793-4318 fax

DANIEL D. MORGAN, M.D.
JOHN T. DEARBORN, M.D.
DAVID M. BELL, M.D.

RAAD A. AL-SHAIKH, M.D.
KEITH A. JEFFREY, PA-C
GREG J. GRANATO, PA-C

NAME  Megan Kelly                              DATE: 1-20-06

☐ IS UNABLE TO RETURN TO WORK/PARTICIPATE IN P.E. FROM _____ TO _____

☐ MAY RETURN TO WORK/P.E. ON _____

☒ MAY RETURN TO WORK/P.E. WITH RESTRICTION NOTED BELOW ON __2-1-06__

☐ RECEIVED TREATMENT IN OUR OFFICE ON _____ AT _____

☐ HAS A FOLLOW-UP APPOINTMENT ON _____

RESTRICTIONS/REMARKS: Return to work 3 days/week working
4 hrs/day. Should be able to sit down every hour
for 10 minutes. No lifting over 20 lbs.

                                              Kelly Crugs    M.D.

OUR OFFICE WILL NOT FAX WORK/SCHOOL NOTES. IT IS THE PATIENT'S RESPONSIBILITY TO SUBMIT
THEM TO THE EMPLOYER/SCHOOL.


PENGAD 800-631-6989
EXHIBIT 4

1  Maureen E. McFadden, SBN 203781
   LAW OFFICES OF MAUREEN E. MCFADDEN
2  819 Bancroft Way
   Berkeley, CA 94710
3  Ph (510) 845-5203
   Fax (510) 868-0976

4  Attorney for Plaintiff
   MEGAN KELLY

5

6                    UNITED STATES DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8                      SAN FRANCISCO DIVISION

9

10  MEGAN KELLY,                        )  Case No.: C-07-3002 MMC
                                        )
11            Plaintiff,                )  **DECLARATION OF MEGAN KELLY IN**
                                        )  **SUPPORT OF PLAINTIFF'S MOTION**
12        vs.                           )  **FOR PARTIAL SUMMARY JUDGMENT**
                                        )
13  APPLERA CORPORATION and DOES 1-20,  )  Date:  July 28, 2008
    inclusive,                          )  Time: 9:00 a.m.
14                                      )  Courtroom 7, 19th Floor
                                        )  The Honorable Maxine M. Chesney
15            Defendants.               )
                                        )
16                                      )
                                        )
17                                      )
                                        )
18

19        I, Megan Kelly, declare:

20        1.      I am the plaintiff in this matter. I have personal knowledge of the facts contained

21  within this declaration and verify that the matters alleged herein are true and correct. If called as

22  a witness in this case, I could and would testify competently to the facts contained herein.

23        2.      After I returned to work in September 2004, I re-injured my ankle. I was

24  diagnosed with another ankle sprain, and again taken off of work. The re-injury was quite

25

26  serious, in that my ankle did not heal well, and I experienced significant instability in my right

27  ankle.

28

3.      From September 21, 2004 through mid- January 2006, my doctors required me to remain off of work due to my ankle condition.  After every medical appointment with my doctors during this time-frame, my leave status was continued.  Each and every time one of my doctors provided me with a written continuation of my leave status, I notified my direct supervisor, Jonathon Laosiri, by leaving a voice mail message for him.

4.      While I was out on leave from late September 2004 through mid-January 2006, I received partial replacement of my earnings from Applera from through my disability insurer, Unum Provident (UNUM).  Upon information and belief, each of UNUM's communications to me was cc'd to Applera, so that Applera was at all times also aware of my continuing disability status through UNUM.

5.      Prior to Dr. Al-Shaikh's issuance of work restrictions to me on January 20, 2006, he and I discussed what my job as associate production chemist at Applera entailed.

6.      I communicated my January 20, 2006 work restrictions to Applera in two ways. First, on or about January 24, 2006, I called my direct supervisor, Jonathon Laosiri, and left him a voice mail message as to my doctor's release of me to return to work, and the restrictions imposed by my doctor.  Second, after I made the call to Mr. Laosiri (and had not heard back from him),I called HR Direct and left a voice mail message.  My voice mail message to HR Direct explained who I was, that I had been released to return to work, and also contained a word-for-word recitation of my work restrictions from Dr. Al-Shaikh.

7.      I never had a fitness for duty exam in connection with my request for accommodation as to Dr. Al-Shaikh's January 2006 work restrictions.  No one at Applera asked me about taking a fitness for duty exam in connection with my request for accommodation as to Dr. Al-Shaikh's January 2006 work restrictions.

8.      On or about January 30, 2006, Mr. Lazar telephoned me and told me that Applera couldn't accommodate me, and that I wouldn't be able to return to work at Applera. Mr. Lazar told me that "it wasn't worth it" for the company to bring me back with the restrictions as specified by my doctor, and that Applera would not be willing to let me return to work unless I could perform at least 20 hours with no restrictions, or 40 hours with restrictions. I have no recollection of any other contact with anyone at Applera as to my January 2006 request for accommodation, other than as set forth in this declaration. I am certain that I did not have any substantive conversation with anyone at Applera about my January 2006 request for accommodation, other than as set forth in this declaration.

9.      After my late January 2006 conversation with Mr. Lazar, the next contact I received from Applera about my job was an October 30, 2006 letter informing me that the company would be terminating my employment. A true and correct copy of Applera's October 30, 2006 letter to me is attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, except as to those matters stated upon information and belief, and that this declaration was executed on this 20th day of June, 2008, at Berkeley, California.

By: _____
    Megan Kelly

# EXHIBIT A



**Applera**
Corporation

850 Lincoln Centre Drive
Foster City, CA
94404 USA

October 30, 2006

Megan Kelly
2009 McGee, No. 2
Berkeley, CA  94703

Dear Ms. Kelly,

Our records indicate that your last day at work with Applied Biosystems was September 21, 2004. On September 22, 2004 you were placed on a Leave of Absence.

On January 3, 2007 you will have exhausted all available leave of absence time and it is our intention to process a termination effective that date.

Beginning February 1, 2007, you will be eligible to continue insurance coverage under COBRA. You will receive a packet in the mail explaining your continuation options along with COBRA enrollment instructions and forms.

Please contact HR Direct at (866) 654-3411 if you have any questions.

Sincerely,

Stefan Lazar
Employee Relations Mgr.
Applera Corporation

KELLY 0185



EXHIBIT
13