TYLER M. PAETKAU, Bar No. 146305
LAURA E. HAYWARD, Bar No. 204014
MOLLY AGARWAL, Bar No. 247545
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, CA  94108.2693
Telephone:    415.433.1940
Facsimile:    415.399.8490
E-mail: tpaetkau@littler.com

Attorneys for Defendant
APPLERA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEGAN KELLY,<br><br>          Plaintiff,<br><br>    v.<br><br>APPLERA CORPORATION,<br><br>          Defendant. | Case No.  C-07-3002 MMC<br><br>**DEFENDANT APPLERA CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  July 25, 2008<br>Time:  9:00 a.m.<br>Courtroom: 7, 19th floor<br>The Honorable Maxine M. Chesney |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT

Case No. C-07-3002 MMC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 2

II.   STATEMENT OF FACTS ................................................................................. 3

    A.    Plaintiff's Employment History And Non-Work-Related Injuries ............................ 3

    B.    Plaintiff's Extended Subsidized Medical Leave Of Absence Of Nearly Three Years ................................................................................................ 4

    C.    Plaintiff Was Unable To Return To Work And Indicated No Desire To Return To Work ................................................................................................ 5

    D.    Ms. Kelly's Attorney's Interference With The Good Faith Interactive Process.......... 6

    E.    Even Ms. Kelly's Own Doctors Stated That She Was Unable To Return to Work, Even As Late as June 2007 ................................................................... 6

    F.    Despite Plaintiff's Lack Of Communication With Applera And Her Attorney's Interference In The Interactive Process, Applera Nevertheless Engaged In The Interactive Process And Accommodated Plaintiff By Providing Her With Nearly Three Years Of Paid Leave And Then Returning Her To Work ....................................................... 8

III.  ARGUMENT ....................................................................................................... 12

    A.    Plaintiff's Motion Is Both Procedurally And Substantively Defective ..................... 12

        1.    Plaintiff's notice of motion is deficient and untimely ................................... 12

        2.    Plaintiff seeks summary judgment on issues that are inherently subjective and fact-specific, and therefore unfit for summary judgment ...... 12

        3.    Plaintiff's motion improperly presents only *her* version of hotly disputed "facts."

    B.    Genuine Issues Of Material Fact Exist As To Whether Plaintiff Was A Qualified Individual With A Disability. ..................................................... 14

    C.    Applera Engaged In The Interactive Process With Plaintiff In Good Faith Despite Plaintiff And Her Attorney's Failure To Cooperate And Obstruction ......... 15

    D.    Plaintiff's "Evidence" Consists Of Misstatements And Her Own Declaration Contradicting Her Prior Sworn Testimony ....................................... 20

IV.   CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

Page

## CASES

*Allen v. Pacific Bell*, 348 F.3d 1113, 1115 (9th Cir. 2003) ................................................ 18

*Archdale v. American Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 473
(Cal. App. 2d Dist. 2007)........................................................................................... 20

*Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111-1114 (9th Cir. 2000) .................... 16, 17, 18

*Beck v. University of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135-37 (7th Cir. 1996)........ 18

*Chevron U.S.A. Inc. v. Echazabal* (2002) 536 US 73, 81–84, 122 S.Ct. 2045, 2050–
2053.......................................................................................................................... 15

*Claudio v. Regents of Univ. of Cal.*, 134 Cal. App. 4th 224, 247 (2005) ........................ 18

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S. Ct. 1597, 1603-04,
143 L.Ed.2d 966, 977 (1999) ............................................................................ 14, 16, 20

*Conneen v. MBNA America Bank, N.A.* (3d Cir.2003) 334 F.3d 318, 331 ...................... 17

*EEOC v. United Parcel Service, Inc.* (9th Cir. 2005) 424 F3d 1060, 1074....................... 15

*Fuller v. Frank*, 916 F.2d 558, 562 n.6 (9th Cir. 1990)................................................... 13

*Gonzalez v. El Dia, Inc.* (1st Cir. 2002) 304 F.3d 63, 68 ................................................. 11

*Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000)................................ 16, 17

*Katz v. Children's Hosp. of Orange Co.*, 28 F.3d 1520, 1534 (9th Cir. 1994).................. 12

*Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999); ............................. 16

*King v. United Parcel Service, Inc.*, 152 Cal. App. 4th 426, 443 (2007) ........................ 17

*Mays v. Principi*, 301 F.3d 866, 871 (7th Cir. 2002)....................................................... 16

*Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 948 (1997) ...................... 16, 17

*Proctor v. Consol. Freightways Corp.*, 795 F.2d 1472, 1476 (9th Cir. 1986)................... 13

*Spitzer*, 80 Cal.App.4th at p. 1384, 96 Cal.Rptr.2d 236 ................................................ 17

*Stoll v. The Hartford*, 2006 U.S. Dist. LEXIS 81781 at *18 (S.D. Cal. 2006)................... 17

*Taylor v. Phoenixville School District*, 184 F.3d 296, 317-18 (3d Cir. 1999)............ 17, 18

*Torres v. County of Oakland* (6th Cir. 1985) 758 F.2d 147, 150...................................... 11

*Waddy v. Sears, Roebuck & Co.*, 1994 U.S. Dist. LEXIS 9719 (N.D. Cal. 1994) ............ 20

## STATUTES

29 C.F.R. Pt. 1630, App. § 1630.9.................................................................................. 16

41 C.F.R. § 60-741.22..................................................................................................... 15

42 U.S.C. § 12111(8)....................................................................................................... 14

42 USC §§ 12111(3), 12113(a),(b).................................................................................. 15

Cal. Gov't Code § 12940(n)............................................................................................ 16

Fed. R. Civ. P. 7(b) ........................................................................................................ 12

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

(NO. )                                            i.

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    Cal. Gov't Code § 12940(a) .......................................................................................................... 15

4    Firmwide:85799602.1 008292.1051

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

(NO. )                                    ii.

1    **I.    INTRODUCTION**

2            In her Motion for Partial Summary Judgment, Plaintiff Megan Kelly simply turns a

3    blind eye to fundamental material disputes of fact by disingenuously and improperly casting them as

4    "undisputed."    As demonstrated below, each of the three issues upon which Plaintiff seeks

5    adjudication as a matter of law are rife with genuine, material factual disputes, as the Court already

6    indicated at the June 13, 2008 Status Conference.

7            The Court should deny Plaintiff's Motion for each of the following reasons:

8        1)    It is procedurally and substantively defective, including failure to provide proper

9                notice and failure to file by the June 20, 2008 deadline imposed by the Court's prior

10                Scheduling Order;

11        2)    Genuine issues of material fact exist as to whether Plaintiff was a qualified individual

12                with a disability, *i.e.*, one who could perform the essential functions of the job, with

13                or without a reasonable accommodation, during the time frame in question (January

14                2006);

15        3)    Genuine issues of material fact exist as to Applera's Affirmative Defenses that

16                Plaintiff's chronically unstable right ankle – which necessitated major reconstructive

17                surgery on November 3, 2006, eight months after she claims her doctor released her

18                to return to part-time work (12 hours per week) with other severe restrictions – posed

19                a danger to herself and her coworkers in a laboratory environment where she was

20                required to handle "extremely hazardous" chemicals and where she had re-injured her

21                unstable right ankle in September 2004 when she attempted to return to work too

22                early;

23        4)    Genuine issues of material fact exist as to whether Applera reasonably accommodated

24                Plaintiff's alleged disability by granting her an approximate three-year paid leave of

25                absence and returning her to part-time work in June 2007, following her recovery

26                from major right ankle surgery (on November 3, 2006) and left wrist surgery (on

27                April 18, 2007); and

28        5)    Genuine issues of material fact exist as to whether Applera engaged in a timely, good

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.    2.    Case No. C-07-3002 MMC
FOR PARTIAL SUMMARY JUDGMENT

1  faith interactive process with Plaintiff regarding her alleged disability and possible

2  return to work, and whether Plaintiff and her attorney, Maureen E. McFadden,

3  obstructed and failed to cooperate in the interactive process.

4       Ms. Kelly cannot show that there are no undisputed facts pertaining to the three issues

5  she raised in her Motion.  In addition, Plaintiff's alleged evidence does not support her claims, as it

6  consists of misstated testimony and a declaration inconsistent with her sworn deposition testimony.

7  **II.    STATEMENT OF FACTS**

8       **A.    Plaintiff's Employment History And Non-Work-Related Injuries.**

9            Defendant Applera Corporation ("Applera") has employed Plaintiff Megan Kelly for

10  approximately six years.  Applera, through its Applied Biosystems operating group, offered Ms.

11  Kelly a job as an Associate Production Chemist on January 23, 2002.  Ms. Kelly accepted Applera's

12  offer on January 28, 2002 and started employment on February 11, 2002. As an Associate

13  Production Chemist, Plaintiff "was to run Applied Biosystems' synthesizers, perform cleavage and

14  deprotection [ ] and may at a later time learn to run the HPLC machines and robots."  Plaintiff's

15  Deposition, Exhibit ("Ex.")[1] 1 to Declaration of Molly Agarwal ("Plt. Depo.") at 25:5-17; *see also*

16  *id.* at 25:18-31:2 (describing essential job duties, including mixing hazardous chemicals "to generate

17  short strands of DNA" ["oligos"], which "can be used in research"); 35:16-18 (same job duties when

18  she returned from medical leave of absence in September 2004).  Dr. Haskell acknowledged in

19  conjunction with Plaintiff's application for long term disability benefits that Plaintiff's job requires

20  handling dangerous chemicals and that she was at risk for dropping these chemicals.  Ex. 2.

21            By all accounts, Applera and Ms. Kelly enjoyed a mutually rewarding working

22  relationship.  According to her Complaint, on July 6, 2004, Ms. Kelly "tripped and sprained her

23  ankle."  Complaint, ¶8 at 2:19.  Ms. Kelly did not sprain her ankle at work, but Applera nevertheless

24  granted her request for FMLA leave and Ms. Kelly went on a medical leave of absence until

25  September 2004.

26            Ms. Kelly alleges that "[a]s part of her return to work, [she] was supposed to be able

27

28

---

[1] All references to Exhibits or "Ex." throughout this brief refer to exhibits attached to the Declaration of Molly Agarwal, filed herewith.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**         3.                    **Case No. C-07-3002 MMC**
**FOR PARTIAL SUMMARY JUDGMENT**

1   to sit down whenever she needed to," and that Applera "pressured [her] to get orders done quickly,

2   and [she] was seldom able to sit down." *Id.,* ¶8 at 2:21-23.  Applera disputes each of these

3   allegations, but in any case Ms. Kelly alleges in her Complaint that "[o]n or about September 21,

4   2004, while moving about extensively and attending to multiple tasks at the same time, [she] re-

5   injured her right ankle." *Id.,* ¶9 at 2:24-25.  Ms. Kelly alleges that "[t]he re-injury was quite serious,

6   in that [her] ankle did not heal well, and she continued experiencing serious instability in her right

7   ankle." *Id.,* ¶9 at 2:27-28.  Ms. Kelly also alleges that "[t]ests performed by [her] disability insurer

8   in or about January 2005 to evaluate [her] readiness to return to work seriously injured [her] left

9   wrist, requiring a visit to the emergency room." *Id.,* ¶9 at 2:28-3:2.

10       **B.**    **Plaintiff's Extended Subsidized Medical Leave Of Absence Of Nearly Three**

11              **Years.**

12        Ms. Kelly claims that her "ankle condition is a physical impairment that limited her

13   ability to perform the major life activity of work.  Complaint, ¶10.  She further alleges that "[t]he

14   severity of [her alleged] disability required her to remain off of work for a period of time." *Id.,* ¶11.

15   In fact, Ms. Kelly went out on an extended leave of absence from September 2004 until June 2007

16   and received pay and benefits during this nearly three-year long leave.  Plt. Depo: 67:11-69:6;

17   192:14-193:3;  194:4-196:5;  198:23-201:9.  Contrary to her allegations, Ms. Kelly never

18   communicated with anyone at Applera, or even attempted to communicate with anyone at Applera,

19   during her extended medical leave of absence.  Deposition of Stefan Lazar, Ex. 3, ("Lazar Depo.") at

20   101:6-102:2; Deposition of Jonathan Laosiri, Ex. 4 ("Laosiri Depo.") at 52:1-55:9, 70:16-71:4, 78:1-

21   81:4, 84:9-22, 85:22-93:19; Plt. Depo: 67:11-69:6.

22        Applera treated Ms. Kelly generously throughout her extended medical leave of

23   absence.  First, Applera fully accommodated Ms. Kelly's requests for additional medical leaves of

24   absence, without question or delay.  Lazar Depo. at 17:14-20; Plt. Depo. 33:25-35:18; 42:6-19.

25   Second, and although not legally required, the Company paid her full salary via its Salary

26   Continuation policy for the maximum amount of time – 26 weeks.  Plt. Depo. 192:14-193:3; Lazar

27   Depo. at 232:21-235:11.  Further, on January 13, 2005, the Company's long term disability

28   insurance carrier, UnumProvident, approved Ms. Kelly for long term disability insurance payments

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**      4.      **Case No. C-07-3002 MMC**
**FOR PARTIAL SUMMARY JUDGMENT**

1    and Ms. Kelly continued to receive payments directly from UnumProvident amounting to two-thirds

2    of her salary. Lazar Depo. at 214:24-215:7; Plt. Depo. at 194:4-196:5; 198:23-201:9. The Company

3    also continued to pay what would normally be the employee's portion of premiums for medical,

4    dental and vision insurance coverage during Ms. Kelly's extended medical leave of absence. *Id.*

**C.    Plaintiff Was Unable To Return To Work And Indicated No Desire To Return
5          To Work.**

6          Although Ms. Kelly alleges that she "regularly left telephone messages with her

7    [former] immediate supervisor, Jonathon Laosiri, regarding her status and the progress of her

8    recovery," (Complaint, ¶11 at 3:10-11) Applera has no record of such alleged telephone calls, nor

9    any writing from Ms. Kelly concerning her status or desire to return to work while she was out on

10   her paid, almost three-year long medical leave of absence. Lazar Depo. at  101:6-102:2; Laosiri

11   Depo. at 52:1-55:9, 70:16-71:4, 78:1-81:4, 84:9-22, 85:22-93:19.

12         According to Ms. Kelly, in January 2006, her "physicians determined that she was

13   well enough to return to work, with restrictions on the number of hours she could work, a restriction

14   on lifting any more than 20 pounds, and a requirement that she sit down every hour for at least 10

15   minutes." Complaint, ¶12. In her deposition, however, Plaintiff testified that her lifting restriction

16   was always no more than five pounds.  Plt. Depo. at 138:2-9. Ms. Kelly also alleges that she

17   "provided defendants [sic] with a physician's note authorizing her return to work, and specifying

18   these restrictions," but Applera never received any such alleged "physician's note" in January 2006.

19   *Id.* At her deposition, Plaintiff admitted that she does not recall whether she provided the doctor's

20   note to Applera. Plt. Depo. at 102:18-23. Significantly, even her doctor, Dr. Al-Shaikh, does not

21   claim in his declaration filed in support of her Motion that anyone from his office ever provided his

22   alleged note to Applera. *See* Declaration of Dr. Raad A. Al-Shaikh, ¶2, submitted in conjunction

23   with Plaintiff's Motion. And Mr. Lazar testified that the Company never received the alleged

24   doctor's note. Lazar Depo. at 91:14-19.

25         More importantly, both Ms. Kelly and her own health care providers contradicted this

26   allegation when they stated that she was not able to return to work (with severe restrictions) until

27   over one year later. Exs. 16-17. Tellingly, in her October 2006 application for long term disability

28   benefits, Plaintiff claimed she "[could] not carry chemicals," "ha[d] trouble w/walking," "[could not]

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.       5.       Case No. C-07-3002 MMC
FOR PARTIAL SUMMARY JUDGMENT

1  write or type for very long" "tend[ed] to drop things w/o realizing cannot grasp them," "cannot drive

2  myself," "lose sight periodically." Pltf. Depo. 196:1-5; 198:1-21; Exs. 2 &18.

3      **D.**      **Ms. Kelly's Attorney's Interference With The Good Faith Interactive Process.**

4          It was not until November 2006, after Applera notified Ms. Kelly that, "[o]n January

5  3, 2007 you will have exhausted all available leave of absence time and it is our intent to process a

6  termination effective that date" that Ms. Kelly indicated to Applera her desire to return to work. Ex.

7  5. However, instead of working cooperatively with the Company's human resources department

8  concerning a possible smooth transition back to work after such an inordinately long medical leave

9  of absence during which she did not communicate with the Company at all, Ms. Kelly decided to

10  hire an attorney.  On December 22, 2006, her attorney, Maureen E. McFadden, sent a letter to

11  "Administrator/HR Client Services" at the Company advising that she "represents Megan Kelly as to

12  her employment-related claims against" the Company, to "direct all future communications to my

13  attention," and a demand for Ms. Kelly's "personnel file and related documents." Ex. 6. Attorney

14  McFadden promised in the same letter that "our demand letter will follow shortly." *Id.*

15  Inexplicably, neither Ms. Kelly nor her attorney made any effort even to ask Applera whether it had

16  a position available for her return to work, and similarly didn't bother even to inform the Company

17  what the nature of Ms. Kelly's alleged work limitations were at that time.

18      **E.**      **Even Ms. Kelly's Own Doctors Stated That She Was Unable To Return to Work,**
                  **Even As Late as June <u>2007</u>.**

19

20          Plaintiff finally underwent radical Brostrom ligament repair surgery on her

21  chronically unstable right ankle on November 3, 2006.  Plt. Depo. at 18:6-25, 130:19-22. Thus, it is

22  hardly surprising that she told her former supervisor, Mr. Laosiri, that she could not even walk or

23  drive when he called her back in late January 2006. Laosiri Depo. at 90:19-91:14; Plt. Depo. 155:2-

24  21 (admitting right ankle condition "was not improving" and "my life was so limited at that point"

25  before Plaintiff had surgery on November 3, 2006); 156:25-157:24 (ankle "felt more stable" after

26  November 3, 2006 surgery).

27          On February 13, 2007, Ms. Kelly's health care provider, Josef Maier, MSPA-C, sent

28  a letter "To Whom It May Concern," stating that Ms. Kelly had been under his care "regarding her

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**        6.        **Case No. C-07-3002 MMC**
**FOR PARTIAL SUMMARY JUDGMENT**

1  bilateral wrist injuries and is able to return to work on 2/15/07." Ex. 8 (emphasis added). Mr. Maier

2  also wrote that Ms. Kelly "will need to work with her wrist splints on and will need to avoid heavy

3  lifting of 5 lbs or more." Id.

4        Slightly over one week later, on February 23, 2007, once again with no attempt first

5  to engage in the required interactive process, Attorney McFadden sent a three-page demand letter to

6  Applera, stating in part:

7        Ms. Kelly wants to move on with her life, and will agree to settle all
   past disability and related claims against Applied Biosystems for

8        $75,000. She also wants her job back. Ms. Kelly hereby demands that
   Applied Biosystems promptly engage in the interactive process with

9        her, and offer such reasonable accommodations as will allow her to
   return to work as quickly as possible. Ex. 9.

10

11        On March 28, 2007, Charles J. Heinzer, corporate counsel for Applera, wrote to Ms.

12  McFadden: "Applera's Human Resources Department recently attempted to contact Ms. Kelly to set

13  up a meeting regarding her return to work. The Company has not heard from her. May I ask you to

14  contact your client and let us know when she desires to discuss her return." Ex. 10. Throughout this

15  time period, Applera attempted in total good faith to understand the precise nature of Ms. Kelly's

16  restrictions on her return to work, in a sincere effort to determine whether it could reasonably

17  accommodate her requests.

18        On April 25 and May 9, 2007, Ms. Kelly's physician, Dr. Barry Rose, sent letters "To

19  Whom It May Concern," stating that Ms. Kelly was "currently under [his] care," and that she could

20  return to work "with restrictions," including avoiding "repetitive movements with either hand/wrist

21  for prolonged periods, no longer than 15 minutes at a time." Exs. 11&12.

22        On May 24, 2007, Dr. Rose sent another "To Whom It May Concern" letter, stating

23  that Ms. Kelly "may return to part-time work with limited repetitive activities." Ex. 13. Once again,

24  Applera sought in good faith to understand what "part-time work" and "limited repetitive activities"

25  meant in this context (given her former job working as an Associate Production Chemist in a

26  laboratory, handling hazardous chemicals). The next day, May 25, 2007, another one of Ms. Kelly's

27  health care providers, Azuka Nwigwe, DPT, sent a "To Whom It May Concern" letter,

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT**        7.        Case No. C-07-3002 MMC

1    recommending additional work restrictions. Ex. 14. Finally, on May 31, 2007, Dr. Rose clarified

2    that "part-time work" meant "20 hours a week, with limited repetitive activities." Ex. 15. Applera

3    promptly accommodated Ms. Kelly's return to work and physician-imposed work restrictions, and

4    Ms. Kelly returned to work on June 18, 2007. Upon Ms. Kelly's return from leave, Applera paid her

5    the same wage rate she had earned prior to the leave of absence, $18.22 per hour.

6         Applera is not aware of any problems that Plaintiff has experienced upon her return to

7    work, and continues to cooperate with Plaintiff to understand and reasonably accommodate her work

8    restrictions.   Nevertheless, and true to form, on or about April 21, 2008, Plaintiff filed another

9    Complaint against Applera, alleging retaliation since her return to work by the Company's alleged

10   failure to invite Ms. Kelly to coworker birthday parties and barbeques.

**F.     Despite Plaintiff's Lack Of Communication With Applera And Her Attorney's Interference In The Interactive Process, Applera Nevertheless Engaged In The Interactive Process And Accommodated Plaintiff By Providing Her With Nearly Three Years Of Paid Leave And Then Returning Her To Work.**

14        Applera did engage in the "interactive process" with Plaintiff, and provided a very

15   reasonable accommodation under the circumstances: a nearly three-year paid leave of absence as she

16   attempted to recover from her "chronically unstable right ankle" condition, which required radical

17   Brostrom ligament repair and arthroscopy surgery on November 3, 2006 – approximately ten months

18   *after* Plaintiff allegedly requested a return to work on a very limited schedule with further lifting and

19   "as needed" rest restrictions.   The evidence – including most significantly from Plaintiff's own

20   doctors – indicates that Plaintiff's right ankle was too unstable even to stand, let alone work as the

21   essential functions of her job required (*see, e.g.*, Dr. Barry A. Rose's notes dated <u>10/11/06</u>, Ex. 16:

22   "<u>In fact, she can hardly walk and uses a cane, crutches, etc., and falls on both wrists</u>. She's got a fair

23   amount of pain everywhere in both forearms, . . ."; Dr. Andrew Haskell's note dated <u>9/20/06</u>, Ex. 17,

24   Haskell Depo. 8:18-9:15, Ex. 7: "She had numerous interventions, including bracing, anti-

25   inflammatory medications, physical therapy and casting. Nothing has provided lasting relief. <u>She</u>

26   <u>has had numerous other soft tissue injuries related to this, including bilateral wrist pain and an eye</u>

27   <u>injury from a fall on the unstable ankle. The ankle feels like it will give out on her, even when</u>

28   <u>standing and currently it is her worst orthopedic issue</u>." [emphasis added]; Dr. Haskell's note dated

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT. FOR PARTIAL SUMMARY JUDGMENT**     8.     **Case No. C-07-3002 MMC**

1  9/20/06, Ex. 17: "She is also interested in surgical estimated costs, as she has been on disability and

2  *unable to work* for a couple of years." [emphasis added])

3         In light of Plaintiff's deteriorating medical condition, including too many falls even

4  for her to remember (Plt. Depo. 170:14-175:2), [2] and the "extremely hazardous" chemicals in the

5  laboratory workplace, both Plaintiff's supervisor at the time, Mr. Laosiri, and the Company's Leave

6  of Absence Coordinator, Mr. Lazar, were justifiably concerned about Plaintiff's own safety and the

7  safety of her coworkers.  In fact, Lazar testified that safety was the primary concern in its decision.

8  Lazar Depo. at 211:11-16.  Ms. Kelly had previously re-injured her right ankle when she attempted

9  to return too quickly from her earlier medical leave of absence in September 2004, when she had her

10 "hands full of oligos" containing "extremely hazardous" chemicals.  Plt. Depo. at 36:5-37:12,

11 138:14-139:18.  As Mr. Lazar testified:

12        Q     I want to know everything that you did in response to getting
          the ticket in January 2006.
13
          A.  The conversation -- I had the conversation with Jonathan Laosiri.  I
14        don't remember at that point as to whether he was aware of the
          restrictions or what they would be.  However, if he did not know, I
15        would have informed him.  And that he would need to review whether
          he could make that kind of accommodation or not.  To the best of my
16        recollection, he asked for my guidance because of the minimal number
          of hours she could work, and I told him that the general guideline
17        would be a minimum of 20 hours just as a starting point in that most
          employees at 20 hours or more, we should be able to accommodate
18        with exceptions and with employees who worked less than 20 hours, it
          was more difficult to do, but that he would have to make the judgment
19        based upon what work he had and what work she could do.  He had to
          make the best business judgment.  We also had the discussion of our
20        concern about her safety and the safety of other employees in the area.
          Because of the restrictions, there was a question about her stability.
21        And as we know now from later documents, she still needed surgery,
          which she had not had.  And there was a concern both for her safety
22        and of safety of the individuals around, time issue aside.  Lazar Depo.
          at 193:23-195:1. (emphasis added).
23

24        Similarly, Plaintiff's former supervisor, Mr. Laosiri, testified in his deposition about

25 his concern for Plaintiff's safety and the safety of the other employees in the laboratory environment

26 where she would be working.  Laosiri Depo. at 90:4-94:3 ("And I also – I think that I also had told

27 ───────────────────

28 [2]  Plaintiff testified that the number of falls was under 50, but she "did not know" whether she fell at
     least ten times. Plt. Depo. at 174:1-175:2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.          9.                    Case No. C-07-3002 MMC
FOR PARTIAL SUMMARY JUDGMENT

1  her my concerns of having, you know, someone in that condition come in and work, because it

2  becomes a safety issue because we are dealing with flammable materials"), 55:17-24, 218:5-220:11.

3  In fact, although Plaintiff conveniently overlooks this material fact in her Motion, she told her

4  former supervisor, Mr. Laosiri, in her one and only telephone call with him in late January 2006

5  "that she has been released by the doctor, but she still could not walk or drive on her own." Laosiri

6  Depo. at 90:4-93:19 (emphasis added; "Because she told me she could not drive, could not walk. So

7  basically, to me is, you know I need to consult an expert, the safety people, you know, to evaluate

8  what – can we or can we not accommodate her.").[3]

9        In short, Applera *did* engage in an interactive process with Plaintiff and provided an

10  extended, paid leave of absence as a reasonable accommodation.  Given the patent instability in

11  Plaintiff's right ankle – as reflected in her own treating doctors' notes – and the undisputed fact that

12  she re-injured it when she came back to work too quickly in September 2004, Applera made a good

13  faith business decision and did not violate the federal or state disability laws in any way.  Applera

14  also reasonably accommodated Plaintiff's alleged disability when it returned her back to work in

15  June 2007, following her left wrist surgery on April 18, 2007 and post-operative recovery.

16        Notably, Applera also generously paid Plaintiff for 26 weeks of her regular salary for

17  the maximum 26 weeks under its policy (100% for six weeks, 70% for 20 weeks, based on her

18  length of employment with the Company), and also paid the premiums for Plaintiff's short-term and

19  long-term disability benefits throughout her near three-year leave of absence.  Plt. 192:14-193:3;

20  194:4-196:5; 198:23-201:9, Ex. 6 to Plaintiff's Depo.  Plaintiff has no recoverable damages even if

21  she were able to establish a violation of any law.

22      **G.**    **Plaintiff Misstates And Mischaracterizes The "Facts" And The Evidence.**

23        In her ill-advised Motion, Plaintiff criticizes her former supervisor, Jonathan Laosiri,

24  and the Human Resources employee, Stefan Lazar, for their asserted lack of knowledge and

25  understanding of obviously complex *legal* issues such as "reasonable accommodation" and the

26  "interactive process" under the ADA and the FEHA. Plt. Motion at 4:16-27. Contrary to Plaintiff's

27  suggestion, however, supervisors and HR representatives do not need a law degree to respond to

28  [3] *See id.* at 91:12-14 (Mr. Laosiri was "certain [Plaintiff] said she could not walk at all").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**      10.      **Case No. C-07-3002 MMC**
**FOR PARTIAL SUMMARY JUDGMENT**

1    requests for accommodation.  Moreover, lay testimony expressing a legal conclusion is inadmissible.

2    Such conclusions are not "helpful" because lay witnesses are in no better position than the jury to

3    draw a legal conclusion from the evidence presented at trial. *Torres v. County of Oakland* (6th Cir.

4    1985) 758 F.2d 147, 150; *Gonzalez v. El Dia, Inc.* (1st Cir. 2002) 304 F.3d 63, 68, fn. 3 (former

5    supervisor's testimony that retirement offer was "subterfuge for age discrimination" constituted

6    inadmissible lay opinion). Moreover, contrary to Plaintiff's selective and inaccurate citations to their

7    deposition transcripts, both Mr. Laosiri and Mr. Lazar *did* testify to their lay understanding of both

8    reasonable accommodation and the interactive process.  *See, e.g.,* Laosiri Depo. at 25:9-25; 26:11-

9    18, 27:3-4; Lazar Depo. at 102:4-108:8 ("The interactive process is a requirement for the employer

10   to engage with an employee with a medical condition to see if they can make a reasonable

11   accommodation").

12           For example, ignoring Applera's objections on the record that her questions called for

13   legal conclusions, Plaintiff baldly declares in her Motion that Mr. Laosiri "also didn't have a good

14   understanding of 'reasonable accommodation.'"  Plt. Motion at 4:19-24.  But Mr. Laosiri's actual

15   deposition testimony does not remotely support Plaintiff's mischaracterization of it:

16           Q.    Do you have an understanding of what the term reasonable
                   accommodation means?
17           A.    Yes.
             Q.    What's your understanding of what that term means?
18           A.    Well –
             Mr. Paetkau: Objection to the extent it calls for a legal conclusion.  [¶]
19           You can answer if you understand.
             A.    A reasonable accommodation is, if I have a job that I could provide
20           to someone that – you know, that could be comfortable at a job, then I
             could – then I will, you know, find a job for them.  If they can't stand for
21           too long, I would make accommodation that they could sit down maybe
             five minute or ten minute, whatever is required.
22

23           Laosiri Depo. at 25:9-25.

24           Plaintiff also misstates and mischaracterizes Mr. Lazar's deposition testimony,

25   claiming that he had a "five minute" phone call with Plaintiff and that Mr. Laosiri made a "business

26   decision" without his guidance or support.  In fact, Mr. Lazar's actual deposition testimony bears

27   little resemblance to Plaintiff's gross mischaracterizations:

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**
**FOR PARTIAL SUMMARY JUDGMENT**

Case No. C-07-3002 MMC

Q.    Okay.  And do you remember anything at all about what you said?  I know you're not going to recall word for word what you said, but do you have in general any recollection of what you told him in response to what he told you?

A.    It would be my responsibility in all cases to feel assured that he was making his decision based on the -- for proper reasons, for proper business reasons.

Q.    What are proper business reasons?

A.    Well, you wouldn't -- for business - excuse me.  I can't do it because of the business.  It's not that I don't want the person because they're too old or that I've had trouble with this person before and they're just not -- for reasons which are in most cases would probably be illegal.  I just have to be sure that he's making it for the right reasons.  We are an at-will employer.  So as long as he's making business decisions that are not prohibited by law, then that's fine.  And I need to be sure of that to the best of my ability.

Lazar Depo. at 214:4-215:11.

## III.    ARGUMENT

### A.    Plaintiff's Motion Is Both Procedurally And Substantively Defective.

#### 1.    Plaintiff's notice of motion is deficient and untimely.

A notice of motion must state the basis of the motion of which it provides notice. Fed. R. Civ. P. 7(b); *Katz v. Children's Hosp. of Orange Co.*, 28 F.3d 1520, 1534 (9th Cir. 1994). Plaintiff's notice of motion fails to indicate the grounds for her motion, in violation of FRCP 7(b).

In addition, Plaintiff first filed her motion on June 20, 2008, and then "re-noticed" her motion on June 23, 2008.  Local Rule 7-2(a) requires that a hearing date be set for 35 days after service of the moving papers.  However, Plaintiff noticed a hearing on her motion for July 25, 2008, less than 35 days after serving Applera with it.  Further, her re-notice of motion is untimely, in violation of the Court's Scheduling Order, which imposed a June 20, 2008 deadline for filing dispositive motions.

#### 2.    Plaintiff seeks summary judgment on issues that are inherently subjective and fact-specific, and therefore unfit for summary judgment.

Plaintiff's motion is improper because it attempts to obtain partial summary judgment with regard to issues that are (1) hotly disputed and (2) inherently subjective and fact specific.  In particular, Plaintiff's attempt to obtain rulings "as a matter of law" as to whether Plaintiff made a request for a "reasonable" accommodation, and whether Applera engaged in a "timely" and "good

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT          12.          Case No. C-07-3002 MMC

1  faith" interactive process improperly seek rulings on issues that are inherently fact-specific and not

2  amenable to judgment as a matter of law, as the Court already properly recognized at the June 13,

3  2008 Status Conference.  *Fuller v. Frank*, 916 F.2d 558, 562 n.6 (9th Cir. 1990) (whether employer

4  provided "reasonable" accommodation is factual question for trier of fact); *see also Proctor v.*

5  *Consol. Freightways Corp.*, 795 F.2d 1472, 1476 (9th Cir. 1986) (once prima facie case of

6  discrimination established, whether employer has attempted in good faith to initiate reasonable

7  accommodation becomes genuine issue of material fact).

8        **3.**      **Plaintiff's motion improperly presents only *her* version of hotly disputed**
9                    **"facts."**

10        Compounding these errors, Plaintiff's Motion is defective because, in addition to

11  misstating and mischaracterizing the evidence, it presents only the evidence favorable to her

12  position.  To take one example, Plaintiff submits her own declaration to support her assertion that

13  Mr. Lazar allegedly told her "it wasn't worth it" for Applera to accommodate her alleged January

14  2006 work restrictions.  Plt. Motion at 6:16-20 (*citing* Declaration of Megan Kelly, ¶8).  At most,

15  however, Plaintiff's assertion merely creates a triable issue of fact in light of Mr. Lazar's directly

16  contrary deposition testimony (which Plaintiff conveniently omitted from her Motion):

17        Q:     Did you tell Ms. Kelly that it wasn't worth it for Applera to bring
18                her back for 12 hours?
         A:     I never made that statement.
19        Q:     Did you say anything similar to that?
20        A:     To my recollection, no.

21  Lazar Depo. at 217:20-25.

22        Similarly, Plaintiff conveniently omitted many other material facts in her selective

23  citation (and mischaracterization) of the depositions taken in this action.  For example, Plaintiff

24  omitted the material fact that when she called her former supervisor, Mr. Laosiri, in January 2006

25  regarding her possible return to work, she "told [him] that she has been released by the doctor, but

26  she still could not walk or drive on her own."  Laosiri Depo. at 90:4-93:19 (emphasis added;

27  "Because she told me she could not drive, could not walk.  So basically, to me is, you know I need to

28  consult an expert, the safety people, you know, to evaluate what – can we or can we not

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**
**FOR PARTIAL SUMMARY JUDGMENT**

**Case No. C-07-3002 MMC**

1   accommodate her.").[4]  When asked whether Plaintiff told him "anything in that phone call about any

2   other physical limitations on her work," Mr. Laosiri answered: "No, just besides she can't walk or

3   she can't drive."  *Id.* at 92:14-18.

### B.    Genuine Issues Of Material Fact Exist As To Whether Plaintiff Was A Qualified Individual With A Disability.

Plaintiff's Motion improperly assumes that she was a "qualified individual with a disability" at the time of her requested accommodation, *i.e.*, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job.  42 U.S.C. § 12111(8). *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S. Ct. 1597, 1603-04, 143 L.Ed.2d 966, 977 (1999).  Plaintiff's attempt to establish that she had a "known physical disability" is unavailing for purposes of summary judgment.  Even if Plaintiff establishes that she was disabled, she has done nothing to demonstrate that she was a qualified individual with a disability.  Plaintiff's own medical records indicate that she was not able to perform the essential functions of her job, with or without accommodation.  Exs. 2, 16-18.

Significantly, even Plaintiff admitted that the essential functions of her job as an Associate Production Chemist involved working with "extremely hazardous" chemicals in a laboratory environment.  Plt. Depo. at 138:21-139:18 ("[m]ost of the chemicals that are used for the synthesizer are considered hazardous in some way.  There's also cleavage chemicals, which are ammonium hydroxide, which are extremely hazardous.").  Further, she admitted that she re-injured her right ankle in September 2004 when she attempted to return to work too early.  Plt. Depo. at 36:5-37:12 ("It [her right ankle] separated while the foot was up.  I put the foot down, and it crunched.  I did not fall to the ground with the oligos.  I did lose my balance somewhat and took the half step, half jump so I could get to a table edge to put the oligos down and balance myself on the table.").  Both Mr. Laosiri and Mr. Lazar testified in their depositions that safety was of paramount concern in deciding to grant Plaintiff additional leave of absence as a reasonable accommodation, instead of returning her to work with severely limited restrictions.  Laosiri Depo. at 90:4-94:3 ("And I also – I think that I also had told her my concerns of having, you know, someone in that condition

---

[4]  *See id.* at 91:12-14 (Mr. Laosiri was "certain [Plaintiff] said she could not walk at all").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.          14.                    Case No. C-07-3002 MMC
FOR PARTIAL SUMMARY JUDGMENT

1    come in and work, because it becomes a safety issue because we are dealing with flammable

2    materials"); Lazar Depo. at 193:23-195:1.

3              Of course, employers like Applera may require as a job qualification standard that an

4    individual with a disability be able to perform the position's essential functions without posing a

5    direct threat to his or her safety or the safety of others in the workplace. 41 C.F.R. § 60-741.22.

6    Thus, employers may discharge or refuse to hire disabled individuals who cannot perform a

7    position's essential functions in a manner that would not endanger their health or safety, or the

8    health or safety of others, even with reasonable accommodation. Cal. Govt. Code § 12940(a); *see*

9    *EEOC v. United Parcel Service Inc.* 424 F.3d 1060, 1074 (9th Cir. 2005) (applying FEHA);

10   *Chevron U.S.A. Inc. v. Echazabal*, 536 US 73, 81–84, 122 S.Ct. 2045, 2050–2053 (2002) (employer

11   properly refused to hire applicant whose preemployment physical disclosed a liver condition that

12   could be aggravated by exposure to toxins at employer's workplace); *see also* 42 U.S.C.. §§

13   12111(3), 12113(a),(b); 29 C.F.R. §§ 1630.2(r), 1630.15 & Pt. 1630, App. §§ 1630.2(r),

14   1630.15(b),(c); *and see* Applera's Answer and Thirteenth Affirmative Defense.

15             As Plaintiff's own medical records and discovery responses demonstrate, triable

16   issues of fact exist as to her ability to perform the essential functions of a production chemist

17   position in light of all the conflicting evidence, including her own statements to UnumProvident and

18   her own doctors. Plt. Depo. 196:1-5; 198:1-21; Exs. 2, 16-18. Plaintiff cannot now disclaim her

19   own statements and admissions to her medical providers and disability insurance provider in order to

20   prevail on her summary judgment motion. As the Supreme Court has held, "a plaintiff's sworn

21   assertion in an application for disability benefits that she is, for example, 'unable to work' will

22   appear to negate an essential element of her ADA case – at least if she does not offer a sufficient

23   explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent

24   contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a

25   sufficient explanation." *Cleveland,* 526 U.S. at 806.

26   **C.    Applera Engaged In The Interactive Process With Plaintiff In Good Faith
            Despite Plaintiff And Her Attorney's Failure To Cooperate And Obstruction.**

27

28             Contrary to Plaintiff's bald assertion that Applera took no action with regard to Ms.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT          15.          Case No. C-07-3002 MMC

1   Kelly in January 2006, when she allegedly sought to return to work, Applera fully complied with its

2   obligations under the Fair Employment and Housing Act ("FEHA") and the Americans With

3   Disabilities Act of 1990 ("ADA"). The FEHA requires employers to engage in an informal, good

4   faith interactive process to identify and implement reasonable accommodations. *Barnett v. U.S. Air,*

5   *Inc.*, 228 F.3d 1105, 1111-1114 (9th Cir. 2000); Cal. Govt. Code § 12940(n).

6           Although the specific requirements of the interactive process under the FEHA are not

7   set forth in the statute and have not been detailed by the California courts, federal case law

8   interpreting the requirements of the ADA are well-developed. As such, California courts look to

9   ADA case law in evaluating an interactive process under the FEHA. *See, e.g., Jensen v. Wells*

10  *Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000); *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th

11  935, 948 (1997) ("[i]nasmuch as the FEHA and the interpretive regulations in the California Code of

12  Regulations were modeled on the federal Rehabilitation Act of 1973, and the Americans with

13  Disabilities Act of 1990, decisions interpreting those laws may be useful in deciding cases under the

14  FEHA.")

15          The interactive process requirement is closely intertwined with the reasonable

16  accommodation requirement. *Mays v. Principi*, 301 F.3d 866, 871 (7th Cir. 2002). Not surprisingly,

17  the employer has "ultimate discretion" to select the accommodation provided and may make that

18  decision based on its cost or convenience. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th

19  Cir. 1999); 29 C.F.R. Pt. 1630, App. § 1630.9. That discretion, however, must be exercised within

20  the constraints of "reasonableness." The "accommodation" provided must be adequate to enable the

21  individual to perform the position's "essential functions" but need not be the "best" or state-of-the-

22  art accommodation. 29 C.F.R. Pt. 1630, App. § 1630.9. The informal, interactive process "should

23  identify the precise limitations resulting from the disability and potential reasonable

24  accommodations that could overcome those limitations." *Stoll v. The Hartford*, 2006 U.S. Dist.

25  LEXIS 81781 at *18 (S.D. Cal. 2006). The purpose of the process is "to determine the extent of the

26  individual's limitations, before an individual may be deemed 'unable to work' and perhaps

27  terminated." *Id.*

28          In *King v. United Parcel Service, Inc.*, 152 Cal. App. 4th 426, 443 (2007), the Third

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT              16.              Case No. C-07-3002 MMC

1   District Court of Appeal discussed a disabled employee's responsibility with regard to the interactive

2   process of fashioning an appropriate accommodation:

3          "[T]he interactive process of fashioning an appropriate accommodation
4          lies primarily with the employee." (*Spitzer, supra,* 80 Cal.App.4th at p.
           1384, 96 Cal.Rptr.2d 236.)  An employee cannot demand clairvoyance of
5          his employer.  (*Conneen v. MBNA America Bank, N.A.* (3d Cir.2003) 334
           F.3d 318, 331 (*Conneen*).)  "'[T]he employee can't expect the employer to
6          read his mind and know he secretly wanted a particular accommodation
           and sue the employer for not providing it.  Nor is an employer ordinarily
7          liable for failing to accommodate a disability of which it had no
           knowledge.'"  (*Prilliman, supra,* 53 Cal.App.4th at p. 954, 62 Cal.Rptr.2d
8          142.)  "It is an employee's responsibility to understand his or her own
9          physical or mental condition well enough to present the employer at the
           earliest opportunity with a concise list of restrictions which must be met to
10         accommodate the employee."  (*Jensen, supra,* 85 Cal.App.4th at p. 266,
           102 Cal.Rptr.2d 55.)  Plaintiff therefore was obliged "to tender a specific
11         request for a necessary accommodation."  (*Spitzer, supra,* 80 Cal.App.4th
12         at p. 1384, 96 Cal.Rptr.2d 236.)

13         Plaintiff admitted in her deposition that she did not "recall" whether she or her

14  numerous medical providers (Fremont Orthopedic Medical Group) ever faxed, mailed, e-mailed or

15  delivered her alleged January 2006 doctor's note to anyone at Applera.  Plt. Depo. at 102:18-23.

16  Significantly, even her doctor, Dr. Al-Shaikh, does not claim in his declaration filed in support of her

17  Motion that anyone from his office ever provided his alleged note to Applera.  *See* Declaration of

18  Dr. Raad A. Al-Shaikh, ¶2.  And Mr. Lazar testified that the Company never received the alleged

19  doctor's note.  Lazar Depo. at 91:14-19.

20         Plaintiff's failure to engage claim fails, *inter alia,* because Ms. Kelly and her

21  attorney's conduct made it more difficult for Applera to engage in the interactive process to

22  determine Ms. Kelly's work restrictions and whether it could offer a reasonable accommodation.

23  *Barnett v. U.S. Airways, Inc.,* 228 F.3d 1063, 1113 (9th Cir. 2000); *Taylor v. Phoenixville School*

24  *District,* 184 F.3d 296, 317-18 (3d Cir. 1999); *Beck v. University of Wisc. Bd. of Regents,* 75 F.3d

25  1130, 1135-37 (7th Cir. 1996) ("Where the missing information is of the type that can only be

26  provided by one of the parties, failure to provide the information may be the cause of the breakdown

27  and the party withholding the information may be found to have obstructed the process"); *Allen v.*

28  *Pacific Bell,* 348 F.3d 1113, 1115 (9th Cir. 2003) (employee's failure to provide medical information

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

**DEFT'S OPPOSITION TO PLTF'S MOT.**
**FOR PARTIAL SUMMARY JUDGMENT**          17.          Case No. C-07-3002 MMC

1   requested by employer excused employer's duty to accommodate).

2          It was both improper and counterproductive to the interactive process for Attorney

3   McFadden to require Applera to "direct all communications to my attention," rather than to allow the

4   Company to engage in the interactive process with Ms. Kelly in good faith, without interference or

5   obstruction. Exs. 7 & 10  The interactive process contemplates that the employee and employer will

6   communicate directly with each other to exchange information about job skills and job openings.

7   Therefore, the employee generally may not require the employer to communicate exclusively

8   through the employee's attorney. *Claudio v. Regents of Univ. of Cal.*, 134 Cal. App. 4th 224, 247

9   (2005).  In short, both the employer and the employee have an obligation to engage in the interactive

10  process in good faith. *Barnett*, 228 F.3d at 1116.  Employees, for their part, have an obligation to

11  offer essential information to which they have superior access, *e.g.*, information regarding their

12  capabilities and limitations. *Id.*; *see also Taylor*, 184 F.3d at 317-18.

13         In this case, Applera engaged in the interactive process with Ms. Kelly (and her

14  attorney) in good faith by:

15         •      Meeting in person and communicating with Ms. Kelly to discuss her return to

16  work, work restrictions and possible accommodations in a timely manner;

17         •      Requesting information about the work-related limitations caused by the

18  alleged medical conditions;

19         •      Asking Ms. Kelly what she and her health care providers suggest as

20  reasonable accommodations and demonstrably considering those suggestions; and

21         •      Offering and discussing alternatives when a given request seemed too

22  burdensome. *Taylor*, 184 F.3d at 317.

23         Here, Applera responded in a timely and thorough manner at every juncture of Ms.

24  Kelly's multiple injuries.  Applera not only provided Ms. Kelly with an inordinately long leave of

25  absence as an accommodation to enable her to recover from her injuries, but also heavily subsidized

26  that leave, without any legal obligation to do so.  Moreover, Applera continues to accommodate her

27  additional requests since her return to work in June 2007.

28         The Company communicated in good faith with Ms. McFadden in an effort to engage

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT        18.        Case No. C-07-3002 MMC

1    in the interactive process with Ms. Kelly.  Unfortunately, in this case, Ms. Kelly and her attorney

2    engaged in bad faith conduct designed to undermine and thwart the interactive process.

3              When Ms. Kelly's physician, Dr. Barry Rose, finally clarified the meaning of his note

4    permitting Ms. Kelly to perform "part-time work" to mean "20 hours a week, with limited repetitive

5    activities," (which he did via another note on May 31, 2007) the Company immediately began its

6    evaluation of whether Ms. Kelly could return to work without posing a safety risk to herself and/or

7    to others.  In making this evaluation, Applera carefully considered Plaintiff's various doctors' notes,

8    and the nature of the restrictions they imposed on Ms. Kelly's ability to perform the job.  Because of

9    the nature of the duties of a production chemist, which involves handling hazardous chemicals in a

10   laboratory, Applera seriously evaluated whether Ms. Kelly, who told her supervisor that she could

11   not walk or drive by herself, and whose medical records showed a history of a severely unstable

12   ankle, could safely handle and carry hazardous, flammable chemicals.   The Company also

13   considered the fact that the last time Ms. Kelly returned to work before she was ready, she re-injured

14   her ankle the very same day she returned to work.

15             After carefully considering all of these factors, Applera determined that it could not

16   accommodate Ms. Kelly in her former position as an associate chemist unless and until her ankle

17   became more stable, such that she was not likely to fall while standing and/or walking with

18   hazardous chemicals.

19             As soon as Applera determined that Ms. Kelly could return to work without undue

20   risk of harm to herself or others, it invited Ms. Kelly to return to work.  In fact, since her return to

21   work in June 2007, Ms. Kelly has requested additional accommodations, such as one-on-one

22   meetings with her supervisor (rather than group meetings), and notes of meetings that occur on days

23   that Ms. Kelly does not work.  Ms. Kelly's supervisor, Ana Evanchik, has willingly provided these

24   accommodations.  Despite Applera's efforts, Ms. Kelly remains unsatisfied and filed yet another

25   lawsuit against Applera in a separate, state court action, in April 2008.

26             Applera took every step required of it by the law, and exceeded those requirements by

27   providing Ms. Kelly with a nearly three-year, subsidized leave of absence, and then returning her to

28   work with her desired accommodations..

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT

19.

Case No. C-07-3002 MMC

**D.    Plaintiff's "Evidence" Consists Of Misstatements And Her Own Declaration Contradicting Her Prior Sworn Testimony.**

"[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland,* 526 U.S. at 806.  To the extent Plaintiff's declaration contradicts her deposition testimony, her prior sworn testimony controls over later-created statements. "A party cannot create an issue of fact by presenting testimony through a declaration that contradicts previous sworn testimony, such as at a deposition." *Waddy v. Sears, Roebuck & Co.,* 1994 U.S. Dist. LEXIS 9719 (N.D. Cal. 1994); *see also Archdale v. American Internat. Specialty Lines Ins. Co.,* 154 Cal. App. 4th 449, 473 (Cal. App. 2d Dist. 2007) ("Where a party's self-serving declarations contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony, they should be disregarded.")

For example, during her deposition, Ms. Kelly could remember only <u>one</u> telephone call to Mr. Laosiri; she now claims to have left voicemails every time a doctor provided her with a written continuation of her leave status. (Kelly Decl. 2:3-5; Plt. Depo. at 73:7-15; 228:23-29:1);  *see also* Defendant's Objections to Evidence, filed concurrently herewith.

## IV.    CONCLUSION

Applera respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment.  As demonstrated above, each of the three issues upon which Plaintiff seeks adjudication as a matter of law are rife with genuine, material factual disputes.

Dated: July 7, 2008

*Molly Agarwal*
TYLER M. PAETKAU
LAURA E. HAYWARD
MOLLY AGARWAL
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
APPLERA CORPORATION

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFT'S OPPOSITION TO PLTF'S MOT.
FOR PARTIAL SUMMARY JUDGMENT

20.

Case No. C-07-3002 MMC