1  TYLER M. PAETKAU, Bar No. 146305
   LAURA E. HAYWARD, Bar No. 204014
2  MOLLY AGARWAL, Bar No. 247545
   LITTLER MENDELSON
3  A Professional Corporation
   650 California Street, 20th Floor
4  San Francisco, CA 94108.2693
   Telephone:  415.433.1940
5  Facsimile:  415.399.8490
   E-mail: tpaetkau@littler.com
6

7  Attorneys for Defendant
   APPLERA CORPORATION
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12 MEGAN KELLY,                         Case No. C-07-3002 MMC

13              Plaintiff,              **DEFENDANT'S OBJECTIONS TO
                                        PLAINTIFF'S EVIDENCE SUBMITTED IN
14      v.                              SUPPORT OF MOTION FOR PARTIAL
                                        SUMMARY JUDGMENT**
15 APPLERA CORPORATION,
                                        Date: July 25, 2008
16              Defendant.              Time: 9:00 a.m.
                                        Courtroom: 7, 19th floor
17                                      The Honorable Maxine M. Chesney

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OBJECTIONS TO EVIDENCE                                    Case No. C-07-3002 MMC

Defendant Applera Corporation respectfully submits the following Objections to Evidence submitted by Plaintiff Megan Kelly in support of her pending motion for partial summary judgment, set for hearing before The Honorable Maxine M. Chesney, Courtroom 7, at 9:00 a.m. on July 25, 2008. Defendant moves to strike all such purported "evidence" from the Court's record.

This Court's Local Rule 7-5(b) provides that "An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument. Any statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part." As demonstrated below, Plaintiff's evidence, consisting of her own declaration as well as her misstatements of other record evidence in her motion for partial summary judgment, runs afoul of this rule. Her testimony is unsupported and is both conclusory and argumentative and should be excluded. *FTC v. Publishing Clearing House, Inc.*, 1997 U.S. App. LEXIS 6698, *8 (9th Cir. 1997), ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("self-serving declarations uncorroborated by other testimony do not create genuine issue of material fact").

Moreover, Plaintiff's evidence contradicts her own prior sworn deposition testimony. It is widely established that "Where a party's self-serving declarations contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony, they should be disregarded." *Archdale v. American Internat. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 473 (Cal. App. 2d Dist. 2007). As this Court confirmed, "A party cannot create an issue of fact by presenting testimony through a declaration that contradicts previous sworn testimony, such as at a deposition." *Waddy v. Sears, Roebuck & Co.*, 1994 U.S. Dist. LEXIS 9719 (N.D. Cal. 1994).

I. **Declaration of Plaintiff Megan Kelly**

Page 2, Lines 3-5: "Each and every time one of my doctors provided me with a written continuation of my leave status, I notified my direct supervisor, Jonathon [sic] Laosiri, by leaving a voice mail message for him."

Applera objects to this statement on the ground that it contradicts Plaintiff's own deposition testimony. In her deposition on February 11, 2008, Ms. Kelly testified that she could not estimate

how many times she may have called Mr. Laosiri:

    Q: When you said you called and left messages with Mr. Laosiri, between September 22nd, 2004, and January 23rd, 2006, how many messages – what's your best estimate of the number of messages you left for Mr. Laosiri?

    A: The best I can say is that I called him after doctors' appointments. I don't know how many doctors' appointments, therefore I don't know how many messages.

(Plaintiff's Depo. 73:7-15.)

In her continued deposition on April 1, 2008, Ms. Kelly could remember only <u>one</u> telephone call to Mr. Laosiri:

    Q: After leaving the message in January of '06 with Mr. Laosiri, do you recall leaving any other messages for him at any time after that point in time.

    A: I don't remember.

(Plaintiff's Depo. 228:23-29:1.)

The statement remains unsupported as it is contradicted by Mr. Laosiri's testimony. In fact, Mr. Laosiri testified that he recalls receiving only <u>one</u> phone call from Plaintiff:

    Q: Okay. And looking at the email, it says "I received a call from Megan Kelly today." So looking at the email date of 1/24/06, does that refresh your recollection that the call with Ms. Kelly was on January 24th?"

    A: Yeah.

    Q: Okay. And that's the only call you've had with Ms. Kelly?

    A: Yes.

(Laosiri Depo. 98:19-99:2.)

Because Plaintiff's statement and contradicts her own prior sworn testimony, and is otherwise unsupported by the evidence on record it is inadmissible and should be disregarded.

OBJECTIONS TO EVIDENCE      3.      Case No. C-07-3002 MMC

SUSTAINED _____ (Grounds: _____) OVERRULED _____

**Page 2, Lines 6-10:** "Upon information and belief, each of UNUM's communications to me was cc'd to Applera, so that Applera was at all times also aware of my continuing disability status through UNUM."

Plaintiff fails to explain the basis for her statement made on "information and belief," as required by Local Rule 7-5(b), and provides no support, other than her own opinion, for this statement. In fact the evidence in the record – documents produced by Unum in response to Applera's subpoena – show that there was extensive correspondence between Unum and Ms. Kelly to which Applera was not a party, in direct contradiction to her statement. Thus, Plaintiff's statement remains wholly unsupported and as such, it is inadmissible and should be disregarded.

Furthermore, Plaintiff's statement fails to satisfy the requirement of Federal Rule of Civil Procedure 56(e) that she "set forth specific facts showing that there is a genuine issue for trial." This statement is merely unsubstantiated speculation, conjecture and assertion which fails to set forth *specific facts* to identify how Applera could have been "at all times" aware of her status "through UNUM." Fed. R. Civ. Proc. 56(e). Again, as Plaintiff's statement fails to set forth specific facts, it is inadmissible and should be disregarded.

SUSTAINED _____ (Grounds: _____) OVERRULED _____

**Page 2, Lines 11-12:** "Prior to Dr. Al-Shaikh's issuance of work restrictions to me on January 20, 2006, he and I discussed what my job as associate production chemist at Applera entailed."

Applera objects to this statement on the ground that it misstates the record by misconstruing Dr. Al-Shaikh's testimony. Quite simply, Plaintiff's self-serving statement and perversion of the evidence cannot be used to create a material dispute of fact. As Dr. Al-Shaikh testified in his deposition, he does not remember whether or not he discussed Ms. Kelly's job with her before he released her to return to work:

> Q: Okay. And do you remember if you discussed her job with her before writing that note, sort of, you know, asking what are the job duties?
>
> A: I don't remember. I mean, normally I would do that, but I don't recall that

instance.

(Al-Shaikh Depo. 14:11-15.)

Dr. Al-Shaikh further testified that he did not even recall the nature of Ms. Kelly's job:

> Q: Did you believe Ms. Kelly could return to work after she could tolerate driving?
>
> A: I don't even remember what Ms. Kelly's job was.

(Al-Shaikh Depo. 32:21-24.)

SUSTAINED _____ (Grounds: _____) OVERRULED _____

**Page 2, Lines 20-21: "I never had a fitness for duty exam in connection with my request for accommodation as to Dr. Al-Shaikh's January 2006 work restrictions."**

Defendant objects to this statement on the ground that it mischaracterizes the evidence in the record. Plaintiff implies that she was entitled to such an exam and that Applera neglected to provide her with one. To the contrary, at his deposition, Mr. Lazar testified that Applera only administers fitness for duty exams for workers' compensation claimants. Thus, because Plaintiff had not filed a workers' compensation claim, she did not receive an exam. (Lazar Depo. 297:2-23)

SUSTAINED _____ (Grounds: _____) OVERRULED _____

**Page 3, Lines 2-4: "Mr. Lazar told me that "it wasn't worth it" for the company to bring me back with the restrictions as specified by my doctor, and that Applera would not be willing to let me return to work unless I could perform at least 20 hours with no restrictions, or 40 hours with restrictions."**

Defendant objects to this statement on the ground that it misstates the evidence in the record. In his deposition, Mr. Lazar testified that he never told Ms. Kelly that "it wasn't worth it" for Applera to bring her back to work:

> Q: Did you tell Ms. Kelly that it wasn't worth it for Applera to bring her back for 12 hours?
>
> A: I never made that statement.
>
> Q: Did you say anything similar to that?

OBJECTIONS TO EVIDENCE            5.            Case No. C-07-3002 MMC

A:   To my recollection, no.

(Lazar Depo. 217:20-25.)

Ms. Kelly offers no support for her mischaracterization of Mr. Lazar's deposition testimony other than her own self-serving declaration. For this reason, Ms. Kelly's statements should be disregarded.

SUSTAINED _____ (Grounds: _____) OVERRULED _____

## II.   Plaintiff's Motion

Page 4, Lines 17-19: "Mr. Laosiri testified that he had never heard the term 'interactive process' and had no idea what that meant. He also didn't have a good understanding of 'reasonable accommodation.'"

Plaintiff grossly misstates Mr. Laosiri's deposition testimony. Mr. Laosiri did not testify that he "had no idea" what the phrase "interactive process" means. He simply indicated that he had not heard of the *term* interactive process, (Laosiri Depo. 26:11-12), which is not the same thing as understanding what the phrase means.

In fact, when asked for his understanding of the term, Mr. Laosiri expressed a very reasonable layman's understanding of the term:

Q:   Do you have an understanding of what the phrase essential functions of a job means?

Mr. Paetkau:   Objection. Vague and ambiguous; lacks foundation; and to the extent it calls for a legal conclusion.

...

Q:   What's your understanding?

A:   It's what is required to do a job.

(Laosiri Depo. 26:11-18; 27:3-4.)

Similarly, Plaintiff's argument that Mr. Laosiri "didn't have a good understanding of 'reasonable accommodation'" again mischaracterizes Mr. Laosiri's testimony and is simply an expression of Plaintiff's opinion. Contrary to Plaintiff's assertion, Mr. Laosiri set forth a very reasonable layman's understanding of the term:

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OBJECTIONS TO EVIDENCE          6.                    Case No. C-07-3002 MMC

| | | |
|---|---|---|
| Q: | | Do you have an understanding of what the team reasonable accommodation means? |
| A: | | Yes. |
| Q: | | What's your understanding of what that term means? |
| Mr. Paetkau: | | Objection to the extent it calls for a legal conclusion. You can answer if you understand. |
| A: | | A reasonable accommodation is, if I have a job that I could provide to someone that, you know – that could be comfortable at a job, then I could – then I will, you know, find a job for them. If they can't stand for too long, I would make an accommodation that they could sit down maybe five minute or ten minute, whatever is required. |

(Laosiri Depo. 25:9-25.)

In addition, Mr. Laosiri's answers to Plaintiff's counsel's questions about the meaning of the terms "interactive process" and "reasonable accommodation" are inadmissible because, as noted by Applera's counsel's objections on the record, those questions call for legal conclusions. Because Ms. Kelly misstates and mischaracterizes the deposition testimony of Mr. Laosiri, and because the questions eliciting such testimony call for impermissible legal conclusions, this evidence should be disregarded.

SUSTAINED _____ (Grounds: _____) OVERRULED _____

**Page 4, Lines 21-22: "Mr. Laosiri also didn't have any understand [sic] as to Applera's process for determining reasonable accommodations for employees with disabilities.**

Plaintiff misstates and grossly over-generalizes Mr. Laosiri's testimony. Mr. Laosiri did not testify that he had no understanding as to Applera's process for determining reasonable accommodations for employees with disabilities. To the contrary, he testified at length that as soon as he received a call from Ms. Kelly in which she informed him of her work restrictions, he immediately conveyed that information to people who would collaborate with him to determine whether or not Ms. Kelly could safely return to work with accommodations. In addition, Mr.

Laosiri's testimony clearly indicates his understanding that safety considerations play a critical role in determining whether an employee's disability can be accommodated. Laosiri Depo. 90:4-93:19. Because Ms. Kelly seriously mischaracterizes the deposition testimony of Mr. Laosiri, her statements should be disregarded.

**SUSTAINED** _____ (Grounds: _____) **OVERRULED** _____

Dated: July 7, 2008

*/s/ Molly Agarwal*
TYLER M. PAETKAU
LAURA E. HAYWARD
MOLLY AGARWAL
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
APPLERA CORPORATION

Firmwide:85795250.1 008292.1051

---

OBJECTIONS TO EVIDENCE        8.        Case No. C-07-3002 MMC